UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

RECEIPT #
AMOUNT $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK
DATE

CIVIL ACTION NO.

THE MILLGARD CORPORATION,
Plaintiff

v.

GADSBY HANNAH, LLP
Defendant

COMPLAINT

**04 CV 12388 RWZ**

MAGISTRATE JUDGE _____

## PARTIES AND JURISDICTIONAL STATEMENT

1. The Plaintiff, The Millgard Corporation ("Millgard"), is a corporation organized under the laws of the State of Michigan having its principal place of business in Livonia, Wayne County, Michigan.

2. The Defendant, Gadsby Hannah, LLP ("Gadsby Hannah"), is a law firm operating as a limited liability partnership organized under the laws of the Commonwealth of Massachusetts having its principal place of business in Boston, Suffolk County, Massachusetts.

3. Millgard is currently operating under a Plan of Liquidation under Chapter 11 of the Bankruptcy Code approved by the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division. (Case No. 03-49710-R).

4. White Oak Corporation ("White Oak") is a corporation organized and existing under the laws of the State of Connecticut, having its principal place of business in Plainville, Connecticut.

5. National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is an insurance corporation organized and existing under the laws of the State of Pennsylvania, having its principal place of business in New York, New York.

1

P:\data\active\Millgard\1269\pld00001.doc

6. This matter arises out of the negligent representation of and for erroneous legal advice provided to Millgard by Gadsby Hannah relative to claims made by Millgard against White Oak and its surety, National Union, with respect to specific facts and circumstances presented in a civil action brought in United States District Court for the District Court of Connecticut. [3:00CV1685(CFD)].

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332. This Court has original jurisdiction over the above-captioned action because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

8. Pursuant to 28 U.S.C. § 1391(a), venue is appropriate in the Commonwealth of Massachusetts because it is the principal place of business of the Defendant.

## COUNT I

9. Millgard re-alleges paragraphs one through eight above as if fully restated herein.

10. White Oak was the general contractor on a construction project owned by the State of Connecticut Department of Transportation (the "DOT") located in New Haven, Connecticut, and identified as "Replacement of Bridge No. 00337 (Tomlinson Bridge), U.S. Route 1 over the Quinnipiac River in the Town of New Haven" (the "Project").

11. On or about June 6, 1994, National Union, as surety, and White Oak, as principal, issued a Payment Bond (the "Bond"), identified as Bond No. 12-33-87, for the protection of all persons supplying labor, materials, and equipment used or reasonably required for use in connection with the project.

12. The Bond was issued pursuant to the requirements of section 49-41 of the Connecticut General Statutes and White Oak's contract with the DOT.

13. On or about March 22, 1996, Millgard entered into an agreement with White Oak, wherein Millgard, as a subcontractor to White Oak, agreed to provide labor, materials and equipment relating to certain excavation and foundation work on the project (the "Subcontract")..

14. Millgard began providing labor, materials and equipment to the project on or about October 31, 1997.

15. Beginning in early 1998, Millgard encountered quartz and granite boulders within the rock strata that obstructed its work.

16. The subsurface conditions encountered by Millgard differed materially from those indicated in the subsurface borings and soils report provided by the DOT and made a part of the subcontract.

17. As a result of the differing subsurface conditions, Millgard experienced significant time and cost overruns in the performance of its work.

18. Simultaneously with the discovery of the differing subsurface conditions, Millgard began consulting with Gadsby Hannah, at all times relevant to this litigation Millgard's counsel for matters located in the northeastern United States, as to its appropriate course of action and legal rights with respect to problems encountered on the project.

19. Millgard promptly notified White Oak of the problems it had encountered, and Millgard requested an equitable increase to its contract price as a result of the differing site conditions.

20. However, Gadsby Hannah neglected to inform Millgard of the effect of Connecticut General Statutes Section 4-61 which negatively impacted Millgard's rights to recovery for the differing subsurface conditions.

