UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12388-RWZ

THE MILLGARD CORPORATION,
                Plaintiff

v.

GADSBY HANNAH, LLP,
                Defendant

## AFFIDAVIT OF JOEL LEWIN IN SUPPORT OF GADSBY HANNAH'S MOTION FOR SUMMARY JUDGMENT

I, Joel Lewin, hereby depose under oath and state as follows:

1. I am an attorney licensed to practice in the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts, the United States District Court for the Southern District of New York, and the United States District Court for the District of West Virginia.

2. I graduated from Boston College Law School in 1972.

3. I am a senior partner at the law firm of Hinkley Allen & Snyder in its Boston, Massachusetts office, where I concentrate my practice on construction law. I am the chairperson of the firm's Construction Law Practice Group.

4. Attached hereto as Exhibit A is a copy of my curriculum vitae.

5. I have been retained by counsel for Gadsby Hannah LLP to provide an expert opinion on the standard of care and whether it was breached in this case.

6. In connection with my engagement, I reviewed various categories of documents originating from The Millgard Corporation ("TMC"), White Oak, ConnDot, Gadsby Hannah,

and others. The documents include correspondence, memoranda, notes, legal bills, court pleadings, arbitration pleadings, claim submissions, deposition transcripts and exhibits, and other documents.

7. A copy of my expert report is included as part of Exhibit A, and is incorporated herein by reference.

8. It is my opinion that the standard of care did not require Gadsby Hannah to conduct research and advise TMC during the period between April 1998 and March 15, 1999 of TMC's obligations under Connecticut law to give notice to TMC's bonding company.

9. TMC assigned Gadsby Hannah discrete tasks between May 1998 and early March 1999. The standard of care did not require Gadsby Hannah to provide advice beyond the specific tasks that TMC assigned to it. Gadsby Hannah was not required to provide TMC with general advice about all of its rights and risks related to the Tomlinson Bridge Project, including bond notification.

10. Gadsby Hannah satisfied the applicable standard of care.

11. Richard Millgard claimed in his deposition testimony that he asked Ronald Busconi about bond notification in late May 1998. Richard Millgard testified that Attorney Busconi asked him for certain documents in order for Attorney Busconi to answer Richard Millgard's alleged questions but conceded that he does not remember what documents were sent to Attorney Busconi and when they were sent.

12. There is no documentary evidence to support Richard Millgard's bare testimony that he requested information about bond notification. Nevertheless, based on Richard Millgard's testimony, Gadsby Hannah did not have a duty to provide any advice concerning bond notification without the necessary information that Richard Millgard claims Attorney

Busconi requested but which Richard Millgard did not provide. Even under those circumstances, Gadsby Hannah and its attorneys did not breach the applicable standard of care.

      SIGN UNDER THE PAINS AND PENALTIES OF PERJURY THIS ___ DAY OF MARCH 2006.

                                                      _____
                                                    Joel Lewin

## CERTIFICATE OF SERVICE

     I, Terri L. Pastori, hereby certify that on _____, the foregoing was served upon the following by first class mail:

John S. Davagian, Esquire
Davagian & Associates
365 Boston Post Road
Sudbury, MA 01776

                                                           _____
                                                           Terri L. Pastori

# EXHIBIT A



**HinckleyAllenSnyder** LLP
ATTORNEYS AT LAW

28 State Street
Boston, MA 02109-1775
TEL: 617.345.9000
FAX: 617.345.9020
www.haslaw.com

November 29, 2005

Michael J. Stone, Esq.
Peabody & Arnold LLP
30 Rowes Wharf
Boston, MA 02110

Dear Mike:

I have been retained to furnish an opinion on the standard of care to be applied in connection with the legal services provided by Gadsby & Hannah to Millgard Corporation ("Millgard") in connection with Millgard's subcontract with White Oak Corporation ("White Oak") dated March 22, 1996. White Oak entered into a general contract with the State of Connecticut ("ConnDot") to replace the Tomlinson Bridge on U.S. Route 1 in New Haven ("Project"). Attached is a copy of my résumé.

