UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE MILLGARD CORPORATION, )<br>    Plaintiff )<br> )<br>v. )<br> )<br>GADSBY HANNAH, LLP )<br>    Defendant )<br> ) | Civil Action No. 04-12388-RWZ |

## AFFIDAVIT OF DAVID B. COLEMAN IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY DEFENSE EXPERT, JOEL LEWIN, DUE TO A CONFILCT OF INTEREST

I, David B. Coleman, do hereby aver as follows:

1. I reside at 13400 Torrey Road in Fenton, Michigan.

2. Until 2003 I was Vice President of Operations for The Millgard Corporation ("TMC") of Livonia, Michigan.

3. Since TMC voluntarily filed for bankruptcy under Chapter 11 of the Bankruptcy Code and the termination of my employment at TMC due to that filing, I have continued to volunteer my time to assist the corporation in the collection of certain outstanding receivables.

4. I have personal knowledge of the facts contained herein and if called as a witness could competently testify thereto.

5. During the latter stage of my employment at TMC, the company entered into two subcontracts with the Middlesex Corporation of Littleton, Massachusetts to install drilled shafts on two projects for the Massachusetts Highway Department ("MHD").

6. One project was known as MHD Contract No. 98182 to Reconstruct a Bridge over Reserve Channel in Boston, Massachusetts.

1

7. The other project was known as MHD Contract No. 99121 to Reconstruct a Section of Route 146 in Worcester, Massachusetts.

8. On both projects disputes arose with MHD over the payment for removal of obstructions encountered in the installation of the drilled shafts.

9. TMC submitted the disputes for additional payment for removal of those obstructions and other matters on both projects through Middlesex, as the general contractor, to the Claims Committee of MHD and MHD denied payment.

10. Subsequently, TMC and Middlesex decided to appeal the denial of the payments to the MHD Board of Contract Appeals.

11. On the Boston project approximately 72% of the amount appealed represented moneys owed TMC.

12. On the Worcester project approximately 57% of the amount appealed represented moneys owed TMC.

13. Middlesex Corporation was represented by the law firm of Hinckley, Allen & Snyder LLP ("Hinckley Allen"). More specifically, Charles E. Schaub, Jr., Esq.

14. At the suggestion of David K. Skerritt, Vice President of Middlesex, on behalf of TMC, I entered into a verbal agreement with Mr. Skerritt whereby Hinkley Allen would represent the interests of both Middlesex and TMC in the appeals and that the two companies would split the cost of Hinckley Allen's representation on a fifty – fifty basis.

15. During the course of Mr. Schaub's representation of the interests of both companies before the Administrative Law Judge in both matters, a process that spanned approximately four years (2002-2005), I communicated directly with Mr. Schaub on behalf of TMC in person, by telephone and in writing. True copies of some examples of the written communications

are attached to this Affidavit in Exhibit "1".

16. During the three (3) different hearings that were conducted by the Administrative Law Judge, not only did I and Mr. Skerritt make oral presentations to the Judge but Mr. Schaub also made oral presentations with respect to legal issues and argued for the interests of both companies.

17. Further, on the completion of the hearings, Mr. Schaub drafted briefs which supported Millgard's positions in both matters.

18. I worked directly and closely with Mr. Schaub in the drafting and editing of those briefs as they related to TMC's issues.

19. In late December of 2005, Judge Stephen H. Clark filed his reports and recommendations with MHD Commissioner, Luisa Paiewonsky. True copies of those reports and recommendations are attached to this Affidavit as Exhibit "2".

Signed under the pains and penalties of perjury this 28 day of March 2006.

*David B. Coleman* (signature)
David B. Coleman

3

## CERTIFICATE OF SERVICE

    I, John S. Davagian, II, hereby certify that on March 30, 2006 I served a copy of the foregoing document upon counsel for the Defendant, Terri L. Pastori, Esquire, by electronic mail at tpastori@peabody.arnold.com.

    /s/ John S. Davagian, II

    John S. Davagian, II, Esq.

# Exhibit "1"

# The MILLGARD Corporation



# FAX TRANSMITTAL SHEET

**DATE:** 8/06/03

**TO:** CHUCK SCHAUB
HINCKLEY ALLEN & SNYDER

**FAX #:** (617) 345-9020

**FROM:** DAVID COLEMAN
THE MILLGARD CORPORATION

**# OF PAGES TRANSMITTED:** 2 (INCLUDING THIS PAGE)

**SUBJECT:** WORCESTER (KANE SQUARE A)
DRILLED SHAFT CHANGE OF CONDITIONS
TMC JOB NO. C-2084

ATTACHED PLEASE FIND REVISED PAGE 3 OF THE BRIEF FOR THE ABOVE-REFERENCED PROJECT. AN ORIGINAL OF THE ENTIRE DOCUMENT WILL ALSO BE OVERNIGHTED TO YOU.

