UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE MILLGARD CORPORATION,<br>    Plaintiff<br><br>v.<br><br>GADSBY HANNAH, LLP<br>    Defendant | Civil Action No. 04-12388-RWZ |

**PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    The Plaintiff, The Millgard Corporation, hereby opposes the Motion of the Defendant, Gadsby Hannah, LLP, for Summary Judgment. For the reasons stated herein, there is a genuine issue of material fact with respect to the claims averred in the Complaint. Therefore, the Defendant's Motion for Summary Judgment must be denied.

**Procedural Background**

    On or about November 10, 2004, the Plaintiff, The Millgard Corporation ("TMC"), filed suit in this Court stating claims for legal malpractice. By agreement of the parties and the assent of the Court, the claims of liability and damages were bifurcated on or about February 10, 2005. The parties have conducted discovery with respect to the Defendant's liability. Upon the conclusion of discovery on the liability phase of the case, the Defendant has moved for summary judgment.

**Summary of Position**

    This case arises as a result of the Defendant's failure to review the time standards set in a Connecticut statute and advise the client accordingly.

1

The Plaintiff, The Millgard Corporation, contends that (1) it and Defendant, Gadsby Hannah, LLP maintained a long-standing attorney-client relationship regarding numerous legal matters, including a construction project for the State of Connecticut known as the Tomlinson Project; (2) that it relied on Gadsby Hannah to advise and assist it with legal matters as they were identified and/or arose; (3) that Gadsby Hannah failed to timely and properly advise TMC of the notice requirements in public bonding statute in the State of Connecticut[1], and (4) that the facts giving rise to the claim are reasonably apparent and do not require any sort of sophisticated analysis by an expert witness.

**Brief Summary of the Disputed Material Facts**

TMC's Response to Gadsby Hannah's Statement of Undisputed Material Facts as well as Plaintiff's Statement of Additional Undisputed Material Facts reveal voluminous facts upon which the parties differ. However, for the purposes of this opposition, TMC will focus on those disputes that it considers so material that by law, this Court must deny Summary Judgment to the Defendant.

First of all, although it is clear from the facts that an attorney-client relationship existed between TMC and Gadsby Hannah, what is completely unclear is exactly what that relationship was and the legal representation and expertise TMC reasonably came to rely on from Gadsby Hannah in that relationship.

There was never any written agreement between the parties. Gadsby Hannah maintained over twenty files over a period of eight years and invoiced TMC nearly $480,000.00 for its services. Gadsby Hannah claims that its duty to TMC differed depending on whether or not it

---

[1] Connecticut General Statute Sec. 49-42. A true copy of the statute is attached to the Affidavit of Terri L. Pastori as Exhibit "R".

was asked isolated questions with respect to a matter or whether TMC turned an entire matter over to Gadsby Hannah to handle. Yet, Ron Busconi, the primary attorney that TMC dealt with over the course of the relationship, admits that he never explained that distinction to TMC.

TMC is entitled to present to the finder of fact examples of the advice and representation it received from Gadsby Hannah in the five years prior to the debacle that was the Tomlinson project. It is only by presenting those examples that the nature and form of the attorney-client relationship can be determined. This certainly is not an area that requires expert testimony. What the client was reasonably entitled to expect is the key to the relationship and determinative of the duty owed by the attorney to the client. Without any written or oral agreement between the parties, it must be the conduct of the parties over time that determines the form of the relationship, and consequently, the duty owed by the attorney to the client. Determining that conduct requires a finding of fact.

