UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE MILLGARD CORPORATION,<br>    Plaintiff<br><br>v.<br><br>GADSBY HANNAH, LLP<br>    Defendant | Civil Action No. 04-12388-RWZ |

**RESPONSE OF THE MILLGARD CORPORATION TO THE DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS, PURSUANT TO LOCAL RULE 56.1**

Pursuant to Local Rule 56.1, the Plaintiff, The Millgard Corporation ("TMC"), responds to the Defendant, Gadsby Hannah LLP's statement of undisputed material facts, as follows:

**GENERAL OBJECTION**

TMC objects to all assertions by Gadsby Hannah that are based only upon the opinion of its retained expert witness, Joel Lewin, and made strictly in an effort to gain an admission to a legal conclusion. TMC further objects to Gadsby Hannah's recurring mischaracterizations of various facts asserted.

**I.  INTRODUCTORY FACTS**

1. Admitted.

2. Admitted.

3. Admitted

4. Admitted.

5. Admitted. However, TMC objects to the word "frequently" as a subjective characterization of Richard Millgard's testimony by Gadsby Hannah.

1

6. Admitted.

7. Admitted in part and denied in part. TMC admits that it generally negotiated its own contracts but denies that it did so without consultation with counsel or that it handled many of its contract disputes including providing notice of and prosecuting of claims without assistance of counsel. Affidavit of Dennis Millgard at 6 and 7.

8. Admitted in part and denied in part. Dennis Millgard admitted that he is familiar with how payment bonds work but denies Gadsby Hannah's characterization that he is "very knowledgeable" on that subject. Affidavit of Dennis Millgard at 8.

9. OBJECTION.  TMC objects to paragraph 9 of the ground that Gadsby Hannah asserts the opinion of its retained expert witness, and does not aver a statement of fact. Subject to and without waiving this objection, TMC admits that this statement is an accurate summary of Mr. Lewin's testimony. However, it is only an opinion and not fact.

10. Admitted.

11. Admitted.

12. Admitted.

## II. THE TOMLINSON BRIDGE PROJECT

13. Admitted.

14. Admitted.

15. TMC admits to the subcontract document and states that the document speaks for itself.

16. Denied.

17. Admitted.

18. TMC admits to the subcontract document and states that the document speaks for itself.

19. Admitted.

20. Admitted.

21. Admitted in part. Richard Millard's Transcript at 42 is silent as to the month.

22. Admitted.

23. Admitted in part and denied in part. TMC did give notice of the alleged differing site conditions to White Oak claiming the rock strata was harder than depicted in the contract documents but the term "less fractured" was not one of TMC's allegations. Dennis Millgard Transcript at 74-77.

24. Admitted in part. The change order in early 1998 allowed TMC to use a different method of installation which was more expensive but for which ConnDOT agreed to pay extra.

25. Admitted.

26. Denied. ConnDOT initially rejected TMC's second claim for a differing site condition but subsequently agreed to mediate the claim. During the course of mediation ConnDOT offered White Oak a total of $600,000.00 to settle the claim. After consultation with TMC, White Oak rejected that offer. Dennis Millgard Transcript at 176-179.

27. Admitted.

### III.     THE BRIDGEPORT PROJECT

28. Admitted.

29. Admitted.

30. Admitted.

31. Denied. Coleman Transcript at 28-31.

32. Admitted.

33. Denied. Exhibits "H" and "J" to the Pastori Affidavit speak for themselves.

### IV. TMC'S LIMITED USE OF GADSBY HANNAH

34. Admitted in part and denied in part. TMC admits that Exhibit "J" contains some records of the billings from Gadsby Hannah to TMC but denies that they are all inclusive. Busconi Transcript at 81-84 and Giffune Transcript at 17-18.

35. Denied. It is impossible to tell from the Billing Records or the Transcript of the Deposition of Richard Millgard what David Coleman spoke to Ronald Busconi about on May 27, 1998. Busconi Transcript at 81-84 and Giffune Transcript at 17-18.

