UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12388-RWZ

| |
|---|
| THE MILLGARD CORPORATION,<br>　　　　　　　　Plaintiff<br><br>v.<br><br>GADSBY HANNAH, LLP,<br>　　　　　　　　Defendant |

## AFFIDAVIT OF DAVID SKERRETT IN SUPPORT OF GADSBY HANNAH'S OPPOSITION TO THE PLAINTIFF'S MOTION TO DISQUALIFY

I, David Skerrett, hereby depose under oath and state as follows:

1. I am the Vice President of the Middlesex Corporation ("Middlesex").

2. I have personal knowledge of the facts contained in this Affidavit.

3. Middlesex was the general contractor for the Massachusetts Highway Department ("MHD") on the reconstruction of Kane Square in Worcester ("Worcester Project") and the Summer Street Bridge Project in Boston ("Summer Street Project"). The Millard Corporation ("TMC") was the excavation subcontractor on the projects.

4. A true and accurate copy of the subcontract between Middlesex and TMC is attached hereto as Exhibit A.

5. TMC submitted various claims to Middlesex on both projects for extra compensation. Middlesex submitted the claims to the MHD, which it denied.

6. Middlesex retained Attorney Charles Schaub of Hinckley Allen to pursue the claims on the Worcester and Summer Street Bridge Projects through the administrative process with the MHD.

7.   Middlesex pursued the claims before the administrative law judge because it had a substantial financial interest in the successful outcome. For example, the administrative law judge awarded $290,667.00 on the Worcester job for obstruction removal and rock socket drilling. The unit price payable by Middlesex to Millgard under the subcontract for this work was $745.00 per linear foot but Middlesex received $1300.00 per linear foot from the MHD under the award. In addition, had Middlesex refused to pursue these claims it would be subject to a court action by Millgard under the subcontract.

8.   Attorney Schaub has represented Middlesex for approximately 20 years.

9.   Attorney Schaub did not represent TMC and he was not TMC's attorney. I was surprised to learn that TMC has claimed in this case that Hinckley Allen represented it in the MHD appeals.

SIGN UNDER THE PAINS AND PENALTIES OF PERJURY THIS _11_ DAY OF APRIL 2006.

_____
David Skerrett

## **CERTIFICATE OF SERVICE**

    I, Terri L. Pastori, hereby certify that on April _11_, 2006, the foregoing document was served upon counsel for the plaintiff, John S. Davagian, Esquire, by electronic mail at jsdavagian@jsdlawgroup.com.

                                  /s/ Terri L. Pastori
                                  Terri L. Pastori

**EXECUTED**

The Middlesex Corporation
Subcontract Agreement
378-6

Distributed to:
Purchasing Manager
Job Site
Contract Administration

THIS AGREEMENT, made on <u>April 14, 1999</u>, by and between <u>The Middlesex Corporation, One Spectacle Pond Road, Littleton, MA 01460</u>, a corporation organized and existing under the laws of The Commonwealth of Massachusetts, hereinafter called the "CONTRACTOR" and <u>The Millgard Corporation, 12822 Stark Road, P.O. Box 510027, Livonia, Michigan 48151</u>, hereinafter called the "SUBCONTRACTOR".

The expression SUBCONTRACTOR shall include all heirs, executors, administrators, successors, and assigns where the context so requires or admits, it being also understood that the pronoun he, him or his shall apply to the SUBCONTRACTOR whether an individual, joint venture, business trust, partnership or corporation.

WHEREAS, the CONTRACTOR has undertaken the <u>Reconstruction of a Section of Route 146(Kane Square A), Worcester, MA</u>, hereinafter called the "Project", in accordance with the provisions of a construction contract, hereinafter called the "General Contract", between the CONTRACTOR and <u>Massachusetts Highway Department</u>, hereinafter called the "AWARDING AUTHORITY".

NOW THEREFORE, in consideration of the agreements hereinafter contained, the parties hereto mutually agree as follows:

### ARTICLE 1: STATEMENT OF THE WORK:

1.1  The SUBCONTRACTOR shall provide all labor, materials, tools and equipment, ~~scaffolding, permits, fees~~, and any other item necessary to complete the Work described below for the Project, and in strict accordance with the provisions of the Agreement between the CONTRACTOR and the AWARDING AUTHORITY insofar as applicable and with the Conditions, (General, Special, Supplementary) of the Agreement between the CONTRACTOR and the AWARDING AUTHORITY for said Work and the Plans, Specifications and Addenda prepared for the Project, a list of which Plans, Specifications and Addenda form a part of the Agreement between the CONTRACTOR and the AWARDING AUTHORITY for said Work, and shall be considered a part of the Subcontract. {{Except as expressly modified herein, the Contract Documents form a part of the Subcontract as fully as if reproduced herein.}} The CONTRACTOR and SUBCONTRACTOR agree to be bound by the terms of said Agreement so far as applicable to this Subcontract except to the extent that provisions contained therein are by their terms or by law applicable only to the CONTRACTOR. The CONTRACTOR agrees to be bound to the SUBCONTRACTOR by the terms of the hereinbefore described documents and to assume to the SUBCONTRACTOR all the obligations and responsibilities that the AWARDING AUTHORITY by the terms of the hereinbefore described documents assumes to the CONTRACTOR, except to the extent that provisions contained therein are by their terms or by law applicable only to the AWARDING AUTHORITY.

1.2  In the event of any conflict among the Contract Documents, the Documents shall be construed according to the following priorities:

| | |
|---|---|
| First Priority: | This Subcontract |
| Second Priority: | Change Order with later date having greater priority |
| Third Priority: | Owner/Contractor Agreement |
| Fourth Priority: | Special Conditions |
| Fifth Priority: | Supplementary General Conditions |
| Sixth Priority: | General Conditions |
| Seventh Priority: | Specifications |
| Eighth Priority: | Drawings |

### ARTICLE 2: TIME OF COMPLETION:

2.1  The SUBCONTRACTOR agrees, within 5 business days after notification by the CONTRACTOR to commence performance of the Work and shall then and thereafter continue diligently in his performance in accordance with the progress schedule. It is specifically understood that time is of the essence in the performance of this contract. The schedule will be submitted to Millgard for review prior to the start of work.