21. Upon information and belief, White Oak submitted a claim to the DOT for an increase in its contract price as a result of differing site conditions, which claim subsumed Millgard's

3

claim.

22. Millgard's last day of contract drilling was September 15, 1998.

23. On September 25, 1998, Millgard met with both White Oak and the DOT to discuss the differing site conditions encountered on the project.

24. Relying upon the advice provided by Gadsby Hannah, Millgard advised both White Oak and the DOT that the subsurface conditions constituted a cardinal change to its contract entitling Millgard to suspend its work on the Project until its issues were resolved.

25. Over the course of several months, White Oak and the DOT engaged in mediation to address White Oak's claim and the differing site conditions.

26. While Millgard was not a formal party to the mediation, Millgard participated in the mediation and was at all times represented by Gadsby Hannah.

27. Millgard was repeatedly assured by White Oak that its claim would soon be resolved with the DOT and that Millgard would be able to complete its work on the Project.

28. Millgard's involvement in the mediation between White Oak and the DOT concluded on or about May 19, 1999.

29. By letter dated May 21, 1999, White Oak wrongfully terminated Millgard's subcontract.

30. Upon receipt of the termination letter, Millgard immediately contacted White Oak to inquire as to the reasoning behind the termination.

31. White Oak advised Millgard that it was just protecting its legal rights and that White Oak intended to arbitrate its claims, which subsumed Millgard's claim, against the DOT.

32. At the same time, White Oak advised Millgard that it still expected Millgard to return to work on the project and began negotiating Millgard's return to work on a cost plus basis.

33. Based on White Oak's representations, Millgard remained on stand-by to complete its work

on the Project.

34. At the end of August 1999, White Oak contacted Millgard and directed Millgard to demobilize from the project.

35. During the week ending September 7, 1999, Millgard demobilized from the project.

36. Millgard last furnished labor and/or equipment to the project on September 7, 1999.

37. Although Millgard performed its obligations under the subcontract with White Oak, White Oak refused and failed to pay Millgard in accordance with the terms of the subcontract and section 49-41a of the Connecticut General Statutes.

38. White Oak's failure to pay Millgard the subcontract balance of $70,730.00, as well as $1,083,585.06 for additional work performed by Millgard as the result of the differing site conditions constituted a material breach of its subcontract with Millgard.

39. Connecticut General Statutes Section 49-42 (the payment bond statute) contains stringent requirements for notice of claims and commencement of lawsuits. (See Exh. "A" attached.)

40. For payment bonds issued prior to October 1994, the statute provided that notice of the claim must be provided to both the surety and the principal within 180 days of the claimant's last day of work on the job and a lawsuit must be commenced within one year of that date.

41. Beginning in September of 1998 Gadsby Hannah recommended to Millgard that it forbear providing notice of claim under the payment bond to White Oak and National Union and erroneously advised Millgard that notice to the surety and principal need not be made until within 210 days of payment by DOT to White Oak and a lawsuit commenced within one year of that date. (The language of the post October 1994 revision of C.G.S. § 49-42.)

42. On April 7, 2000 Gadsby Hannah sent a letter to National Union on behalf of Millgard asserting a claim against the payment bond.

43. Subsequently realizing that its April 7, 2000 letter was technically deficient, on May 5, 2000 Gadsby Hannah sent another demand letter to National Union on behalf of Millgard asserting a claim against the payment bond.

44. National Union denied the claim on the basis that notice was untimely and that Millgard failed to file suit within the time required under C.G.S. § 49-42.

45. In July of 2000 Millgard retained the law firm of Michelson, Kane Royster & Barger, P.C. to review the denial by National Union.

46. On August 31, 2000 Millgard filed a civil action brought in United States District Court for the District Court of Connecticut [3:00CV1685(CFD)] against White Oak and National Union.

47. On September 30, 2002 the claims against National Union in that action were dismissed by the Court because Gadsby Hannah failed to provide timely notice of Millgard's bond claim or to file suit in accordance with the time requirements of C.G.S. § 49-42.