In preparation of my opinion in this matter, I have examined various categories of documents originated with Millgard, White Oak, ConnDot and others including correspondence, memoranda, notes, legal bills, court pleadings, arbitration pleadings, claim submissions, deposition transcripts, deposition exhibits, and other documents.

In my opinion, under the standard of care applicable to attorneys specializing in construction law, Gadsby & Hannah was not under a duty to conduct research and advise Millgard during the period between April, 1998 and March 15, 1999 of Millgard's obligations under Connecticut law to give notice to White Oak's bonding company.

Millgard has claimed that in early 1998, in the course of its performance of work on the Project, it encountered subsurface conditions which differed materially from those indicated in the contract documents or conditions usually encountered in connection with work of this type. According to Millgard, these subsurface conditions, consisting of quartz and granite boulders, significantly obstructed its ability to perform its subcontract work as planned and caused Millgard to incur significant additional costs on the Project. Millgard sought to recover from White Oak these additional costs.

Typically, when a contractor retains an attorney to obtain assistance in connection with a significant claim on a Project, the contractor will take one of two approaches. One approach is to bring counsel in to provide a comprehensive review (through research and analysis) of the facts, the contract and the law to advise the contractor on the merits of its claim. The attorney will then research, evaluate and advise the contractor on the various options available to obtain the most cost-effective result. These options include pursuing

HinckleyAllenSnyder LLP
ATTORNEYS AT LAW

Michael J. Stone, Esq.
Page 2
November 29, 2005

recovery through negotiation, mediation, arbitration, or court action. In addition, the attorney will research and evaluate the potentially responsible parties that should be pursued and advise the contractor of is options as to each. Once a decision is made as to the best approach to the claim, the best forum to present it and the appropriate parties to pursue, the attorney will then work closely with the client to provide comprehensive legal advise to the client throughout the process. This comprehensive approach is very time consuming and expensive but is often selected when contractors are faced with complex claims involving public construction projects.

Based upon my review of the materials described above, had Millgard retained Gadsby & Hannah for the purpose of providing comprehensive legal services in connection with its claim, I would have found evidence of direction and communication between Millgard and Gadsby & Hannah indicating that the parties had mutually agreed to the performance of at least the following tasks by Gadsby & Hannah:

1. An examination of all of the terms of the Millgard subcontract to determine Millgard's rights, obligations and remedies including notice requirements, claim submission requirements, recoverable damages, and dispute resolution options

2. An examination of all of the terms of the General Contract between White Oak and ConnDot to determine notice requirements, claim submission requirements, recoverable damages, the effect of disclaimer clauses, procedures for dispute resolution, and the rights of subcontractors.

3. An examination of all communications and interaction between White Oak and ConnDot during the course of the Project

4. An examination of Connecticut statutes and common law relating to the rights of Millgard to recover for a differing site condition claim, the available liability theories, the recoverable damages and defenses available to White Oak.

5. An examination of Millgard's rights against the payment bond provided by White Oak including an examination of the terms of the bond, the applicable Connecticut statutes and common law as well as a review of White Oak's conduct and any defenses available to the bonding company.

6. An examination of the technical and legal merits of the differing site conditions claim based upon the reports of the various experts retained by the parties including the issue of cardinal change, novation, abandonment and other legal theories. Also the following issues would be analyzed:

#560546

Michael J. Stone, Esq.
Page 3
November 29, 2005

      a. Millgard's duty to investigate independent sources of data concerning the subsurface conditions;
      b. White Oak's duty to investigate independent data;
      c. White Oak's obligation to pursue Millgard's claim with ConnDot.

7. An examination of the right of Millgard to suspend the work under the contract and applicable Connecticut law.

8. An examination of the right of White Oak to terminate Millgard's subcontract under applicable Connecticut law.

9. An examination of the effect of the White Oak-ConnDot arbitration on Millgard's rights to recover for a differing site condition.

10. The preparation under counsel's supervision of a written claim submission to White Oak in support of a claim for submission to ConnDot.

11. Counsel's preparation of a comprehensive written submission to the mediator and the parties in support of Millgard's claim.

12. Counsel's preparation of the presentation on entitlement and damages for the mediation and counsel's active participation in preparing the actual presentation at mediation.