IF YOU NEED ANYTHING ELSE, PLEASE CONTACT ME AT (734) 425-8550.

cc: Ed Cardoza, TMC (faxed Page 3 only)
David Skerrett, Middlesex (978-742-4423) (faxed Page 3 only)

12822 Stark Road • P.O. Box 510027 • Livonia, MI 48151 • (734) 425-8550 / FAX (734) 425-0624
website: www.millgard.com • email: millgard@email.msn.com



Massachusetts Highway Department
July 31, 2003
Page 3

MILLGARD

- SPT blow counts is not a conclusive way of identifying boulders. The test is primarily utilized to determine refusal of sampler and density/resistance of material being sampled. **In cross examination of MH, the Department concurred that excessive blow counts could also indicate glacial till, coarse gravel and cobbles, which would not meet the greater than 8-inch diameter visual classification or the 1 cubic foot measurement requirement of Drilled Shaft Special Provisions to be classified as boulders.** This testimony by MH substantiates boulder designation utilizing SPT blow counts is non-conclusive and further verifies the validity of our claim.

**MASSACHUSETTS HIGHWAY POSITION**

- Record of Visitors to Soils and Foundations Lab

The Department has claimed that Millgard did not review soil samples or rock cores that were made available to all bidders prior to bid. By reference to MH Exhibit No. 4, the Department has provided a rewritten transcript of visitors to the Soils and Foundations Laboratory whereas neither Millgard representatives nor those of other bidders were signed in to inspect samples at the Soils and Foundations Laboratory.

**MILLGARD REBUTTAL**

In the Millgard testimony, we acknowledged that we had reviewed rock samples at a Massachusetts Highway storage facility located in Haverhill, MA. Millgard testified there was no recollection of signing in to inspect rock samples. We noted there was no contract requirement for the contractor to review soil/rock samples and, more importantly, there was no claim for additional compensation for rock type or hardness. The purpose of our visit was to inspect rock cores to determine drill rate in excavating the rock socket. Therefore, there is no relevancy to this Change of Conditions claim whether Millgard did or did not review the rock samples. Lastly, the subject record of visitors is not the original sign-in document nor did Millgard make any claim that we had visited the Soils and Foundations Laboratory as stated by MH.

**MASSACHUSETTS HIGHWAY POSITION**

- Undulating Rock

The Department testified that the presence of an undulating rock surface was depicted in the Geotechnical Report and the contractor is not entitled to additional compensation.

*Fax to Dave Coleman @ Millgard*

HINCKLEY, ALLEN & SNYDER
*Attorneys at Law*

28 State Street
Boston, MA 02109-1775
(617) 345-9000
Fax: (617) 345-9020

## MEMORANDUM

## CONFIDENTIAL

TO: Middlesex/Millgard
FROM: Charles E. Schaub, Jr.
DATE: September 15, 2003
RE: Telephone Conference with Jack McDonnell

---

Jack indicated that he is currently listening to the tapes with respect to the hearings in this matter. He has listened to 1 ½ of the four tapes, each of which represents one session. One session is either a morning or afternoon. He, therefore, has approximately 2 ½ tapes to review. He believes that he "understands the issue" but before he makes further comments, he wants to listen to all of the tapes. Likewise, he wants to again review the submittals by the parties. We did, however, discuss the issue concerning the obstructions and how that was to be paid. He was under the assumption that there was an item for obstructions within the contract. I told him of the dispute as to whether you are to be paid two times the bid item just for the obstruction or whether the Department's position was that you are supposed to be paid two times the bid item, which includes not only the obstruction but also the drilled foot of caisson. This was the underlying dispute as to the 3/2 payment which was pending before him on several claims. This apparently was the first that he had understood what the issue was as to this pay item dispute. He

#457420
038477/118654

is going to "keep this in mind" as he reviews the Millgard claim. Likewise, he will attempt to pullout the Summer Street claim and set that up for processing.

I subsequently passed this information on to Dave Skerrett who is also going to attempt to further review the situation with Jack and Isaac.

#457420
038477/118654

# HINCKLEY, ALLEN & SNYDER LLP
*Attorneys at Law*

C2098

28 STATE STREET
BOSTON, MASSACHUSETTS 02109-1775
617 345-9000
FAX 617 345-9020

Charles E. Schaub, Jr.
cschaub@haslaw.com

November 3, 2003

**VIA FACSIMILE**

Jack McDonnell
Acting Hearing Examiner
Massachusetts Highway Department
10 Park Plaza
Boston, MA 02116

Re:  **Middlesex Corporation Hearing on November 18th**

Dear Jack:

This is to confirm the discussion which we had on Friday, October 31st with respect to the claims by Middlesex/Millgard for the Worcester and Boston (Summer Street) projects. We will proceed to have you summarize your understanding of the "situation" with respect to the matter for which a hearing had already been held concerning the drilled caissons. You will also have the hearing at this time with respect to the issue as to how obstructions which are encountered during the drilling of the caissons are to be paid.

Should there be any further clarification required concerning the position of Middlesex/Millgard concerning the payment issue, please let me know and we will clarify it prior to the hearing.

Very truly yours,

Charles E. Schaub, Jr.