Secondly, the parties clearly differ as to substance of the communications between them. For example, although the parties agree that Richard Millgard and Ron Busconi spoke by phone several times about Tomlinson in late May and early June of 1998, they disagree as to what Mr. Millgard inquired about.  Mr. Busconi claims that he needed copies of certain documents to advise TMC yet he can't recall requesting them from his client. Mr. Busconi admits attending two mediation sessions in Connecticut in the spring of 1999 but he is unclear as to for what purpose his presence was required. On the other hand, Dennis Millgard is quite clear that he requested Mr. Busconi attend those sessions to provide TMC with legal advice.  Gadsby Hannah maintains that the last day TMC performed work on the Tomlinson for the purposes of the Connecticut Bond Statute was September 15, 1998. TMC maintains it was September 7, 1999.[2]

---

[2] In ruling in favor of the surety, National Union Fire Insurance Company of Pittsburgh, PA, in Civil Action No. 3:00CV1685(CFD), Judge Droney ruled that no matter which date is used, the surety would prevail because TMC's

3

Also, the two attorneys at Gadsby Hannah that TMC relied upon the most, Ron Busconi and Richard Allen, in late 1998 were at odds as to whether TMC should file suit or a bond claim against White Oak.

**Argument**

*a.    Summary Judgment Standard*

A motion for summary judgment can only be allowed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *FED. R. CIV. P. 56(c)*. An issue of fact is "genuine" if it may reasonably be resolved in favor of either party. *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997). "Material" facts are those that possess the capacity to sway the outcome of the litigation under the applicable law. *Okmyansky v. Herbalife Intern. of America, Inc.*, 415 F.3d 154, 158 (1st Cir. 2005). In ruling on the motion, the Court must view the facts in the light most favorable to the non-moving party, here the plaintiff, drawing all reasonable inferences in that party's favor. *Bienkowski v NortheasternUniversity*, 285 F.3d 138, 140 (1st Cir. 2002). Finally, it is well established that any doubt as to whether summary judgment should be granted must be resolved against the moving party. *Correllas v. Vivieros*, 410 Mass. 314 (1991).

*b.    Duty of Care Standard*

Generally, in order to sustain a claim of negligence, a plaintiff must show that a defendant owed it a duty of care. *Spinner v. Nutt*, 417 Mass. 549, 631 N.E.2d 542, 544 (1994). The general rule in a legal malpractice claim is that "an attorney's liability for negligence arises

---

notice by Gadsby Hannah was dated April 7, 2000. However, in his report, Joel Lewin, Gadsby Hannah's expert limits his opinion to the period ending March 15, 1999 by adopting the date of September 15, 1998 as TMC's last day of work without discussion of his reasoning for not utilizing the September 7, 1999 date. Exhibit 13 to the Affidavit of John S. Davagian, II.

4

out of a duty owed to a client." *Norman v. Brown, Todd & Heyburn*, 693 F.Supp. 1259, 1265 (D.Mass. 1988).  More specifically, as regards to a legal malpractice action, an attorney owes his client an obligation to exercise a reasonable degree of care and skill in the performance of his legal duties.  *Pongonis v. Saab*, 396 Mass. 1005, 1005, 486 N.E.2d 28, 29 (1985) citing *Glidden v. Terranova*, 12 Mass.App.Ct. 597, 598, 427 N.E.2d 1169 (1981) *McLellan v. Fuller*, 226 Mass. 374, 377-378, 115 N.E. 481 (1917).  The issue of whether such a duty exists is a question of law.  *DaRoza v. Arter*, 416 Mass. 377, 381, 622 N.E.2d 604, 607 (1993).