36. Denied. It is impossible to tell from the Billing Records what David Coleman spoke to Ronald Busconi or the nature or scope of his inquiry on or about May 27 or 28, 1998. Busconi Transcript at 81-84 and Giffune Transcript at 17-18.

37. Admitted in part, denied in part. TMC admits that Gadsby Hannah did some research relative to the differing subsurface condition but denies that it did "necessary research" to answer TMC's questions regarding bond notification and claims under Connecticut law. Busconi Transcript at 81-84 and Giffune Transcript at 17-18.

38. TMC admits that there is a research memorandum attached to Mr. Busconi's Affidavit as Exhibit "A". However, TMC denies that it ever receive a copy of that memorandum prior to the commencement of this litigation. Affidavit of Dennis Millgard at ¶ 31.

39. TMC admits only that Richard Millgard consulted with Ron Busconi relative to Connecticut law on May 28 and 29 and June 1, 1998 and that Gadsby Hannah invoiced for that work. Richard Millgard Transcript at 60-63.

40. Denied. Richard Millgard Transcript at 60-63.

41. Denied. In paragraph 6 of his Affidavit Mr. Busconi denies that Richard Millgard asked him about "bond notification". The words "limitations period" are not contained within

4

paragraph 6 of the Affidavit. Richard Millgard Transcript at 60-63.

42. Admitted.

43. As Gadsby Hannah is in sole control of its records, Millgard can neither admit or deny this statement.

44. TMC objects to this statement as a characterization of Richard Millgard's deposition testimony. Further, it is confusing. For example, the words "in connection with his question" are unclear. What question? The cited pages of the transcript speak for themselves.

45. Admitted.

46. Denied. Richard Millgard has no recollection as to whether or not Mr. Busconi ever requested any documents in May of 1998 or, if he did, whether or not he supplied them. Richard Millgard Transcript at 66.

47. TMC admits providing Gadsby Hannah with certain documents in April of 2000 when requested by John Giffune. TMC denies the remainder of the paragraph. Richard Millgard Transcript at 66.

48. Denied. Dennis Millgard Transcript at 163-165.

49. Denied. Busconi Transcript at 81-84; Giffune Transcript at 17-18; and Dennis Millgard Transcript at 163-165.

50. Admitted in part and denied in part. TMC admits that a luncheon took place but does not admit that Gadsby Hannah paid for the luncheon. Affidavit of Dennis Millgard at ¶ 33.

51. Admitted.

52. Denied. Affidavit of Dennis Millgard at ¶ 32.

53. Admitted.

54. Admitted.

55. Admitted.

56. Admitted in part and denied in part. TMC admits that Jack Morrisey of White Oak wrote a letter to Dennis Millgard dated March 2, 1999. Exhibit "L" to the Pastori Affidavit speaks for itself. TMC denies that it "walked off the job in September 1998". Dennis Millgard Transcript at 241-244. Busconi Transcript at 35.

57. Denied. TMC stopped work on September 15, 1998, but its last day of work was on September 7, 1999. Affidavit of Dennis Millgard at ¶ 34. Dennis Millgard Transcript at 140.

58. Denied. TMC denies that it "walked off the job in September 1998". Dennis Millgard Transcript at 241-244. Busconi Transcript at 35.

59. Admitted.

60. Admitted.

61. Admitted.

62. Admitted.

63. Denied. TMC denies that Dennis Millgard's testimony at page 137 of his Transcript supports this statement. Further, paragraph 15 of Mr. Busconi's Affidavit is unsupported by any facts but is rather his subjective impression.

64. Denied. The precise amount of time that Gadsby Hannah spent working on this matter cannot be determined and may exceed the time billed. Busconi Transcript at 81-84 and Giffune Transcript at 17-18.

65. Denied. Richard Millgard has no recollection as to whether or not Mr. Busconi requested any documents or, if he did, when he supplied them. Richard Millgard Transcript at 65-

67. See also Exhibits "L" and "M" to the Affidavit of Terri L. Pastori.

66. TMC admits that it did not involve Gadsby Hannah in the auditing of its records as the audit took place at TMC's office in Livonia, Michigan. However, it did consult with Gadsby Hannah with respect to the calculation of the claim. Dennis Millgard Transcript at 234-236. Giffune Transcript at 13.