2.2  The SUBCONTRACTOR agrees and understands that the Job Progress Schedule is subject to change at the discretion of the CONTRACTOR and the SUBCONTRACTOR agrees to be bound by such change, waiving any claim to damages arising therefrom. The SUBCONTRACTOR specifically agrees that in order to expedite the Work the CONTRACTOR may do any or all of the following:

subject to review of cost impacts

TMC Initial _____  SUB Initial _____

(a) Pay for materials prepared and ready for delivery to the SUBCONTRACTOR the same to be covered by bill of sale or other appropriate paper, and insure the same for the benefit of all parties concerned, charging all costs in connection with such payment and insurance against the amount to be paid under this Subcontract.

(b) Order the SUBCONTRACTOR, when progress in the completion of the Work is not being maintained in keeping with the then existing Job Progress Schedule, or if in the opinion of the CONTRACTOR (whose opinion shall be final), the subcontractor delays, or is likely to delay, the progress of the Work necessary to complete the job; in keeping with the then existing Job Progress Schedule, to work such overtime as may be necessary to become current with the general progress of the Work as provided for in the then existing Job Progress Schedule. If the SUBCONTRACTOR fails to comply with any such order given to him by the CONTRACTOR, the CONTRACTOR may furnish the labor and materials and Work such necessary overtime for the account of the SUBCONTRACTOR without terminating this Subcontract. The entire cost and expense incurred by the use of said overtime shall be borne by the SUBCONTRACTOR. The SUBCONTRACTOR shall also bear any added costs incurred by the CONTRACTOR as a result of delays in the progress of the Work caused by the SUBCONTRACTOR.

(c) The Contractor agrees to begin, prosecute and complete the entire work specified by the Awarding Authority in an orderly manner so that the Subcontractor will be able to begin, prosecute and complete the work described in this subcontract; and, in consideration thereof, upon notice from the Contractor, ~~either oral or~~ [orally and DBC] in writing, the Subcontractor agrees to begin, prosecute and complete the work described in this Subcontract in an orderly manner and with the due consideration to the date or time specified by the Awarding Authority for the completion of the entire work.

### ARTICLE 3: SUBCONTRACT PRICE AND PAYMENTS:

3.1 Subject to the approval of the AWARDING AUTHORITY, the CONTRACTOR shall pay the SUBCONTRACTOR for the performance of his Work the sum indicated in Article 23, in current funds subject to additions and deductions, which may be agreed upon. It is mutually agreed by the parties hereto that no certificate given or payments made under this Subcontract shall be conclusive evidence of the performance of this Subcontract either wholly or in part and that no payment shall be construed to be an acceptance of defective Work or improper materials.

3.2 No payment will be made to the SUBCONTRACTOR if manpower reports; Payroll Affidavits or applicable EEO/Affirmative Action compliance paperwork is delinquent.

3.3 The SUBCONTRACTOR accepts, as between the parties to this Subcontract, exclusive liability for payment and/or withholding of any tax or contributions, Federal, State, Municipal or otherwise, with respect to compensation, wages, or other remuneration for any Work to be performed by the SUBCONTRACTOR or his employees under the terms of this Subcontract, and the SUBCONTRACTOR further agrees to hold the CONTRACTOR harmless against all such taxes and contributions and to comply with all governmental or other regulations with respect thereto, including the filing of all necessary reports and returns.

3.4 The SUBCONTRACTOR is responsible for and shall pay direct to the Commonwealth of Massachusetts (or the appropriate Governmental Authority) all Sales and/or Use Taxes for materials furnished to this Project, that are subject to such taxes, by the SUBCONTRACTOR.

3.5 CONTRACTOR shall have the right to interview and question SUBCONTRACTOR'S employees in order to establish compliance regarding prevailing wages, safety protection and/or instruction as well as EEO and Affirmative Action verification.

3.6 Payment to the SUBCONTRACTOR herein will follow payment to the CONTRACTOR, per the CONTRACTOR'S pay cycle by the AWARDING AUTHORITY. In addition to the foregoing requirements, final payment, constituting the entire unpaid balance of the Subcontract Amount shall be due only when the SUBCONTRACTOR shall execute and deliver to the CONTRACTOR a final release and lien waiver, in form satisfactory to the CONTRACTOR, of all claims of the SUBCONTRACTOR against the AWARDING AUTHORITY and CONTRACTOR, an affidavit listing all Sub-subcontractors and materialmen and certifying that there are no liens, claims or demands by Sub-subcontractors, materialmen, laborers, other employees or third persons, and a certificate from the appropriate state and local taxing authority evidencing payment of all applicable taxes and provide all as-built drawings, maintenance manuals and warranties necessary or required in connection with the Work. The SUBCONTRACTOR'S acceptance of final payment shall constitute full and final settlement of all obligations of the AWARDING AUTHORITY and CONTRACTOR to the SUBCONTRACTOR with respect to this Subcontract.

TMC Initial ___ SUB Initial DBC

3.7 When the Work is substantially complete in accordance with the Contract Documents and accepted by the Contractor, the CONTRACTOR may, upon application by the SUBCONTRACTOR, make application to the AWARDING AUTHORITY for a reduction in retainage where such reduction in retainage may be allowed under the Contract. All such amounts paid by the AWARDING AUTHORITY to the CONTRACTOR shall be paid to the SUBCONTRACTOR in accordance with the terms of this Agreement, less such amounts, as the CONTRACTOR shall determine for all incomplete Work and unsettled claims as provided for in the Contract Documents.

### ARTICLE 4: INSURANCE AND SAFETY:

4.1 The SUBCONTRACTOR shall effect and maintain all insurance coverage of the type and with the limits as set forth in Article 23. Standard evidence of insurance may be satisfied by a certificate of insurance or a copy of the entire policy subject to the discretion of the CONTRACTOR.