48. Based upon disclosure of White Oak's assets in that lawsuit, which indicate that White Oak is judgment proof, Millgard voluntarily dismissed its case against White Oak prior to trial because its assets appeared to be fully encumbered by secured debts to National Union and other secured creditors.

49. Millgard has been damaged by the erroneous legal advice and negligent representation provided by Gadsby Hannah in the amount of the subcontract balance of $70,730.00, as well as $1,083,585.06 for additional work performed by Millgard as the result of the differing site conditions plus other consequential damages sustained by Millgard as the result of Gadsby Hannah's negligent representation and erroneous legal advice.

WHEREFORE, the Plaintiff, The Millgard Corporation, demands judgment against the

Defendant, Gadsby Hannah, LLP, in an amount to be determined at trial plus interest, costs, attorneys fees and such other relief at law or equity as this Court deems just and proper.

## COUNT II

50. Millgard re-alleges paragraphs one through forty nine above as if fully restated herein.

51. While the mediation process was ongoing, Millgard also participated in negotiations with White Oak and the DOT for additional work required on account of the differing site conditions and reached agreement to perform that work for $6,130,296.00.

52. Included in that amount was $1,485,625.00 for Millgard's anticipated overhead and profit.

53. When Millgard was subsequently wrongfully terminated by White Oak, unknown to Millgard, National Union had taken over the management of White Oak.

54. Further, when White Oak terminated Millgard, National Union was aware that Millgard's period to provide notice of a bond claim and file suit on same had lapsed by statute.

55. Millgard has been damaged by the erroneous legal advice and negligent representation provided by Gadsby Hannah in that it suffered the loss of $1,485,625.00 in anticipated overhead and profit for the additional work required to overcome the differing subsurface conditions plus other consequential damages sustained by Millgard as the result of Gadsby Hannah's negligent representation and erroneous legal advice.

WHEREFORE, the Plaintiff, The Millgard Corporation, demands judgment against the Defendant, Gadsby Hannah, LLP, in an amount to be determined at trial plus interest, costs, attorneys fees and such other relief at law or equity as this Court deems just and proper.

## COUNT III

56. Millgard re-alleges paragraphs one through fifty five above as if fully restated herein.

57. At all times relevant to this lawsuit, Millgard consulted with Gadsby Hannah concerning the damages it had incurred in attempting to perform its obligations under its Subcontract with White Oak.

58. Gadsby Hannah provided to Millgard legal advice relative to the problems with the Subcontract and charged Millgard for its services.

59. Millgard has paid Gadsby Hannah $19,010.03 in legal fees with respect to its disputes with White Oak and National Union.

60. Gadsby Hannah undertook to do so, and was obliged to exercise care, skill and diligence but failed in all requisites to advise Millgard of the consequences of C.G.S. § 4-61 and failed to give notice to National Union within the time as required by C.G.S. §49-42, as a condition precedent to the bringing of an action against White Oak and National Union.

61. By reason of the fault and neglect of Gadsby Hannah, Millgard was unable to recover against National Union, has lost all claims for the recovery of damages against White Oak because of its financial condition and has been obligated to expend additional funds for legal advice, the costs of this action and suffered other consequential damages as the result of Gadsby Hannah's negligent representation and erroneous legal advice.

WHEREFORE, the Plaintiff, The Millgard Corporation, demands judgment against the Defendant, Gadsby Hannah, LLP, in an amount to be determined at trial plus interest, costs, attorneys fees and such other relief at law or equity as this Court deems just and proper.

The Plaintiff demands a trial by jury on all counts contained in this complaint.

The Millgard Corporation
By its Attorney,

John S. Davagian, II
BBO # 114740
Davagian & Associates
365 Boston Post Road, Ste. 200
Sudbury, MA 01776-3023
978-443-3443

9

(P.A. 83-552, S. 1; P.A. 86-12, S. 2.)