The second approach often selected by contractors who are experienced in the prosecution of claims is to handle the vast majority of the tasks in the claim process themselves and limit the use of counsel to only those specific tasks assigned by the contractor. In this way the contractor will limit the time and expense involved in working with counsel on all issues that may arise. Usually, this alternative approach is taken when contractors are relatively optimistic that they will resolve their claim without the necessity of formal court proceedings or formal arbitration proceedings.

In my review of the records in this matter, I did not find evidence that Millgard had retained Gadsby & Hannah to provide comprehensive legal advice concerning Millgard's dispute with White Oaks as described in the first approach discussed above. Rather, I found that Millgard's approach was to negotiate and mediate the differing site condition claim itself. Indeed, in reviewing the documentation, I took particular note of the letter dated April 16, 1999 from Dennis Millgard, the president of Millgard to Peter Hunstman, an Assistant Attorney General of the State of Connecticut (representing ConnDot) in which Mr. Millgard specifically advised Mr. Huntsman that although Gadsby & Hannah had been consulted it had not been formally retained to represent Millgard in pursuing its claims. Millgard significantly limited the role of Gadsby & Hannah to performing

#560546

**HinckleyAllenSnyder**LLP
ATTORNEYS AT LAW

Michael J. Stone, Esq.
Page 4
November 29, 2005

isolated research and providing general input into how to respond to certain communications from the parties. Gadsby & Hannah's role in the mediation was extremely limited. I found no evidence of any form of request made to Gadsby & Hannah that would have triggered a duty to engage in any research, analysis or provide any legal advice on the issue of whether and when White Oaks' bonding company had to be notified of Millgard's claims. It is my opinion that Gadsby & Hannah met the standard of care imposed by the law.

Very truly yours,

Joel Lewin

JL:pam

#560546

## JOEL LEWIN

Joel Lewin is a senior partner and Chairman of the Construction Law Group of Hinckley, Allen & Snyder with offices in Boston, Providence and Concord, New Hampshire. His primary focus has been representing general contractors, owners and subcontractors in complex litigation. His practice concentrates on heavy civil projects including tunnels, bridges, highways, wastewater-treatment plans, as well as office buildings, shopping centers, power plants, hospitals, schools, courthouses, golf courses, airports, environmental remediation, and marine projects.

Since 1990 Joel has been the firm's team leader in representing the general contractors performing over 90% of the construction of the "Big Dig" in Boston. His team of attorneys and consultants has provided day-to-day advice to the contractors in connection with claims, contract negotiations, OSHA compliance and other construction matters. In addition, he has litigated many claims before the Big Dig Disputes Review Boards and in federal and state court. His work on behalf of general contractors on the Big Dig has also involved bid protests, whistleblower lawsuits, subcontractor claims, builders risk claims, and general contractor claims for additional compensation. In addition, he has mediated over the last three years numerous claims on this project. In all, he has acted as counsel in the resolution of hundreds of millions of dollars in claims on this project.

Joel's experience also includes preparation and negotiation of contract documents, advice regarding contract administration, and counseling construction clients in claims avoidance and risk sharing. He graduated from Boston College Law School in 1972. He served as clerk to the Chief Justice of the Massachusetts Appeals Court from 1972-1974. From 2001-2003 he served as Co-Chair of the Construction Law Committee of the Boston Bar Association and Chairman of the New England Construction Advisory Council of the American Arbitration Association.

Hourly rate: $430.00

**MEMBERSHIPS:**

American Bar Association, Forum Committee on Construction Industry, Section on Public Contracts; Massachusetts Bar Association, Section on Public Contracts; Boston Bar Association, Section on Public Contracts; American Arbitration Association, Construction Industry Advisory Council; Associated General Contractors; Construction Industries of Massachusetts, Inc.; Massachusetts Building Congress and Utility Contractors' Association of New England.

**PUBLICATIONS/LECTURESHIPS:**

Frequent speaker at construction industry-related programs for Associated General Contractors, Federal Publications Inc., Engineering News Record, Construction Industries of Massachusetts, Utility Contractors of New England, and other trade groups. Published articles in professional and trade publications.