CES/set

cc:  Isaac Machado, Esq.
     David Skarrett

*VIA FACSIMILE 617 - 973 - 8033*

# The MILLGARD Corporation

March 10, 2004

**MASSACHUSETTS HIGHWAY DEPARTMENT**
Ten Park Plaza
Boston, MA 02116

Attention:   Mr. John J. McDonnell
             Acting Chief Administrative Law Judge

RE:   **POST-HEARING SUBMITTALS – FOLLOW-UP REQUEST
      CONTRACT NUMBER 98182 – CONSTRUCTION OF A NEW BRIDGE
      CARRYING SUMMER STREET OVER THE RESERVE CHANNEL
      BOSTON, MASSACHUSETTS
      TMC JOB NO. C-2083**

Dear Mr. McDonnell:

Responding to your letter of February 25, 2004, with a request to supplement the Millgard/Middlesex submission, please be advised any additional information will be provided by Mr. Schaub, Esq. or by Mr. David Skerret.

Very truly yours,

**THE MILLGARD CORPORATION**

David B. Coleman /cr

David B. Coleman
Vice President

D:CAT:LTR31504DBC.MCDONNELL 31004 SUMMER



12822 Stark Road •       • Livonia, MI 48150 • (734) 425-8550 / FAX (734) 425-0624
website: www.millgard.com • email: millgard@email.msn.com

# Exhibit "2"




## THE COMMONWEALTH OF MASSACHUSETTS
### EXECUTIVE OFFICE OF TRANSPORTATION

**MITT ROMNEY**
GOVERNOR

**KERRY HEALEY**
LIEUTENANT GOVERNOR

**JOHN COGLIANO**
SECRETARY

To: Secretary John Cogliano, EOT
Through: Commissioner Luisa Paiewonsky, MHD
From: Stephen H. Clark, Administrative Law Judge
Date: December 21, 2005
Re: Report and Recommendation

RECEIVED
JAN 20 2006
EOT

I am pleased to submit for your consideration and approval the attached report and recommendation.

Middlesex Corporation (Middlesex) a general contractor under MHD contract #99121 (Contract) to reconstruct Rte. 146 in Worcester appealed from the October 3, 2001 decision of the Claims Committee. The dispute arises over the payment for obstruction removal and rock socket drilling in the installation of drilled shaft columns for a bridge over the Blackstone River. Middlesex claims $708,311.34 for (1) an equitable adjustment under G.L. c. 30, s.39N for the cost of drilled shaft work and obstruction removal; (2) additional payment for "increased quantity" of obstruction found; and (3) additional payment due under Item 945.6 for obstruction removal and rock socket drilled.

The first two claims have no merit. (1) An equitable adjustment is barred because Middlesex deviated substantially from Contract requirements by deliberately deviating from the requirement to interpret pre bid and post bid soil test borings by the VIS method mandated by the Contract. (2) There is no basis for additional payment for increased quantities because the Contract did not include an engineer's estimate for the quantity of obstruction to be removed.

The third claim has merit. Item 945.6 required payment for obstruction removal "at a multiple of 2 times the bid price [for Item 945.6]" for each linear foot of "obstruction removed" or "socket [drilled] into rock." The Department paid Middlesex $290,667, which was at a multiple of "1" for such work, not at "a multiple of 2 times the bid price" required by the Contract. As a result the Department paid Middlesex only ½ the amount it was entitled to for obstruction removed and rock socket drilled.

Accordingly, the Department should pay Middlesex an additional $290,667.

-25-2006 07:45 FROM:UNDERPINNING   7187886501                  16073041506262R     NO.2595   P. 2/2/3



# THE COMMONWEALTH OF MASSACHUSETTS
## EXECUTIVE OFFICE OF TRANSPORTATION

**EOT**

**MITT ROMNEY**
GOVERNOR

**KERRY HEALEY**
LIEUTENANT GOVERNOR

**JOHN COGLIANO**
SECRETARY

**RECEIVED**
JAN 2 0 2006
EOT

To: Secretary John Cogliano, EOT
Through: Commissioner Luisa Paiewonsky, MHD
From: Stephen H. Clark, Administrative Law Judge
Date: December 21, 2005

Re: Report and Recommendation

---

I am pleased to submit for your consideration and approval the attached report and recommendation.

Middlesex Corporation (Middlesex) a general contractor under MHD contract #98182 (Contract) to reconstruct a bridge over the Reserve Channel in Boston appealed from a decision of the Claims Committee on January 31, 2003. The dispute arises over payment for the removal of obstructions in the installation of drilled shaft columns. Middlesex claims that the Department paid it only one half of the amount required under the Contract under Item 945.11 for the 1,387.40 linear feet of obstruction removed. It was paid $693,700 for that work and claims that an additional $673,700 is due.

Middlesex's claim has merit. Item 945.11 required payment for obstruction removal "at a multiple of 2 times the bid price [for Item 945.11]" "per linear foot for each linear foot of obstruction removed." The Department paid Middlesex only once for such work, not at "a multiple of 2 times the bid price" required. As a result the Department paid Middlesex only ½ the amount it was entitled to for obstruction removal. Accordingly, the Department should pay Middlesex an additional $693,700.