*c.     Attorney-Client Relationship Existed Regarding Tomlinson*

A duty of care arises from the attorney-client relationship. *Spinner* at 417 Mass. at 552, 631 N.E.2d at 544 (1994).  The relationship need not be expressed; it may be implied from the parties' conduct.  *Fitzsimmons v. Soutter*, 1994 WL 879599 (Mass. Super.) (Sosman, J.) citing *Robertson v. Gaston Snow & Ely Bartlett*, 404 Mass. 515, 522, 356 N.E.2d 344, cert. denied, 493 U.S. 894 (1989), quoting *Page v. Frazier*, 388 Mass. 55, 62, 445 N.E.2d 148 (1983).  A formal contract or retainer agreement is not required to impose a duty; the parties' conduct governs the existence and scope of an attorney-client relationship. *National Credit Union Admin. Board v. Stone*, 1994 WL 175044 (D.Mass. 1994) (Zobel, J.) citing *Robertson*, 356 N.E.2d at 348; *Devaux v. Amer. Home Assurance Co. et al*, 387 Mass. 814, 444 N.E.2d 355, 357 (1983). See also *Brandlin v. Belcher*, 67 Cal.App.3d 997, 1001, 134 Cal.Rptr. 1 (1977) (While neither a retainer nor formal agreement is required to establish the attorney-client relationship . . . , the relationship with respect to a particular transaction is nevertheless required to create the duty of an attorney to act for his client in the transaction" [citation omitted]).  More specifically, in a legal malpractice action, it is not sufficient merely to prove an attorney-client relationship existed with respect to some matters.  It is necessary to establish that the relationship existed

with respect to the act or omission upon which the malpractice claim is based. *Page*, 388 Mass. at 62 (1983) citing *Kurtenbach v. TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977).

However, "under Massachusetts law, an attorney-client relationship may be demonstrated when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give the desired advice or assistance . . .  In appropriate cases, the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them, and the attorney, aware of such reliance, does nothing to negate it." *International Stategies Group, LTD. V. Greenberg Traurig*, LLP, 2006 Westlaw 229034 (D.Mass. 2006) (Zobel, J.) citing *Devaux*, 387 Mass. at 818 (1983), quoting *Kurtenbach*, 260 N.W.2d at 56 (Iowa 1977).  See also *Flaherty v. Baybank Merrimack Valley, N.A.*, 808 F.Supp. 55 (1st Cir. 1992)(Zobel, J.).

TMC, through its officers and/or employees, clearly sought advice or assistance from Gadsby Hannah relative to multiple aspects of the Tomlinson project.  This Gadsby Hannah freely admits.  Furthermore, in May of 1998, Richard Millgard, then Vice President of TMC, sought specific legal advice relative to (1) the bond claim process, (2) pursuing a claim for differing subsurface conditions and (3) how to file a claim through a general contractor against a public owner in Connecticut. All of these matters were within Gadsby Hannah's professional competence, and Busconi agreed to research the questions raised.  Based on the handling of prior matters and its ongoing relationship with Gadsby Hannah, TMC expected Gadsby Hannah to advise it on Tomlinson in the same manner that it had come to rely upon Gadsby Hannah in prior matters.

And yet, Gadsby Hannah claims that with respect to Tomlinson, TMC kept it "in

the dark". TMC vehemently denies this contention. Gadsby Hannah claims that TMC deliberately withheld information from Gadsby Hannah in order to avoid legal expenses; an allegation that TMC also denies. Gadsby Hannah admits that although it represented TMC on a number of matters over the years, TMC did not specifically retain Gadsby Hannah to provide "comprehensive legal services" on the Tomlinson Bridge Project. Yet, Gadsby Hannah further admits that it never defined that term to TMC nor did it tell TMC that it would not receive services to the level at which TMC came to rely upon from its attorneys.

With regard to Tomlinson there is ample evidence that an attorney-client relationship existed in May of 1998 and carried forward. TMC clearly sought legal advice from Gadsby Hannah on multiple issues regarding Tomlinson. As Gadsby Hannah freely concedes, "it is undisputed that Gadsby Hannah attorneys spent a total of 7 hours from May 27, 1998 to June 2, 1998" allegedly responding only to a "discrete" question regarding a differing or changed site condition. The fact is during that very same time period, Richard Millgard had three separate telephone conferences with Busconi inquiring about at least two other issues including a specific inquiry about the Connecticut bond claim process, which included the timing of the same. In December of 1998, after more than sufficient time to review and analyze the issue, Busconi advised TMC not to pursue a bond claim at that time because it would adversely affect settlement negotiations. TMC relied upon that advice to its detriment.