## IV. THE MEDIATION

67. Admitted.

68. Admitted.

69. Admitted.

70. Admitted in part and denied in part. Dennis Millgard admits that he was optimistic in early 1999 that the problems would be worked out but denies that "he had a 20 to 30 year relationship with White Oak's president, Jack Morrissey" or ever represented to any person that he had such a relationship. Affidavit of Dennis Millgard at ¶¶ 28-30.

71. Denied. Dennis Millgard denies that he ever stated to anyone that that he did not want Gadsby Hannah involved because he thought they would jeopardize the negotiation or mediation process or that he was unwilling to pay them for their legal services. Affidavit of Dennis Millgard at ¶ 35.

72. Denied. The record is replete with communications from Richard Millgard, David Coleman and Edmund Cardoza. For example, see Exhibits "H", "I" and "Q" to the Affidavit of Terri L. Pastori.

73. Denied. Richard Millgard met and spoke with White Oak as did Brian Sweeney of Haley & Aldrich and Ron Busconi. Richard Millgard Transcript at 76. Dennis Millgard Transcript at 97, 137-138, 172-179, 187-188.

74. Admitted in part and denied in part. On some occasions, but not all, Dennis Millgard did communicate directly with the mediator.

75. Admitted as to technical issues. Dennis Millgard Transcript at 133-140.

76. Admitted as to technical issues. Dennis Millgard did ask Mr. Busconi for legal advice with respect to the mediation sessions and did request his presence at those sessions for that purpose. Affidavit of Dennis Millgard at 37. Dennis Millgard Transcript at 133-140 and 176-177.

77. Denied. Dennis Millgard's Transcript at 127-128 makes no reference to a document request.

78. Denied. Dennis Millgard told Huntsman that he was consulting with Mr. Busconi. Further, Dennis Millgard never told anyone that he did not want to incur the expense of legal representation. Dennis Millgard's Transcript at 127-132. Affidavit of Dennis Millgard at ¶ 35.

79. Admitted in part. There were two mediation sessions. One on April 26, 1999 and May 19, 1999. Mr. Busconi was present at both sessions at the request of Dennis Millgard and Gadsby Hannah invoiced Millgard for Mr. Busconi's time at both sessions. Dennis Millgard Transcript at 133-140 and 176-177. Billing Records attached to the Affidavit of John S. Davagian, II as Exhibit 14.

80. Admitted in part, denied in part. TMC admits that Mr. Busconi did attend both mediation sessions at the request of Dennis Millgard and billed TMC for his time. Billing Records attached to the Affidavit of John S. Davagian, II as Exhibit 14. However, TMC denies that Dennis Millgard made a last minute request or that Busconi only attended as a personal favor. Affidavit of Dennis Millgard at ¶ 37.

81. Admitted.

82. Denied. ConnDOT made an offer in settlement in the amount of $600,000.00. Dennis Millgard Transcript at 176-177.

83. Admitted in part, denied in part. TMC admits that it received a termination letter from White Oak but denies that it "walked off the job in September 1998". Dennis Millgard Transcript at 241-244.

84. Admitted.

V. **TMC RETAINS GADSBY HANNAH TO PURSUE A CLAIM IN MARCH 2000**

85. Admitted.

86. Admitted.

87. Denied. TMC requested that Gadsby Hannah commence a lawsuit in late 1998 or early 1999 but Ron Busconi strongly counseled against it. Dennis Millgard Transcript at 131-132.

88. TMC lacks sufficient knowledge to admit or deny.

89. Admitted.

90. Admitted. Gadsby Hannah also made a second demand on May 5, 2000. John Giffune Transcript at 29.

91. Admitted.

92. OBJECTION. TMC objects to paragraph 92 on the grounds that it seeks an admission to a legal conclusion and not an averment of fact. Subject to and without waiving this objection, denied. TMC demobilized from the site in September of 1999. Dennis Millgard Transcript at 140.