4.2 The SUBCONTRACTOR shall comply with all applicable worker's compensation laws regulating the compensation of injured workers. Certificates of all such insurance shall be filed with the CONTRACTOR within a reasonable time after the execution of this subcontract. All Certificates of Insurance must name the CONTRACTOR as ADDITIONAL INSURED and must certify that such policies cannot be modified or canceled with less than thirty (30) days notice of such action by registered mail to the CONTRACTOR. Certificates shall indicate whether the SUBCONTRACTOR'S General Liability coverage is written on a "claims made" or "occurrence" basis. If written on a "claims made" basis and in the event the General Liability is not renewed for any reason, then the SUBCONTRACTOR must provide "tail coverage" for a minimum of five years beyond the date of completion of the SUBCONTRACTOR'S work.

4.3 The SUBCONTRACTOR shall submit prior to commencing work, their formal safety program and shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work, and agrees further to conform to CONTRACTOR'S safety regulations and to follow the CONTRACTOR'S current Safety and Health Program. The SUBCONTRACTOR shall conform and comply with all current Local, State, and Federal Safety Regulations, including the "Federal Occupational Safety and Health Act of 1970" and be responsible for any costs, fines or penalties assessed against the CONTRACTOR for the SUBCONTRACTOR'S failure to comply with such laws and regulations. The SUBCONTRACTOR is required to implement the Community Provisions of Chapter #470 of the Acts of 1983 of the General Laws of Massachusetts, the so-called "Right to Know" Law effective September 26, 1984 where applicable. The SUBCONTRACTOR is also required to implement the provisions of the Federal Occupational Safety and Health Administration, Hazard Communication Standard 29CFR Part 1926.59 effective May 23, 1988. Material Safety Data Sheets for all toxic and hazardous chemicals covered by this standard must be forwarded to the CONTRACTOR'S Main Office at: One Spectacle Pond Road, Littleton, MA 01460. All chemicals used on site must be labeled in accordance with this standard. The SUBCONTRACTOR agrees to indemnify and hold the CONTRACTOR harmless from any and all loss, damage, cost or expense, including but not limited to counsel fees which the CONTRACTOR or AWARDING AUTHORITY may sustain or become liable for on the account of any claim, suit, or action resulting from or arising out of the negligence of the SUBCONTRACTOR, his Agents, Employees, or Subcontractor. Personal protective equipment for the SUBCONTRACTOR'S labor and supervisors associated with this Subcontract shall be provided by the SUBCONTRACTOR.

4.4 It is imperative that all SUBCONTRACTORS working on the job site comply with all State and Federal Industry Standard Safety and Health Regulations. Any SUBCONTRACTOR not complying with these regulations will be penalized as follows:

4.5 For a Nonserious Violation which is defined as a hazardous condition that would most likely result in an accident or illness which would probably not cause death or serious physical harm, but would have a direct and immediate relationship to the safety and health of employees, the penalties shall be as follows:

4.6 First Violation - SUBCONTRACTOR will be informed of the non-compliance and be expected to correct it immediately. Also, a certified letter will be sent to the SUBCONTRACTOR notifying the SUBCONTRACTOR of this non-compliance.

4.7 Second Repeat Validation - SUBCONTRACTOR will be informed of the repeat non-compliance and a second Certified letter will be sent to the SUBCONTRACTOR notifying the SUBCONTRACTOR of this repeat offense.

4.8 Third Repeat Violation - SUBCONTRACTOR will be informed of the third repeat non-compliance and again, a Certified letter will be sent to the SUBCONTRACTOR notifying the SUBCONTRACTOR of this repeat offense. A $100.00 fine for each incident of non-compliance will be deducted from the SUBCONTRACTOR'S Subcontract with the CONTRACTOR by change order.


TMC Initial _____ SUB Initial _____

4.9 For a <u>Serious Violation</u> which is defined as a condition where there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use on a project site unless the SUBCONTRACTOR did not and could not with the exercise of reasonable diligence, know of the presence of the violation." (From Section 17(k) of the Act - P.L. 91-596), the penalties shall be as follows:

4.10 <u>First Violation</u> - SUBCONTRACTOR will be informed of the non-compliance and be expected to correct it immediately. Also, a certified letter will be sent to their Company notifying the SUBCONTRACTOR of this non-compliance. A fine of $100.00 for each SUBCONTRACTOR'S employee in non-compliance and/or for each incident of non-compliance, will be deducted from the SUBCONTRACTOR'S Subcontract with the CONTRACTOR by Change Order.

4.11 <u>Second Repeat Violation</u> - SUBCONTRACTOR will be informed of the repeat non-compliance and a second certified letter will be sent to their Company notifying the SUBCONTRACTOR of this repeat offense. A fine of $500.00 for each SUBCONTRACTOR'S employee in non-compliance and/or for each incident of non-compliance, will be deducted from the SUBCONTRACTOR'S Subcontract with the CONTRACTOR by Change Order.

4.12 <u>Third Repeat Violation</u> - A $1,000.00 fine for each SUBCONTRACTOR'S employees in noncompliance and/or incident of non-compliance, will be deducted from the SUBCONTRACTOR'S Subcontract with the CONTRACTOR by Change Order. Withholding of SUBCONTRACTOR'S progress payment by the CONTRACTOR until a site safety inspection confirms that all safety deficiencies have been corrected and the Safety Officer is satisfied that the SUBCONTRACTOR will enforce the safety requirements on all future work. The CONTRACTOR may, at its option, terminate the subcontract and deduct any additional costs incurred by the CONTRACTOR as a result of replacement of SUBCONTRACTOR.

4.13 For a <u>Willful Violation</u> which is defined as existing where evidence shows that the employer committed an intentional and knowing violation of Health and Safety Standards under the Department of Labor Occupational Safety and Health Administration (OSHA), or showed plain indifference to the law, the penalties shall be as follows:

4.14 <u>First Violation</u> - SUBCONTRACTOR will cease operation immediately and, if imminent danger exists, said violation will be corrected at once. In addition, a fine of $1,000.00 will be deducted from the SUBCONTRACTOR'S Subcontract Account with the CONTRACTOR by Change Order for each offense. A certified letter will be sent to the SUBCONTRACTOR notifying the SUBCONTRACTOR of this non-compliance.