History: P.A. 86-12 made section applicable to payment for materials as well as labor.

See chapter 60, part II (Sec. 4b-91 et seq.) re public building contracts.

Sec. 49-41a et seq., "prompt payment act" cited. 238 C. 293. Sec. 49-41 et seq. cited. 239 C. 708.

(Return to TOC) (Return to Chapters) (Return to Titles)

**Sec. 49-42. Enforcement of right to payment on bond. Suit on bond, procedure and judgment.** (a) Any person who performed work or supplied materials for which a requisition was submitted to, or for which an estimate was prepared by, the awarding authority and who does not receive full payment for such work or materials within sixty days of the applicable payment date provided for in subsection (a) of section 49-41a, or any person who supplied materials or performed subcontracting work not included on a requisition or estimate who has not received full payment for such materials or work within sixty days after the date such materials were supplied or such work was performed, may enforce his right to payment under the bond by serving a notice of claim on the surety that issued the bond and a copy of such notice to the contractor named as principal in the bond within one hundred eighty days of the applicable payment date provided for in subsection (a) of section 49-41a, or, in the case of a person supplying materials or performing subcontracting work not included on a requisition or estimate, within one hundred eighty days after the date such materials were supplied or such work was performed. The notice of claim shall state with substantial accuracy the amount claimed and the name of the party for whom the work was performed or to whom the materials were supplied, and shall provide a detailed description of the bonded project for which the work or materials were provided. If the content of a notice prepared in accordance with subsection (b) of section 49-41a complies with the requirements of this section, a copy of such notice, served within one hundred eighty days of the payment date provided for in subsection (a) of section 49-41a upon the surety that issued the bond and upon the contractor named as principal in the bond, shall satisfy the notice requirements of this section. Within ninety days after service of the notice of claim, the surety shall make payment under the bond and satisfy the claim, or any portion of the claim which is not subject to a good faith dispute, and shall serve a notice on the claimant denying liability for any unpaid portion of the claim. The notices required under this section shall be served by registered or certified mail, postage prepaid in envelopes addressed to any office at which the surety, principal or claimant conducts his business, or in any manner in which civil process may be served. If the surety denies liability on the claim, or any portion thereof, the claimant may bring action upon the payment bond in the Superior Court for such sums and prosecute the action to final execution and judgment. An action to recover on a payment bond under this section shall be privileged with respect to assignment for trial. The court shall not consolidate for trial any action brought under this section with any other action brought on the same bond unless the court finds that a substantial portion of the evidence to be adduced, other than the fact that the claims sought to be consolidated arise under the same general contract, is common to such actions and that consolidation will not result in excessive delays to any claimant whose action was instituted at a time significantly prior to the motion to consolidate. In any such proceeding, the court judgment shall award the prevailing party the costs for bringing such proceeding and allow interest at the rate of interest specified in the labor or materials contract under which the claim arises or, if no such interest rate is specified, at the rate of interest as provided in section 37-3a upon the amount recovered, computed from the date of service of the notice of claim, provided, for any portion of the claim which the court finds was due and payable after the date of service of the notice of claim, such interest shall be computed from the date such portion became due and payable. The court judgment may award reasonable attorneys fees to either party if upon reviewing the entire record, it appears that either the original claim, the surety's denial of liability, or the defense

interposed to the claim is without substantial basis in fact or law. Any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond shall have a right of action upon the payment bond upon giving written notice of claim as provided in this section.
(b) Every suit instituted under this section shall be brought in the name of the person suing, in the superior court for the judicial district where the contract was to be performed, irrespective of the amount in controversy in the suit, but no such suit may be commenced after the expiration of one year after the applicable payment date provided for in subsection (a) of section 49-41a, or, in the case of a person supplying materials or performing subcontracting work not included on a requisition or estimate, no such suit may be commenced after the expiration of one year after the date such materials were supplied or such work was performed.
(c) The word "material" as used in sections 49-33 to 49-43, inclusive, shall include construction equipment and machinery that is rented or leased for use (1) in the prosecution of work provided for in the contract within the meaning of sections 49-33 to 49-43, inclusive, or (2) in the construction, raising, removal of any building or improvement of any lot or in the site development or subdivision of any plot of land within the meaning of sections 49-33 to 49-39, inclusive.