Gadsby Hannah asserts that the standard of care did not require it to provide advice beyond the specific tasks that TMC assigned it. More specifically, Gadsby Hannah claims that it was not required to provide TMC with general advice about its rights and risks related to the Tomlinson Bridge Project, including bond notification. TMC did in fact inquire about bond notification and based on past conduct, TMC expected Gadsby Hannah to do just that. For

example, in July of 1998, Busconi provided TMC with written advice relative to termination for convenience on another project.

If reasonable persons could differ regarding the attorney-client relationship, the issue must be resolved by the fact finder. *National Credit Union Admin. Board v. Stone*, 1994 WL 175044 (D.Mass. 1994) (Zobel, J.) citing *Sheinkopf v. Stone*, 927 F.2d 1259,1264 (1st Cir. 1991). *See also* Robertson, 404 Mass. at 522; *Page*, 388 Mass. at 61 (1983); *Devaux*, 387 Mass. at 818, (1983); *Kurtenbach*, 260 N.W.2d at 57 (Iowa 1977). Furthermore, the question whether an attorney-client relationship exists depends on the reasonableness of the plaintiff's reliance. The application of the reasonable person standard is uniquely within the competence of the jury. *Devaux*, 387 Mass. at 818 (1983); see 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2729, 1t 560 (1973).

d.      *No Need for Expert Testimony*

In an action for legal malpractice, Massachusetts has recognized that expert testimony is generally needed to establish the level of care owed by the attorney in the particular case. *Pongonis*, 396 Mass. at 1005, 486 N.E.2d at 29 (1985). However, no such expert testimony is required where the facts demonstrate that the attorney's lack of care and skill is so obvious that the trier of fact can resolve the issue as a matter of common knowledge. Id.; *Lima v. Delaney*, 1990 WL 57648 (D.Mass. 1990) (Zobel, J.); *Glidden*, 12 Mass.App.Ct. at 598(1981). See also *Focus Inv. Assoc. Inc. v. American Title Ins Co.*, 992 F.2d 1231, 1239 (1st Cir. 1993) (Cases which can be resolved based on a layperson's common knowledge are those where negligence is "clear and palpable" and where the fact finder need not analyze the attorney's exercise of legal expertise); *Flanders & Medeiros, Inc. v. Bogosian*, 868 F.Supp 412 (1st Cir. 1994) (Failure to

file an action within the statute of limitations is a situation where negligence is "clear and palpable".)

Furthermore, Massachusetts is not the only jurisdiction that has upheld a finding of legal malpractice without the use of expert testimony. Courts in other jurisdictions have also dispensed with the expert testimony requirement in cases where an attorney has failed to act once the attorney had undertaken to represent a client. Examples include failing to protect a client's interest prior to the expiration of significant deadlines such as the limitations period. *See* <u>Wagenmann v. Adams</u>, 829 F.2d 196, 218-219 (1st Cir. 1987).

As stated above, the present matter is one claiming that Gadsby Hannah failed to timely preserve TMC's rights to file a bond claim in the state of Connecticut. Gadsby Hannah simply did not advise TMC of the proper time requirements. The facts giving rise to this claim are simple to understand, and thus do not require the assistance of expert witness testimony to explain. Therefore, no expert witness testimony is needed.

However, in contrast, Gadsby Hannah argues that this case is one of subtleties, requiring a sophisticated analysis far beyond the experience of a layperson to define the contours of the applicable standard of care and corresponding breach. Yet, and for reasons wholly unknown, Gadsby Hannah makes this broad-brush contention without ever articulating the substance and nature of the sophisticated analysis that is allegedly required. Instead, Gadsby Hannah simply claims that TMC asked it to research Connecticut law in May 1998 and then ten months later asked it to respond to some correspondence in March of 1999. If there was only limited interaction between the parties as Gadsby Hannah now suggests, then (1) what are the alleged subtleties Gadsby Hannah refers to that require expert testimony and (2) where, when, and why does the alleged need for the sophisticated analysis arise? Gadsby Hannah offers little insight

through its Memorandum and accompanying expert affidavit to be able to answer these questions. Instead, Gadsby Hannah merely asserts that it is entitled to summary judgment in its favor simply because TMC did not designate an expert witness in this case.