93. Denied. TMC stopped work on September 15, 1998, but its last day of work was on

9

September 7, 1999.  Affidavit of Dennis Millgard at ¶34. Dennis Millgard Transcript at 140.

94. OBJECTION.  TMC objects to paragraph 94 on the grounds that it seeks an admission to a legal conclusion and not an averment of fact.

95. OBJECTION.  TMC objects to paragraph 95 on the grounds that it seeks an admission to a legal conclusion and not an averment of fact.

96. OBJECTION.  TMC objects to paragraph 96 on the grounds that it seeks an admission to a legal conclusion and not an averment of fact.

97. OBJECTION.  TMC objects to paragraph 97 on the grounds that it seeks an admission to a legal conclusion and not an averment of fact.

## VI.    GADSBY HANNAH'S CONDUCT SATISFIED THE APPLICABLE STANDARD OF CARE

OBJECTION.  TMC objects to all assertions by Gadsby Hannah that are based only upon the opinion of its retained expert witness, Joel Lewin and made strictly in an effort to gain an admission to a legal conclusion.

98. Admitted.

99. OBJECTION.  TMC objects to paragraph 99 on the grounds that it seeks an admission to a legal conclusion and not an averment of fact.  TMC admits that this paragraph expresses Attorney Lewin's opinion but denies that his opinion is dispositive of the standard of care required.

100.    OBJECTION.  TMC objects to paragraph 100 on the grounds that it seeks an admission to a legal conclusion and not an averment of fact.  TMC admits that this paragraph expresses Attorney Lewin's opinion but denies that his opinion is dispositive of the standard of care required.

101.    OBJECTION. TMC objects to paragraph 101 on the grounds that it seeks an admission to a legal conclusion and not an averment of fact. TMC admits that this paragraph expresses Attorney Lewin's opinion but denies that his opinion is dispositive of the standard of care required.

102.    OBJECTION. TMC objects to paragraph 102 on the grounds that it seeks an admission to a legal conclusion and not an averment of fact. TMC admits that this paragraph expresses Attorney Lewin's opinion but denies that his opinion is dispositive of the standard of care required.

103.    TMC admits that this paragraph is a direct quote from the Lewin affidavit.

104.    OBJECTION. TMC objects to paragraph 104 on the grounds that it seeks an admission to a legal conclusion and not an averment of fact. Denied. TMC possesses notes from conversations between it and Gadsby Hannah on May 28, 29 and June 1 of 1998 regarding its requests of Gadsby Hannah for legal advice on the issue of bond notification. Affidavit of Richard Millgard at 5-11 and Exhibit 1 to same. TMC admits that this paragraph is a direct quote from the Lewin affidavit wherein Lewin expresses his opinion but TMC denies that Lewin's opinion is dispositive of the standard of care required.

105.    OBJECTION. TMC objects to paragraph 105 on the grounds that it seeks an admission to a legal conclusion and not an averment of fact. An expert is not required to establish the standard of care where defendant's negligence is either "obvious" and/or "clear and palpable", as it is in this case. See <u>Lima v. Delaney</u>, 1990 WL 57648 (D. Mass. 1990) (Zobel, J.); <u>Pagonis v. Saab</u>, 396 Mass. 1005, 486 N.E.2d 28 (1985).

                                                    **The Millgard Corporation**
                                                    By its attorney,

                                                    /s/ John S. Davagian, II

Date:   3/31/2006                            John S. Davagian, II
                                                    B.B.O. No. 114740
                                                    Davagian & Associates
                                                    365 Boston Post Road, Suite 200
                                                    Sudbury, MA 01776
                                                    978-443-3773


## CERTIFICATE OF SERVICE

     I, John S. Davagian, II, hereby certify that on March 31, 2006 I served a copy of the foregoing document upon counsel for the Defendant, Terri L. Pastori, Esquire, by electronic mail at tpastori@peabody arnold.com.

                                                                  /s/ John S. Davagian, II

                                                                  John S. Davagian, II, Esq.