4.15 <u>Second Repeat Violation</u> - SUBCONTRACTOR will cease operation immediately and, if imminent danger exists, the Safety Officer will meet with the AWARDING AUTHORITY or corporate officer of the SUBCONTRACTOR. Payment by the CONTRACTOR to the SUBCONTRACTOR will be withheld. At this time, the CONTRACTOR may, if it deems necessary, terminate said SUBCONTRACTOR, and replace with a new SUBCONTRACTOR. If any additional costs and lost time are incurred by the CONTRACTOR, this cost will be deducted from the account of the SUBCONTRACTOR that was replaced. A $3,000.00 fine will be deducted from the SUBCONTRACTOR'S Subcontract with the CONTRACTOR by Change Order for each offense. A certified letter will be sent to their Company notifying the SUBCONTRACTOR of this non-compliance.

4.16 SUBCONTRACTOR shall be responsible for paying any fines that may be imposed by any regulatory agency as a result of SUBCONTRACTOR'S violation.

## <u>ARTICLE 5: CHANGES:</u>

5.1 The CONTRACTOR may, prior to the completion of the Work, order in writing changes in the said Work or additional Work of a similar kind. When so ordered, the CONTRACTOR and the SUBCONTRACTOR shall agree upon the value of the Work added or omitted and the amount thereof shall be added to or deducted from the Subcontract price, as the case may be.

5.2 The SUBCONTRACTOR shall perform such Work upon receipt of written notice in accordance with provisions of this Subcontract.

## <u>ARTICLE 6: INFORMATION AND DETAILS:</u>

6.1 All requests for information or details concerning the SUBCONTRACTOR'S Work must be made through the CONTRACTOR'S office in writing as far in advance of requirements as possible. The CONTRACTOR shall not consider as binding, any information or approvals received by the SUBCONTRACTOR verbally or direct from the AWARDING AUTHORITY.

4

TMC Initial _____    SUB Initial DBC

### ARTICLE 7: SHOP DRAWINGS AND SAMPLES:

7.1 It is understood and agreed that the SUBCONTRACTOR shall submit necessary drawings for the CONTRACTOR'S approval and supply sufficient approved prints to meet job requirements and furnish samples for the CONTRACTOR'S approval. By submitting shop drawings and samples, the SUBCONTRACTOR thereby represents that he has determined all measurements, field construction criteria, materials, catalog numbers and similar data, and that he has checked and coordinated each shop drawing and sample with the requirements of the Work and of the Contract Documents.

### ARTICLE 8: LABOR, EQUAL EMPLOYMENT AND AFFIRMATIVE ACTION:

8.1 The SUBCONTRACTOR will assure that applicants are employed, and that employees are treated during employment without regard to their race, color, sex, age, marital status, religion, national origin, physical or mental handicap/disability, veteran status or with regard to sexual orientation. The aforementioned applies to: employment, upgrading, demotion or transfer; recruitment and recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship, pre-apprenticeship, and/or on-the-job training As applicable to this project, the SUBCONTRACTOR is required to comply with the CONTRACTOR'S Equal Employment Opportunity Policy and Affirmative Action Policy, which are incorporated herein by reference.

8.2 The SUBCONTRACTOR is to comply with all provisions of Presidential Executive Order No.11246 of September 24, 1965 as amended and furnish all information and reports required by this Presidential Executive Order. The Equal Opportunity and Affirmative Action clauses of 41 CFR 60-1. 4(a), 60-250. 4 and 60-741. 4 are incorporated herein by reference.

8.3 The SUBCONTRACTOR'S non-compliance with the aforementioned nondiscrimination clause(s) or with any applicable federal, state or local statute, ordinance, rule or regulation dealing with discrimination, equal employment or harassment shall constitute grounds for cancellation, termination or suspension, in whole or in part, of this Subcontract.

### ARTICLE 9: TERMS AND CONDITIONS:

9.1 There shall be no manifestations on the Project of any dispute between any labor organization and the SUBCONTRACTOR. The SUBCONTRACTOR agrees to employ men, agents, suppliers and Subcontractors who will perform the Work under this Contract whether or not other employees or mechanics on the project or the employees of suppliers to a CONTRACTOR or SUBCONTRACTOR on the Project are members or non-members of any labor or collective bargaining organization

9.2 The SUBCONTRACTOR shall at all times supply a sufficient number of skilled workers to perform the Work covered by this Agreement with promptness and diligence. The SUBCONTRACTOR agrees not to participate in or permit any cessation of Work which is a result of any labor dispute, regardless of whether said labor dispute involves the SUBCONTRACTOR or any other employer on the project. The SUBCONTRACTOR acknowledges that construction sites are, by their nature, potentially hazardous work sites and therefore, agrees to make all reasonable efforts to maintain a safe job site, and further agrees not to participate in, nor to permit any safety related work stoppage by its employees or the employees of its suppliers or subcontractors other than those which result from abnormally dangerous conditions, whether said safety dispute involves the AWARDING AUTHORITY, the CONTRACTOR, the SUBCONTRACTOR or any other employer on the Project. in accordance with OSHA standards & practices  CJR  JBC

9.3 Should there be a work stoppage caused by a strike, picketing, boycott of the SUBCONTRACTOR'S employees or by a voluntary or involuntary cessation of Work by employees of the SUBCONTRACTOR, his agents, suppliers and/or Subcontractors, which in the sole judgement of the CONTRACTOR will cause or is likely to cause a delay in the progress of construction, then upon ~~twenty-four (24)~~ forty-eight (48) hours written notice delivered either in hand, by telegram or registered mail, the CONTRACTOR shall have the right to declare the SUBCONTRACTOR in default of this understanding and Agreement and upon the giving of such notice, the CONTRACTOR shall have the right to take such steps as are necessary to finish the uncompleted portion of the work to be performed by the SUBCONTRACTOR, including finishing the work with its own employees or those of another Subcontractor. In such event, the CONTRACTOR shall have the right to take possession of and use all of the SUBCONTRACTOR'S materials (exclusive of tools) intended for use on the Work. The cost of completion shall be charged against the SUBCONTRACTOR'S remaining interest in the contract price. If the cost of completion exceeds the SUBCONTRACTOR'S remaining interest in the Contract Price, then the SUBCONTRACTOR agrees to pay the CONTRACTOR such excess within thirty (30) days after presentation of documented written demand for such excess

5                    TMC Initial  CJR     SUB Initial  JBC

as has been made upon him by the CONTRACTOR.