(1949 Rev., S. 7215; 1961, P.A. 228; 1969, P.A. 192, S. 1; P.A. 78-280, S. 2, 127; P.A. 79-602, S. 100; P.A. 87-345, S. 2; P.A. 94-188, S. 16; P.A. 00-36.)

History: 1961 act required that payment be made within ninety days rather than sixty days in Subsec. (a); 1969 act required that suit commence within one year after date on which last of the labor was performed or material was supplied rather than within one year "after the date of final settlement of such contract" in Subsec. (b); P.A. 78-280 substituted "judicial district" for "county" in Subsec. (b); P.A. 79-602 made minor changes in wording but made no substantive changes; P.A. 87-345 substantially amended procedure set forth in Subsec. (a) for enforcement of right to payment under bond; P.A. 94-188 amended procedure set forth in Subsec. (a) for enforcement of right to payment under bond and amended Subsec. (b) by adding language concerning the applicable payment date provided for in Sec. 49-41a and the time within which to commence suit for materials or work not included on a requisition or estimate; P.A. 00-36 redefined "material" in Subsec. (c) to include construction equipment that is rented or leased for use in prosecution of work or in construction, raising, removal of any building or improvement of lot or in site development or subdivision and to apply term to Secs. 49-33 to 49-43, inclusive.

Cited. 143 C. 85. History discussed. 151 C. 332, 333. Material actually forming part of work provided for in public works contract, as well as labor performed at the site, is clearly within contemplated coverage of payment bond required for protection of persons who have furnished "labor or material in the prosecution of the work." Id., 334. Test as to whether labor and materials used in making repairs which are major items are covered by payment bond is whether item was necessitated by rigors of job rather than prior condition of equipment and whether supplier and purchasing contractor reasonably expected that item would be substantially consumed on the job. Id., 335, 336. Having found that no administrative determination by public works commissioner of final settlement date had been made under section 49-43, court was justified in concluding that no final settlement within meaning of this section could be said to have preceded actual payment and exchange of releases, and that subject action commenced within three months of that date had been timely brought. 159 C. 563, 569. Cited. 174 C. 219. 223, 226. Remedies afforded by this section and Sec. 49-41a(b) are independent and notice requirements of later are not prerequisite to suit initiated under this section. 207 C. 468, 469, 471, 472, 474. 483. Cited. 225 C. 367, 371. 374, 378. Cited. 229 C. 303, 309. Cited. 238 C. 293. Sec. 49-41 et seq. cited. 239 C. 708. Cited. 240 C. 10.
Cited. 25 CA 751, 753, 757, 758. Cited. 29 CA 783, 790. Cited. 32 CA 118, 124, 127, 128, 130. Cited. Id., 133, 140. Claims under this section are not preempted by ERISA. 40 CA 777, 779, 780, 783, 784.

Cited. 17 CS 297. Fact that written notice was given to the contractor in an action on bond must be recited in the complaint or a copy annexed thereto. Failure to comply with this rule left the complaint deficient. 18 CS 43. Until the subcontractor exercises his right of action granted by this section, there is no debt due from the contractor to the subcontractor which can be garnished. 21 CS 16. Cited. 32 CS 168, 171.
Cited. 6 Conn. Cir. Ct. 204, 205.
Subsec. (a):
Cited. 207 C. 468, 476. Decision permits subcontractor to sue on surety bond despite failure to comply precisely with notice requirements of section. 225 C. 367, 368, 370, 371, 376, 377. Cited. 238 C. 293. "Payment bond claim act" cited. Id. Sec. 49-41 et seq. cited. 239 C. 708. Cited. 240 C. 10.
Cited. 32 CA 118. 120, 132. Cited. 40 CA 777, 780. Because section requires only "substantial accuracy" re complaint, plaintiff was not obligated to prove that company X was now known as company Y. 49 CA 522. Trial court erred in refusing to admit evidence of notice of claim on the surety. Id.
Cited. 6 Conn. Cir. Ct. 204, 206, 207.
Subsec. (b):
Cited. 174 C. 219, 222, 224.
Cited. 25 CA 751, 752, 754, 755, 757. 759. Cited. 236 C. 750, 766.
1969 amendment is not applicable to contract made prior to its passage as it would materially affect contract. 6 Conn. Cir. Ct. 205, 206, 208, 209.
Subsec. (c):
Sec. 49-41 et seq. cited. 239 C. 708.