In looking to the law to support its contention, Gadsby Hannah unfortunately misstates the *Pongonis* rule, asserting that "the standard of care against which an attorney's actions must be measured . . . ***must*** be established by expert testimony." *Memorandum of the Defendant Gadsby Hannah in support of its Summary Judgment Motion, p.11*. (Emphasis added.) Gadsby Hannah also incorrectly asserts that because "TMC does not have an expert to establish the required standard of care, that its legal malpractice claim necessarily fails. *Memorandum of the Defendant Gadsby Hannah in support of its Summary Judgment Motion, p. 16*. In making these contentions, Gadsby Hannah cites to *Flanders & Medeiros, Inc. v. Bogosian*, 868 F.Supp 412 (1st Cir. 1994), a case in which the Court clearly articulated that ***not*** every legal malpractice action requires expert witness testimony, citing *Focus* for the proposition that cases which can be resolved based on a layperson's common knowledge are those where negligence is "clear and palpable" and where the fact finder need not analyze the attorney's exercise of legal expertise. *Flanders* specifically stated, as an example, that a failure to file an action within the statute of limitations is a situation where negligence is "clear and palpable." *Flanders*, 868 F.Supp at 422 (1st Cir. 1994) quoting *Focus*, 992 F.2d at 1239 (1st Cir. 1993).

Furthermore, this very Court (Zobel, J.) has previously agreed that an expert witness is not needed in every legal malpractice action, stating that:

> "The *Pongonis* rule is based on the premise that expert testimony is required in legal malpractice actions in order to assist the jury in its fact-finding task. The exception to the *Pongonis* rule covers those cases where the jury needs no such assistance. Whether a particular case falls within the general *Pongonis* rule or its exception has in past cases only been decided at the close of the plaintiff's evidence at trial". *Lima v. Delaney*, 1990 WL 57648 (D.Mass. 1990) (ZOBEL,

10

J), citing *Wagenmann v. Adams*, 829 F.2d 196 (1st. Cir. 1987); *Pongonis v. Saab*, 396 Mass. 1005, 486 N.E.2d 28 (1985); *Colucci v. Rosen*, 25 Mass.App.Ct. 107, 515 N.E.2d 891 (1987); *Glidden v. Terranova*, 12 Mass.App.Ct. 597, 598, 427 N.E.2d 1169 (1981).

Based on the foregoing, the Court (Zobel, J.) "decline[d] to make such a determination [that expert testimony was necessary] at the summary judgment stage." *Lima v. Delaney*, 1990 WL 57648 (D.Mass. 1990). Based on the precedent set by this Court, the same determination should be made in the present case.

*e.     Damages of Lost Profits are Recoverable*

Gadsby Hannah has also moved for summary judgment claiming, as a matter of law, that lost profits and overhead costs are not recoverable in a legal malpractice action. This assertion is not correct. Gadsby Hannah relies on *Pacy v.Long*, a state Superior Court decision to support its contention.

*Pacy v. Long* was a legal malpractice action arising from the negligent representation of a defendant in a personal injury case. The plaintiff in the personal injury case obtained a substantial judgment, and one of the defendants, Pacy, subsequently sued his attorney, Long, for alleged negligent legal representation.

At the time of trial in the subsequent malpractice action, Long moved *in limine* to exclude evidence of Pacy's damages arising from lost profits. The Court (Gershengorn, J.) granted the motion because it determined that Pacy failed to timely identify lost profits as an element of his damages in either the demand letter, the complaint, the amended complaint, the plaintiff's answers to interrogatories, or most significantly in response to the Court's discovery order following Long's motion to compel. Long didn't learn of the claim for lost profits until it arose in a deposition some three years after the litigation commenced. The Court scolded Pacy, stating that the:

11

> [d]efendant would not otherwise have known about this claim, as it was not an element of damages averred in the numerous pleadings and documents served on him. Because the plaintiff failed to put defendant on notice of the additional amount of damages, this Court will not allow any evidence of the alleged lost profits to be presented at trial. *Pacy v. Long*, 1995 WL 1146843 (Mass.Super.)(Gershengorn, J.)