9.4 If the SUBCONTRACTOR defaults or neglects to carry out the Work in accordance with the Contract Documents or falls within ~~twenty-four (24)~~ forty-eight (48) hours after receipt of written notice from the CONTRACTOR to commence and continue correction of such default or neglect with diligence and promptness, the CONTRACTOR shall have the right to declare the SUBCONTRACTOR in default of this Contract and upon the giving of such notice, the CONTRACTOR shall have the right to take such steps as are necessary to finish the uncompleted portion of the Work to be performed by the SUBCONTRACTOR including finishing the Work with its own employees or those of another subcontractor.

9.5 In such event, the CONTRACTOR shall have the right to take possession of and use all of the SUBCONTRACTOR'S materials (exclusive of tools) intended for use on the Work. The cost of completion shall be charged against the SUBCONTRACTOR'S remaining interest in the Contract Price. If the cost of completion exceeds the SUBCONTRACTOR'S remaining interest in the Contract Price, then the SUBCONTRACTOR agrees to pay the CONTRACTOR such excess within thirty (30) days after presentation of documented written demand for such excess as has been made upon him by the CONTRACTOR. In the event of any inconsistency between the provisions of this Article and the Contract Documents, the provisions of this Article shall prevail. Any provisions of the Contract Documents with respect to arbitration of determination of disputes by the Architect, Arbitrators or others, shall not apply to this Labor Clause.

9.6 In event the SUBCONTRACTOR is found in default of this Agreement for reasons described above, the SUBCONTRACTOR agrees to make all equipment and material orders related to the project assignable to the CONTRACTOR. The SUBCONTRACTOR shall include similar language in all Agreements with his Subcontractors and Suppliers as that included in this Article 9.

9.7 The SUBCONTRACTOR agrees that he will make timely payments of wages to employees and of benefits to jointly administered fringe benefit funds, if required to do so by a collective bargaining Agreement, and will provide the CONTRACTOR with proof that payment of said wages and fringe benefits for all hours worked on this Project has been made, when requested to do so by the CONTRACTOR. The SUBCONTRACTOR agrees that in the event said payments have not been made, he will hold the CONTRACTOR harmless from any and all liability arising out of the failure to make such payments on a timely basis.

## ARTICLE 10: GUARANTEES:

10.1 The SUBCONTRACTOR guarantees all Work Under this Subcontract to be in conformance with the Agreement between the AWARDING AUTHORITY and CONTRACTOR and against defective workmen in, materials, and equipment for a period of one (1) year from the date of completion of the entire Work unless specifically noted differently in the specifications, in which case the specifications shall govern, and further that all materials and equipment furnished under this Subcontract shall be new unless otherwise specified. Upon written notice from the CONTRACTOR the SUBCONTRACTOR will make such repairs, including the work of others caused by this SUBCONTRACTOR'S work, at the SUBCONTRACTOR'S expense.

## ARTICLE 11: CLEANING UP:

11.1 The SUBCONTRACTOR shall at all times keep the work free from waste materials or rubbish caused by his employees, agents or subcontractors and upon completion of the Work, the SUBCONTRACTOR, his employees, agents or subcontractors shall leave the premises in a clean and workmanlike condition. If this provision is not complied with promptly, the CONTRACTOR, upon ~~either verbal~~ or written notification to the SUBCONTRACTOR, will perform the necessary cleaning at the SUBCONTRACTOR'S expense.

## ARTICLE 12: INSPECTION AND APPROVAL:

12.1 All workmanship and materials shall be subject at all times to the inspection and approval of the CONTRACTOR to whom the same shall be made entirely satisfactory and where applicable by the duly authorized representatives of all Governmental Bodies and Agencies having jurisdiction thereof. The SUBCONTRACTOR shall proceed to remove from the site or building all materials condemned by the CONTRACTOR whether worked or unworked, within ~~twenty-four (24)~~ forty-eight (48) hours after receiving written notice from the CONTRACTOR to do so, and to take down all portions of the Work which the governmental entity shall, by like written notice, condemn as unsound or improper or as in any way failing to conform to the Plans and Specifications, replacing same with materials and workmanship satisfactory to the CONTRACTOR, or AWARDING AUTHORITY without additional expense to the CONTRACTOR, or AWARDING AUTHORITY.

6.

TMC Initial _____  SUB Initial _____

### ARTICLE 13: TERMINATION AND CONTRACTOR'S RIGHT TO DO WORK:

13.1 Should the SUBCONTRACTOR be adjudged bankrupt, or make a general assignment for the benefit of creditors, or if a receiver should be appointed on account of its insolvency, or should the SUBCONTRACTOR at any time refuse or neglect to supply a sufficient number of properly skilled workers or sufficient materials of the proper quality, or fail in any respect to prosecute the Work with promptness and diligence in keeping with the then existing Job Progress Schedule, or allow a lien to be filed against the building, or cause by any action the stoppage or interference of the Work of other trades of the job, or fail in the opinion of the CONTRACTOR in the performance of any of the agreements herein contained, or fail to comply with any order given to it by the CONTRACTOR in accordance with the provisions of this Subcontract, the CONTRACTOR shall be entitled to provide, for the account of the SUBCONTRACTOR and without terminating this Subcontract any such labor or materials after ~~twenty-four (24)~~ forty-eight (48) hours notice to that effect, and to enter into and take possession of the said premises and Work, materials, tools, appliances and equipment and through itself or others provide labor, equipment and materials to prosecute the Work on such terms and conditions as in the sole opinion of the CONTRACTOR shall be deemed necessary, and may discharge all liens without a legal determination of the validity thereof, deducting the cost thereof from any money then due or thereafter to become due to the SUBCONTRACTOR under this Subcontract. — Article 23 of

### ARTICLE 14: PATENTS:

14.1 The SUBCONTRACTOR agrees to indemnify and save harmless the CONTRACTOR and the AWARDING AUTHORITY from all demands or claims of any nature by reason of the use of any patented invention, article, or appliance that has been or may be adopted or used in the construction called for in this Subcontract.