(Return to TOC) (Return to Chapters) (Return to Titles)

**Sec. 49-43. Certified copies of bonds and contracts for public works.** Each agency of the state or of any subdivision thereof, in charge of the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof, shall furnish, to any person making application therefor who submits an affidavit that he has supplied labor or materials for the work and payment therefor has not been made or that he is being sued on the bond, a copy of the bond and the contract for which it was given, certified by the administrative head of the agency, which copy shall be prima facie evidence of the contents, execution and delivery of the original. Applicants shall pay for those certified copies such fees as are provided in section 1-212.

(1949 Rev., S. 7216; 1959, P.A. 57; 1969, P.A. 192, S. 2; P.A. 79-602, S. 101.)

History: 1959 act transferred duties formerly held by attorney general under provisions of section to agencies of state or its subdivisions and their administrative heads and required payment of fees as provided in Sec. 1-15 where previously fees were fixed by attorney general; 1969 act deleted provision specifying that certified statements of date when final settlement made is "conclusive as to such date" and subsequent reference to fee charged for such certified statements; P.A. 79-602 substituted "the" or "those" for "such" where appearing.

Duties of attorney general are purely ministerial in character. 143 C. 85. Purpose of statute discussed. 159 C. 563, 568. Sec. 49-41 et seq. cited. 239 C. 708.
Cited. 6 Conn. Cir. Ct. 204, 206, 207.

(Return to TOC) (Return to Chapters) (Return to Titles)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) **The Millgard Corporation v. Gadsby Hannah, LLP**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   - [ ] I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
   - [ ] II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    *Also complete AO 120 or AO 121 for patent, trademark or copyright cases
   - [x] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.
   - [ ] IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.
   - [ ] V.   150, 152, 153.

   **04 CV 12388 RWZ**

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.    **NONE**

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?    YES [ ]    NO [x]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)    YES [ ]    NO [x]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?    YES [ ]    NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?    YES [ ]    NO [x]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).    YES [x]    NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [x]    Central Division [ ]    Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)    YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  **John S. Davagian II**
ADDRESS  **365 Boston Post Road, Ste. 200, Sudbury, MA 01776**
TELEPHONE NO.  **978-443-3773**

(Coversheetlocal.wpd - 10/17/02)

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
THE MILLGARD CORPORATION

**DEFENDANTS**
GADSBY-HANNAH, LLP

(b) County of Residence of First Listed Plaintiff __Wayne, MI__
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed __Suffolk, MA__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number) (978) 443-3773
John S. Davagian, II, Esq.
DAVAGIAN & ASSOCIATES, Attorneys At Law
365 Boston Post Road, Suite 200
Sudbury, MA 01776-3023

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. ☐ 660 Occupational Safety/Health | ☐ 830 Patent ☐ 840 Trademark | ☐ 810 Selective Service ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | |
| ☐ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | ☐ 790 Other Labor Litigation | | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights / ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Legal Malpractice

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $5,000,000.00 xxx
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE N/A
DOCKET NUMBER N/A

DATE November 3, 2004

SIGNATURE OF ATTORNEY OF RECORD
John S. Davagian, II, Esq.

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____