The only reason the Court did not permit evidence of lost profits was to impose a sanction on Pacy, and <u>not</u> because lost profits are not recoverable as a matter of law, as Gadsby Hannah erroneously suggests.

Gadsby Hannah correctly cites that in a legal malpractice action, an attorney may be held liable for any reasonably foreseeable loss caused by his or her negligence and that lost profits are a form of special damages. *Pacy* citing *Fishman v. Brooks*, 396 Mass. 643, 646, 487 N.E.2d 1377 (1986) and *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 479, 583 N.E.2d 806 (1991). However, a closer reading of *Pacy* reveals that lost profits are indeed recoverable as long as such damages are specifically averred or do not come as a complete surprise at the time of trial. *Pacy* citing *Mass.R.Civ.P. 9(g)*; *Antokol v. Barber*, 248 Mass. 393, 395, 143 N.E. 350 (1924). TMC specifically alleged lost profits in Count II of its Complaint in this action.

In the alternative, Gadsby Hannah claims that TMC cannot recover "benefit of the bargain" damages because such damages are not recoverable in negligence actions under Massachusetts Law. However, legal malpractice is basically predicated upon the attorney's breach of contract with the client. *Pytka v. Gadsby Hannah, LLP*, 2002 WL 31862712 at 7, citing *Hendrickson v. Sears*, 365 Mass. 83, 86 (1974). Therefore, "benefit of the bargain" damages are recoverable. In support of its alternative claim, Gadsby Hannah relies on *Danca v. Taunton Savings Bank*, 385 Mass. 1 (1982), a case based on a misrepresentation claim that requires a showing of deceit as an element of that underlying claim. Without a showing of

deceit, the plaintiff is not entitled to *any* damages, including "benefit of the bargain" damages. Based on the facts of *Danca*, that holding is wholly misplaced as applied to the present action.

As Gadsby Hannah knows, TMC has specifically averred damages of "anticipated profits and overhead" in Count II of the complaint. As Gadsby Hannah further knows, the issues of liability and damages in this case have been bifurcated. The issue of damages has been preserved until a determination on liability has been made. Based on the foregoing, discovery on the issue of damages has been stayed and is not complete[3]. Therefore, Gadsby Hannah's motion for summary judgment relative to damages has not yet ripened due to the bifurcation and should be stricken as premature.

## **CONCLUSION**

For the reasons set forth above in this Opposition, Plaintiff, The Millgard Corporation, respectfully requests that this Honorable Court deny Defendant, Gadsby Hannah, LLC's Motion for Summary Judgment. Plaintiff, The Millgard Corporation respectfully requests a hearing on this matter.

**The Millgard Corporation**
By its attorney,

/s/ John S. Davagian, II

Date:   3/31/2006

John S. Davagian, II
B.B.O. No. 114740
Thomas E. Sartini, III
B.B.O. No. 637971
Davagian & Associates
365 Boston Post Road, Suite 200
Sudbury, MA 01776
978-443-3773

---

[3] TMC anticipates conducting document discovery and then deposing at least Peter Huntsman, Jack Morrissey, and Ed Lassman during the damages phase of the case. See Affidavit of Counsel in Accordance with Rule 56(f).

## CERTIFICATE OF SERVICE

  I, John S. Davagian, II, hereby certify that on March 31, 2006 I served a copy of the foregoing document upon counsel for the Defendant, Terri L. Pastori, Esquire, by electronic mail at tpastori@peabodyarnold.com.

                 /s/ John S. Davagian, II

                 John S. Davagian, II, Esq.