### ARTICLE 15: LIENS AND INDEMNIFICATION:

15.1 The SUBCONTRACTOR shall protect his Work and the building against any claims, attachments, restraining orders or any liens including laborers, mechanics, and materialmen's liens arising out of the Work performed under this Subcontract, which if established might render the CONTRACTOR liable or obligated to the AWARDING AUTHORITY or others to discharge the claim, attachment, restraining order or lien which is chargeable to the SUBCONTRACTOR and shall any claim be asserted or any such attachment, restraining order or lien arise or should a supplier of the SUBCONTRACTOR not be paid by the SUBCONTRACTOR, the CONTRACTOR may retain ( or at the CONTRACTOR'S discretion pay over to the supplier ) from any payment then or thereafter due an amount sufficient to indemnify completely against the same without legal determination of the validity thereof, and should the claim, attachment, restraining order or lien exceed such an amount, the SUBCONTRACTOR shall pay to the CONTRACTOR upon demand all additional monies paid by the CONTRACTOR to discharge completely said claim, attachment, restraining order or lien. The SUBCONTRACTOR does hereby agree not to record any lien on his own behalf.

15.2 The SUBCONTRACTOR, to the fullest extent permitted by law, agrees to indemnify and hold harmless the CONTRACTOR of, from and against any and all loss, damage, cost and expense which the CONTRACTOR may suffer or sustain or be threatened with liability for, arising out of or in any way connected with the Work done or to be performed under this Subcontract by the SUBCONTRACTOR, his agents, employees, servants or materialmen. The SUBCONTRACTOR shall further indemnify and hold harmless the CONTRACTOR, AWARDING AUTHORITY, their respective agents, officers, employees and partners from and against all claims, damages, losses, expenses, (including, but not limited to) attorneys' fees, liabilities, interest, judgements which (I) are attributable to injury, sickness, disease, or death or to injury or to destruction or damage to property (other than the Work itself), including loss of use therefrom and (II) are caused in whole or in part by the SUBCONTRACTOR. The aforesaid indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor Worker's or Workmen's Compensation, Disability Benefit Acts or other employee benefit acts. The SUBCONTRACTOR shall provide in the policy of comprehensive general public liability insurance required by this Subcontract agreement a contractual indemnity endorsement, which insures SUBCONTRACTOR'S liability under the provisions of this Paragraph. Any sum or sums chargeable to the SUBCONTRACTOR under this provision, or any other provision, of this Subcontract may, at the election of the CONTRACTOR, be deducted from any payments otherwise due or to become due to the SUBCONTRACTOR under this or any other subcontract between the CONTRACTOR and the SUBCONTRACTOR, or the CONTRACTOR may bring suit against the SUBCONTRACTOR and recover damages therefore.

7

TMC Initial _____  SUB Initial _____

## ARTICLE 16: FEDERAL, STATE AND MUNICIPAL LAWS:

16.1 SUBCONTRACTOR agrees, in the performance of this Subcontract that he will comply with and give all stipulations and representations required by applicable Federal, State and Municipal Laws, and further agrees to require such compliance's, representations and stipulations with respect to any Agreement entered into by the SUBCONTRACTOR with others as may be required by applicable Federal, State and Municipal Laws. This Contract shall be governed by the Laws of the Commonwealth of Massachusetts except that the Workmen's Compensation Law of the State in which the project is located shall be applicable.

## ARTICLE 17: SUBLETTING AND ASSIGNMENT:

17.1 SUBCONTRACTOR shall not sub-let or assign the Work covered by this Subcontract or any portion thereof and shall not hypothecate, pledge or assign any payments coming due hereunder without the prior written consent of the CONTRACTOR.

17.2 SUBCONTRACTOR agrees that he will be responsible for the acts and omissions of his Subcontractors and their employees to the same extent that he is responsible for the acts and omissions of persons directly employed by him. No Sub-subcontract by the SUBCONTRACTOR shall under any circumstances operate to relieve the SUBCONTRACTOR of his obligations hereunder.

17.3 CONTRACTOR may assign its rights and delegate its obligations under this Subcontract to another general contractor, subcontractor, or the rights and obligations hereunder may be assigned to the AWARDING AUTHORITY and/or the AWARDING AUTHORITY'S lenders. The CONTRACTOR shall remain primarily liable under this Subcontract for the performance of all the CONTRACTOR'S obligations set forth herein until the time of such assignment, whereupon, subject to the provision of the following paragraphs the CONTRACTOR shall be relieved of any and all of its obligations hereunder, the SUBCONTRACTOR shall remain bound by the terms of this Agreement.

17.4 In the event of a termination of the General Contract, between the AWARDING AUTHORITY and the CONTRACTOR for any reason, this Subcontract may, at the sole option of the AWARDING AUTHORITY or its lender providing construction financing, be assigned to the AWARDING AUTHORITY or any lender providing construction financing or assigned to another contractor, and the SUBCONTRACTOR shall continue to work as though this Subcontract was with the assignee. Said assignment shall become effective only upon written notice by the AWARDING AUTHORITY or such lender that the AWARDING AUTHORITY or such other contractor is assuming this Subcontract, whereupon the CONTRACTOR shall remain liable for the obligations of the CONTRACTOR hereunder through the date of such assumption, and the AWARDING AUTHORITY or such other contractor shall become liable to the SUBCONTRACTOR only for the obligations of the CONTRACTOR under the Subcontract which accrue after the date of assumption by the AWARDING AUTHORITY or such other contractor. The SUBCONTRACTOR shall execute any instruments necessary to confirm such assignment. By executing this Subcontract, the SUBCONTRACTOR confirms and assents to the aforementioned rights of assignment and assumption.

## ARTICLE 18: ARBITRATION:

18.1 If the Contract between the CONTRACTOR and the AWARDING AUTHORITY provides for Arbitration of disputes and should the CONTRACTOR and the SUBCONTRACTOR fail to agree on any question arising under or in connection with this SUBCONTRACT, the dispute upon application by either party shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining, unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrations shall be final and judgement may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Notice of the demand for arbitration shall be filed in writing with the other party to the SUBCONTRACT and with the American Arbitration Association. The demand for arbitration shall be made within a reasonable time after the claim, dispute, or other matter in question has arisen, and in no event shall it be made after the date when instituting of Legal or Equitable Proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

## ARTICLE 19: LIQUIDATED DAMAGES:

19.1 If the Contract between the CONTRACTOR and the AWARDING AUTHORITY provides for liquidated damages or other damage for delay, then the CONTRACTOR may assess same against the SUBCONTRACTOR in proportion to the SUBCONTRACTOR's share of the responsibility for such delay. However, the amount of such assessment for liquidated damages shall not exceed the amount for which the CONTRACTOR may be liable, *as a result of the SUBCONTRACTOR's failure to perform in accordance with the progress schedule submitted by the CONTRACTOR to the SUBCONTRACTOR prior to the start of work.*

DBC          8.          TMC Initial ___   SUB Initial DBC

19.2   Liquidated damages, as may be assessed against the CONTRACTOR resulting from the SUBCONTRACTOR'S fault, are but one item of actual damages that may be incurred by the CONTRACTOR, and which the CONTRACTOR may assess against the SUBCONTRACTOR. The proportionate assessment of liquidated damages, as provided in this Article, shall not limit the CONTRACTOR'S right to collect from the SUBCONTRACTOR any additional actual direct or indirect damages incurred by the CONTRACTOR as a result of the SUBCONTRACTOR'S ~~fault~~ failure to perform in accordance with the progress schedule submitted by the CONTRACTOR to the SUBCONTRACTOR prior to the start of work.

### ARTICLE 20: CLAIMS - LIQUIDATING AGREEMENT:

20.1   _Claims Relating to AWARDING AUTHORITY:_ The SUBCONTRACTOR acknowledges that the subcontract price is based on the premise that the CONTRACTOR is liable to the SUBCONTRACTOR for the costs of extra work, delay, interference, suspension, or other event, only to the extent that such costs are recovered from the AWARDING AUTHORITY by the CONTRACTOR. The SUBCONTRACTOR agrees to make all claims for any additional compensation or damages for which the AWARDING AUTHORITY is or may be liable in the manner provided by the Contract for claims by the CONTRACTOR against the AWARDING AUTHORITY. Notice of such claims shall be given by the SUBCONTRACTOR to the CONTRACTOR within two (2) working days of the beginning of the event for which such claims is to be made; otherwise, such claims shall be deemed waived. This notice provision takes precedence over any other notice provisions in the Contract. To the extent the CONTRACTOR was prevented from making a timely claim to the AWARDING AUTHORITY, and such claim by the CONTRACTOR was denied as a result of the SUBCONTRACTOR'S failure to timely notify the CONTRACTOR of any claims, the SUBCONTRACTOR'S claim also shall be denied. The SUBCONTRACTOR shall have no greater right of claim against the CONTRACTOR than the CONTRACTOR has against the AWARDING AUTHORITY and the CONTRACTOR shall not be liable to the SUBCONTRACTOR in excess of any sum actually received from the AWARDING AUTHORITY on behalf of the SUBCONTRACTOR, less a reasonable deduction for work performed by the CONTRACTOR, as well as for the CONTRACTOR'S overhead and profit, as allowed by the Contract.

20.2   The CONTRACTOR may, upon the written request of the SUBCONTRACTOR, appeal on behalf of the SUBCONTRACTOR from any ruling or decision of the AWARDING AUTHORITY, or institute any action or proceeding to recover damages by reason of any affirmative claim by the SUBCONTRACTOR, or by reason of any deduction or refusal to pay by the AWARDING AUTHORITY, for any reason involving the work or performance of the SUBCONTRACTOR. In that event, the SUBCONTRACTOR shall pay all costs attributable thereto and shall render all assistance requested by the CONTRACTOR. The SUBCONTRACTOR shall be bound by the determination of the AWARDING AUTHORITY or, in the event of an appeal or further action or proceeding, by the determination of same, and shall be entitled only to its proportionate share of any actual net recovery, less overhead and profit to the CONTRACTOR and less the CONTRACTOR'S expenses and attorneys fees in handling said matter. The SUBCONTRACTOR shall post reasonable security as may be required by the CONTRACTOR to cover the CONTRACTOR'S proceeding on the SUBCONTRACTOR'S behalf. _as discussed by the and agreed to by CONTRACTOR + SUBCONTRACTOR._

20.3   _Support Documentation as to Pass-Through Claims:_ The complete claim package, including but not limited to a narrative, detailed schedule, detailed cost analysis, support documentation, contract articles on which the SUBCONTRACTOR relies, etc, shall be submitted to the CONTRACTOR no later than 20 days after the written notice of intent to claim previously submitted pursuant to this Article, or completion of the item(s) of work to which the claim pertains, whichever is most applicable, otherwise, such claims shall be deemed waived.

20.4   _Support Documentation as to CONTRACTOR's Direct Claims:_ When the CONTRACTOR so determines, the SUBCONTRACTOR shall provide all support documentation required for the CONTRACTOR'S claims against the AWARDING AUTHORITY, even in the event that no monies of the SUBCONTRACTOR are associated, but the SUBCONTRACTOR'S records, data, or any other documents are required to support the CONTRACTOR'S claim. The above mentioned documentation shall be provided to the CONTRACTOR within three (3) days from notice and without charge to the CONTRACTOR.

### ARTICLE 21: MISCELLANEOUS PROVISIONS:

21.1   This Subcontract supersedes and annuls all prior quotations, correspondence and agreements whether verbal or written.

21.2   The SUBCONTRACTOR expressly acknowledges that he is an independent Contractor, and nothing herein contained shall be construed to constitute SUBCONTRACTOR or any Sub-subcontractors under him or any of their respective agents, representatives or employees, as an employee of the AWARDING AUTHORITY or the CONTRACTOR. This Subcontract shall not bind nor purport to bind the AWARDING AUTHORITY, but may be assigned by the CONTRACTOR to the AWARDING AUTHORITY.

21.3   The SUBCONTRACTOR agrees to comply with the AWARDING AUTHORITY'S regulations with reference to his employees employed on the project.

### ARTICLE 22: BONDS:

22.1    If required by the terms of Article 23 of this agreement, the SUBCONTRACTOR will furnish a 100% Performance Bond, a 100% Labor and Material Payment Bond, and a Lien Bond, each in the sum indicated in Article 23 herein, and in a form acceptable to the CONTRACTOR and issued by a Surety authorized to do business in the State of the location of the Project. The SUBCONTRACTOR'S failure to deliver satisfactory Bonds within ten (10) days after the signing of this Contract or on demand may be deemed a material breach of this Contract.

### ARTICLE 23: CONTRACT RIDER AND FINAL AGREEMENT

Prime Contractor:    The Middlesex Corporation         978-742-4422
                     One Spectacle Pond Road
                     Littleton, MA 01460

Subcontractor:       The Millgard Corporation          734-425-8550
                     12822 Stark Road
                     P.O. Box 510027
                     Livonia, Michigan 48151

TMC Job # 378        Reconstruction of a Section of Route 146 (Kane Square A)
                     Worcester, MA
                     MHD Contract #99121

### INCLUSIONS:

| Item No. | Description | Est. Qty. | | Unit Price | Extension |
|---|---|---|---|---|---|
| 945.450B | Drilled Shaft - 4.5 FT. Diameter | 305 | LF | $430.00 | $131,150.00 |
| 945.450B | Mobilization for 4.5 FT. Diameter Drilled Shaft | 1 | EA | $45,000.00 | $45,000.00 |
| 945.600C | Drilled Shaft - 6 FT. Diameter | 440 | LF | $745.00 | $327,800.00 |
| 945.600C | Mobilization for 6 FT. Diameter Drilled Shaft | 1 | EA | $45,000.00 | $45,000.00 |

Total Contract Value:................................................................................ $548,950.00

### SCOPE OF WORK:

1. Provide all labor, tools, equipment and materials required to complete each item in its entirety, unless noted otherwise, all in accordance with the contract plans and specifications.
2. The work includes furnishing, installing and removing and/or cutting off permanent or temporary steel casings; any necessary water controls and de-watering; augering/drilling for the shafts and rock sockets; furnishing and placing all concrete; lifting for placing the steel reinforcing cages and performing sonic testing for the drilled shafts, all as shown on the plans and described in the contract special provisions.
3. The Middlesex Corporation will pre-excavate to a depth of five (5) feet at each drilled shaft location.
4. The steel pipes for the sonic testing will be provided by The Middlesex Corporation and installed by Millgard.
5. Access to each drilled shaft location will be provided by The Middlesex Corporation.
6. The steel reinforcing cages will be furnished by others, assembled at a location within reach of Millgard's crane and set on location within tolerance.
7. The Middlesex Corporation will provide equipment required to remove and/or dispose of all excavated material generated from the drilled shaft and rock socket installation.
8. Millgard will furnish and install CMP casing (or equal) for the purpose of placing the pier columns in the dry.
9. Compensation for subsurface obstructions will be in accordance with the contract special provisions.
10. Survey and layout will be provided by The Middlesex Corporation.
11. Millgard shall forward all specified submittals to the Middlesex Corporation within 30 calendar days from the date of this subcontract.
12. Millgard will provide at least one (1) trainee employee as required by the contract special training provisions.
13. Mobilization includes one for each bridge location. Work on the second bridge shall begin immediately after completion of the drilled shafts at the first bridge location.



TMC Initial _____  SUB Initial _____

10

14. Miscellaneous items to be provided for Millgard by others: soil sampling (as required), boring information, permits, area for storage and laydown, area for placement of office trailer (trailer furnished by Millgard), traffic controls, dust control and street cleaning, sanitation service, and notifications to adjacent property owners (including Dig Safe).

**OTHER PROVISIONS:**

1. Minimum insurance as required by the Contract must be maintained at all times throughout the duration of the job.
2. Manpower Reports and Payroll Affidavits must be submitted weekly. No payments will be made if this information is not kept current.
3. Please provide your Federal Taxpayer Identification Number: __38-1719233__
4. All quantities are subject to final approval by Massachusetts Highway Department.
5. Retainage shall be 5%. Retainage will be released 90 days after completion, providing that the work has been fully accepted by the MHD and The Middlesex Corporation.
6. Rock sockets will be paid at a multiple of two times the unit price per linear foot for each linear foot of socket into rock.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

CONTRACTOR: The Middlesex Corporation

_____    Witness: _____
John Reddy, Purchasing Manager

5/18/99                              5/18/99
Date                                 Date

SUBCONTRACTOR: The Millgard Corporation

_____    Witness: _____
David B. Coleman                    Dawn M. Michniak

May 10, 1999                         May 10, 1999
Date                                 Date

**SCOPE OF WORK**

1*. Prices are contingent upon mobilization from Middlesex Job #345 (Summer Street Bridge) at the completion of Phase I and the subsequent return to Phase II at the completion of Job #378. If this is not possible, an additional mobilization payment will be paid on Job #378.

Revised: 7/97

11

TMC Initial _____    SUB Initial _____