UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12388-RWZ

THE MILLGARD CORPORATION,
                              Plaintiff

v.

GADSBY HANNAH, LLP,
                              Defendant

**AFFIDAVIT OF CHARLES E. SCHAUB, JR. IN SUPPORT OF GADSBY HANNAH'S OPPOSITION TO THE PLAINTIFF'S MOTION TO DISQUALIFY**

I, Charles E. Schaub, Jr., hereby depose under oath and state as follows:

1.      I am an attorney licensed to practice in the Commonwealth of Massachusetts, the United States District Court for the District of Massachusetts, the United States First Circuit Court of Appeals, and The United States Court of Claims.

2.      I graduated from Boston College Law School in 1972.

3.      I am a senior partner at the law firm of Hinkley Allen & Snyder in its Boston, Massachusetts office, where I concentrate my practice on construction law.

4.      I have represented the Middlesex Corporation ("Middlesex") for approximately twenty years.

5.      I represented Middlesex in connection with its claims against the Massachusetts Highway Department ("MHD") involving a project in Worcester ("Worcester Project") and a project involving the Summer Street Bridge ("Summer Street Project").

6.      Middlesex was the general contractor on the projects and the Millgard Corporation ("TMC") was its excavation subcontractor.

7.      TMC submitted claims for increased compensation to Middlesex on several theories including alleged changed conditions and not properly paying the amount required by the payment provision of the contract.  MHD denied the claims.

8.      On the Worcester project, Middlesex filed a claim for $708,311.34 for additional quantities of work, additional payment under a particular item of work, and differing site conditions.  On the Summer Street Project, Middlesex filed a claim for $872,953.00 for additional payment under a particular item of work and claims for changed conditions and delay.

9.      Pursuant to Massachusetts General Laws Chapter 16, Section 5, Middlesex commenced an administrative appeal.

10.     TMC was a witness and an interested party in the proceedings before the administrative law judge.  In order to prepare for the presentation of the claims on behalf of Middlesex, I met and communicated with employees of TMC.

11.     TMC is not a client of Hinckley Allen.  I did not represent TMC in the MHD appeals.

12.     In fact, it would not have been appropriate for me to represent both Middlesex and TMC in MHD matters because of potential conflicts of interest.

13.     Attached as Exhibit A is a true and accurate copy of the Conflict of Interest Information Form that my firm required me to complete before I could open this matter for Middlesex.  I completed this form in March 2003, and listed Middlesex as the client and TMC as an adverse party for both the Worcester and Summer Street Projects.

14.     TMC filed its own statement of claims with the Office of the Chief Administrative Law Judge on both projects.  I have attached as Exhibit B a copy of TMC's statement of claim on the Worcester Project, which David Coleman executed and filed on behalf of TMC.

15.     I represented Middlesex at the March 6, 2003 hearing on the Worcester Project. I have attached a true and accurate copy of the sign in sheet as Exhibit C. I signed in as the attorney for Middlesex and David Coleman and Edmund Cardozza signed in as representative of TMC.

16.     David Coleman filed a rebuttal on behalf of TMC to the Massachusetts Highway testimony given at the March 6, 2003 and May 28, 2003 hearings. In closing, Mr. Coleman directed the Administrative Law Judge to contact him (not me) if the judge needed any additional information. A true and accurate copy of the rebuttal Mr. Coleman filed is attached as Exhibit D.

17.     On April 20, 2004, Mr. Coleman wrote to David Skerrett of Middlesex (not me) to inquire about the status of the claims on the Worcester and Summer Street Projects. A true and accurate copy of his letter is attached as Exhibit E.

18.     On November 10, 2005, Mr. Coleman wrote directly to the Administrative Law Judge to inquire about the status of his decisions on the Worcester and Summer Street projects because he was concerned about statute of limitations issues. Mr. Coleman invited the Administrative Law Judge to contact him (not me) should the judge have any questions. The letter indicates that he sent a copy of the letter to my client, Mr. Skerrett of Middlesex, and Dennis Millgard of TMC. It does not indicate that a copy of the letter was sent to the attorney representing the MHD or me. A true and accurate copy of that letter is attached as Exhibit F.

19.     In response, the administrative law judge wrote to the attorney for MHD and me about Mr. Coleman's ex parte communication. The administrative law judge identified TMC as a witness with a financial interest in the outcome of both appeals and solicited comments about

3

whether TMC should be sanctioned for the <u>ex parte</u> communication. A copy of the letter from the administrative law judge is attached as Exhibit E.

20.     A copy of my response to the administrative law judge's letter is attached is attached as Exhibit F. In it, I note that "my client [*i.e.* Middlesex] would also appreciate being advised as to the status and when it is likely that there would be a decision."

21.     I never stated or implied to the administrative law judge, TMC, or anyone else that I represented TMC in the MHD appeals.

22.     TMC has not paid my legal fees incurred in those matters.

23.     Hinckley Allen has never submitted a bill to TMC for its services.

SIGN UNDER THE PAINS AND PENALTIES OF PERJURY THIS 11th DAY OF APRIL 2006.

_____
Charles E. Schaub, Jr.

## CERTIFICATE OF SERVICE

I, Terri L. Pastori, hereby certify that on April 11, 2006, the foregoing document was served upon counsel for the plaintiff, John S. Davagian, Esquire, by electronic mail at jsdavagian@jsdlawgroup.com.

/s/ Terri L. Pastori
Terri L. Pastori

# EXHIBIT A

CONFLICT OF INTEREST FORM

**HINCKLEY, ALLEN & SNYDER**

CONFLICT OF INTEREST INFORMATION FORM

**DATE: March 19, 2003**                    **DOCUMENT #432731**

**SUBMITTING ATTORNEY:    CHARLES E. SCHAUB, JR.**

**EXISTING CLIENT**

**CLIENT # 038477**

**CLIENT NAME: MIDDLESEX CORPORATION**

**MATTER NAME: MILLGARD**

A.  OTHER NAMES WHICH CLIENT IS OR HAS BEEN KNOWN (FORMER NAMES/ALIASES, AKA'S, D/B/A'S)

| N/A |
|---|
| |

B.  CLIENT PRINCIPALS (OFFICERS, DIRECTORS, PARTNERS, BENEFICIARIES, SPOUSES, FORMER SPOUSES AND CHILDREN)

| N/A | | |
|---|---|---|
| | | |

C.  PARENT COMPANY, SUBSIDIARIES AND AFFILIATED ENTITIES

| NAME | ADDRESS | RELATIONSHIP |
|---|---|---|
| N/A | | |

D.  PRINCIPALS OF PARENT, SUBSIDIARIES AND AFFILIATED ENTITIES (Officers, Directors, Partners, Beneficiaries, Spouses and Children, etc.)

| NAME | ADDRESS | TITLE, POSITION OR RELATIONSHIP |
|---|---|---|
| N/A | | |

E.  OTHER PARTIES WHOSE INTERESTS ARE SIMILAR TO CLIENT'S (Co-plaintiffs, Co-defendants, Co-fiduciaries)

| N/A |
|---|
| |

F.  COUNSEL TO OTHER PARTIES NAMED IN E. ABOVE

| N/A |
|---|
| |

NOTE: FILE MAY NOT BE OPENED WITHOUT CONFLICTS CHECK

A.  ADVERSE PARTIES AND COUNSEL

| The Millgard Corporation | 12822 Stark Road, P.O. Box 510027, Livonia, MI 48151 | ***ADPARTCOUN*** |
|---|---|---|
| | | |

B.  OTHER NAMES FOR OPPOSING PARTIES (Former Names, Alias, AKA's D/B/A's)

| N/A |
|---|
| |

C.  PRINCIPALS OF OPPOSING PARTIES (Officers, Directors, Partners, Beneficiaries, Former Spouses and Children)

| NAME | ADDRESS | TITLE, POSITION OR RELATIONSHIP |
|---|---|---|
| N/A | | |

D.  PARENT COMPANY, SUBSIDIARIES AND AFFILIATED ENTITIES

| NAME | ADDRESS | RELATIONSHIP |
|---|---|---|
| N/A | | |

E.  PRINCIPALS OF PARENT COMPANY, SUBSIDIARIES AND AFFILIATED ENTITIES (Officers, Directors, Partners, Beneficiaries, Spouses, Former Spouses and Children)

| NAME | ADDRESS | TITLE, POSITION OR RELATIONSHIP |
|---|---|---|
| | | |

**I HAVE REVIEWED THE CONFLICT OF INTEREST INFORMATION AND FIND NO CONFLICT EXISTS**

**ORIGINATING OR SUPERVISING PARTNER:**

# EXHIBIT B



Jane Swift          Kevin J. Sullivan       Matthew J. Amorello
Governor              Secretary                Commissioner

Office of the Chief Administrative Law Judge
Suite 7370
(617) 973-7890

## STATEMENT OF CLAIM

1.    Name of Contractor:    THE MILLGARD CORPORATION

2.    Address of Contractor:    12822 STARK ROAD

      LIVONIA, MI  48150


3.    Contract Number:    99121 FAP NO. STP050(003)

4.    Date of Award:    BEGAN 3/16/99

5.    Route Number:    RT. 146 - RECONSTRUCTION KANE SQUARE A

6.    City of Town where project is located:    WORCESTER, MA


7.    Please state the nature of your claim:    SEE ATTACHED SHEET Q.7




8.    Please indicate the amount of your claim, with a breakdown of how that amount was
computed:    SEE ATTACHED SHEET Q.8

9.    Please give a complete statement of the specific determination by the Department from which this appeal is taken.  Please attach a copy of the document(s) sent from the Department which notified you of the Department's determination:

SEE ATTACHED SHEET Q.9

_____

_____

_____

10.    Please give all reasons why you disagree with the Department's determination described in No. 9 above:  (Please attach copies of all documents which support your claim).

SEE ATTACHED SHEET Q.10

_____

_____

_____

11.    Please list references to all laws, regulations, and/or your contract with the Department which form the basis for your disagreement with the determination made by the Department:  (Additional sheets may be attached).

SEE ATTACHED SHEET Q.11

_____

_____

_____

_____

_____
Date                                              (Contractor's signature or signature of
                                                  authorized attorney)

Note:  Inadequate information may delay the processing of the claim.

# EXHIBIT C

## BOARD OF CONTRACT APPEALS

HEARING HELD ON:      THURSDAY, MARCH 6, 2003

RE: CLAIM OF:  MIDDLESEX CORP. (Millgard Corp.)

CONTRACT # 99121      PROJECT:  WORCESTER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

(PLEASE PRINT NAME)

| PRESENT | TITLE |
|---|---|
| PETER MILANO | C A L J |
| DAVID SKENNAT | V.P. THE MIDDLESEX CORP. |
| DAVID B. COLEMAN | VP THE MILLGARD CORP. |
| EDMUND CARDOZA | VP THE MILLGARD CORP. |
| Chas. Schaub | ATTY- MDSX CORP. |
| Isaac Machado | M HD |
| Helmut Ernst | M/HD |
| MICHAEL HARTNETT | m HD |
| Erica Dorsey | MHD |
| Fran Niele | MHD D-3 WOrc |

# EXHIBIT D

# The MILLGARD Corporation



July 31, 2003

Office of Chief Administrative Law Judge Peter Milano
**MASSACHUSETTS HIGHWAY DEPARTMENT**
Board of Contract Appeals
10 Park Plaza
Boston, MA  02116-3973

RE:     **WORCESTER (KANE SQUARE A)**
        **DRILLED SHAFTS CHANGE OF CONDITIONS**
        **TMC JOB NO. C-2084**

Gentlemen:

In accordance with your request of May 28, 2003, The Millgard Corporation is herewith providing our position/rebuttal to Mass Highway (MH) testimony as given at a hearing on March 6, 2003 and May 28, 2003.  In addition, we have provided a summary of our position which we believe supports a Change of Conditions and our entitlement for additional compensation as requested.

In testimony provided by the Department, the following arguments were put forth to deny The Millgard Corporation requests for additional compensation resulting from a Change of Conditions at the subject project.

**MASSACHUSETTS HIGHWAY POSITION**

- Contract Pre-Bid Borings

  The Department alleges the pre-bid bores as provided in the Contract Drawings indicate a presence of boulder obstructions of approximately 40% through the overburden soils.  The Department testified visual classification was in accordance with Mass Highway Standard Specifications 190 - Borings (reference MH Exhibit No. 5) and Drilled Shaft Special Provision Requirements Additional Borings (post construction - after contract award) per Item 191, 191.11 and 193 of Standard Specifications for Highway and Bridges.  In addition, the Department acknowledged standard penetration test (SPT) blow count was also used to classify the presence of boulders.  Based on pre-bid boring information, the Department contends the Bid Item 945.6 Drilled Shaft 6'-0" diameter should have reflected a greater obstruction risk, and therefore, the contractor should have bid the unit accordingly.

---

12822 Stark Road • P.O. Box 510027 • Livonia, MI 48151 • (734) 425-8550 / FAX (734) 425-0624
website: www.millgard.com • email: millgard@email.msm.com



Massachusetts Highway Department
July 31, 2003
Page 3

MILLGARD

- SPT blow counts is not a conclusive way of identifying boulders. The test is primarily utilized to determine refusal of sampler and density/resistance of material being sampled. **In cross examination of MH, the Department concurred that excessive blow counts could also indicate glacial till, coarse gravel and cobbles, which would not meet the greater than 8-inch diameter visual classification or the 1 cubic foot measurement requirement of Drilled Shaft Special Provisions to be classified as boulders.** This testimony by MH substantiates boulder designation utilizing SPT blow counts is non-conclusive and further verifies the validity of our claim.

## MASSACHUSETTS HIGHWAY POSITION

- Record of Visitors to Soils and Foundations Lab

  The Department has claimed that Millgard did not review soil samples or rock cores that were made available to all bidders prior to bid. By reference to MH Exhibit No. 4, the Department has provided a rewritten transcript of visitors to the Soils and Foundations Laboratory whereas neither Millgard representatives nor those of other bidders were signed in to inspect samples at the Soils and Foundations Laboratory.

## MILLGARD REBUTTAL

  In the Millgard testimony, we acknowledged that we had reviewed rock samples at a Massachusetts Highway storage facility located in Haverhill, MA. Millgard testified there was no recollection of signing in to inspect rock samples. We noted there was no contract requirement for the contractor to review soil/rock samples and, more importantly, there was no claim for additional compensation for rock type or hardness. The purpose of our visit was to inspect rock cores to determine drill rate in excavating the rock socket. Therefore, there is no relevancy to this Change of Conditions claim whether Millgard did or did not review the rock samples. Lastly, the subject record of visitors is not the original sign-in document nor did Millgard make any claim that we had visited the Soils and Foundations Laboratory as stated by MH.

## MASSACHUSETTS HIGHWAY POSITION

- Undulating Rock

  The Department testified that the presence of an undulating rock surface was depicted in the Geotechnical Report and the contractor is not entitled to additional compensation.

Massachusetts Highway Department
July 31, 2003
Page 4

MILLGARD

## MILLGARD REBUTTAL

Based on as-built records, the rock profile sloped upward from west to east, not east to west as depicted on Contract Drawing Sheet 4 of 16 and pre-bid soil bores G-122, G-123 and G-124. We believe representations regarding the direction and depth of slope of rock as depicted on Sheet 4 of 16 provides a baseline that substantiates a Change of Condition.

In addition to misrepresentations regarding direction of the sloping condition, the Contract Documents were equally silent in depicting a 12.9-foot grade change in the rock profile in approximately 23 feet horizontal at the west abutment location (reference TMC Exhibit No. 5). In conclusion, we believe we have supported, through construction measurements of the foundations, the pre-bid bore information was inadequate and misrepresented actual conditions as encountered during construction.

## MASSACHUSETTS HIGHWAY POSITION

• Quantity Overrun and Owner-Related Delays -- Item 945.6

## MILLGARD REBUTTAL

The Department to date has not responded to the Millgard quantity overrun on Item 945.6 (reference TMC Exhibit No. 6) nor has any response been received for our Change Order Request Nos. 3384 and 3405 in the amount of $8,830.87 for owner-related delays.

## SUMMARY OF POSITION - MILLGARD

As previously stated, Millgard is providing the following summary of position which highlights key issues which we believe supports a Change of Condition and a quantity overrun on the Drilled Shaft Item 945.6.

1.    Soil boring information as provided was erroneous and misleading as supported by the following:

• Contract Drawing Sheet 4 of 16 depicted a sloping rock condition which was opposite of what was encountered during construction.

• Obstruction incidence of 50.3% (drilled shaft as-built incident rate) vs. 4.3% to 10% (incident rate for pre-bid bore logs as determined by core results) (reference TMC Exhibit No. 7).

Massachusetts Highway Department
July 31, 2003
Page 5

MILLGARD

- Representations of "boulders" on pre-bid soil logs were inaccurate in accordance with the Department's visual classification requirements for measurement and size greater than 8 inches in diameter to be classified as a boulder.

- Post-construction boring information refutes quality of pre-bid information (reference TMC Exhibit No. 8) (i.e., sloping rock direction, rock elevations at west abutment and incidence of boulder obstructions).

- Haley & Aldrich were retained by Millgard to review the contract pre-bid boring information and in their letter of February 12, 2002, in support of the Millgard position, state the following:

    "The pre-bid boring logs consist of G-122 through G-124. These borings were advanced through a total of approximately 122.5 ft. of soil overburden. A total length of 5.4 ft. of boulders was cored, all in boring G-123. Cobbles and boulders are listed in the description on other logs, however, the holes were advanced without coring boulders. It is not definitively known if cobbles and boulders are present without coring because the split spoon sampler is to small to retrieve cobbles and boulders." (reference TMC Exhibit No. 9, Haley & Aldrich letter).

2.  Change of Conditions: Millgard contends the conditions encountered differed substantially from what was indicated in the Contract Drawings and that these conditions could not have been reasonably anticipated by the Contract Drawings or by a site visit. We further believe any perceived threshold requirements have been met to support this position, such as:

- Additional money and time were expended to overcome the Change of Condition issues (reference TMC Exhibit No. 10 for claim amount).

- Millgard estimated work schedule was 45 work days. The as-built schedule was 136 days of which 88 work days were expended on additional work delays.

- Installation procedures/methods were altered to perform the work as contracted. This required a revision to Millgard's approved Drilled Shaft Installation Submittal and to Special Provision Requirements which limited temporary oversize casing to 12 inches greater than design diameter. A variance to this requirement was permitted, allowing temporary casing oversize to 16 to 18 inches greater than design.

- Equipment and tools had to be modified to overcome the Change of Condition issues (i.e., incidence of obstructions, boulder and misrepresentation of sloping rock condition).

- The contractor was reasonably prudent in interpreting the Contract Documents.

Massachusetts Highway Department
July 31, 2003
Page 6

MILLGARD

3.      Obstruction Payment

The existence of a pay mechanism (twice the bid item) does not waive our right to claim
unforeseen site conditions which allows an equitable adjustment in contract amount.  The noted
payment method is not equitable (should a Change of Conditions occur or if information provided
was misleading or ambiguous) given the obstruction risk has to be incorporated into the contract
unit which is defined by more predictable events (i.e., drill production soil/rock, concrete/steel
placement and material/equipment fixed costs).  Furthermore, as evidenced by recent MH Contract
Specifications, the Department is moving away from this method and is now applying a contract
unit pay item for obstruction delays.

The Millgard claim is for additional costs beyond payment already received at twice the Item 945.6.
However, as noted in TMC Exhibit No. 6, a contract balance of approximately $124,000 remains
unpaid whereas the Department has paid one times the Item 945.6 drilled shaft-soil and one times
for obstruction removal.

The representations by Mass Highway we believe accurately reflect the Department's position relevant to
the Millgard Change of Condition claim.  The Millgard rebuttals, as submitted herein, we believe accurately
reflect the testimony provided by Millgard/Middlesex in the hearings with the Board of Contract Appeals
on March 6 and May 28, 2003.

Please phone me at (734) 425-8550 should you have any questions or require further clarification to the
issues as presented herein.

Very truly yours,

THE MILLGARD CORPORATION

David B. Coleman
Vice President

DBC:DMM/LTR73003.KAN
Attachment

# EXHIBIT E

*Via facsimile  9 7 8 - 7 4 2 - 4 4 5 5*

# The MILLGARD Corporation



April 20, 2004

THE MIDDLESEX CORPORATION
1 Spectacle Pond Road
Littleton, MA  01460

Attention:    Mr. David Skerrett

RE:    **WORCESTER (KANE SQUARE A) and**
**NEW BRIDGE CARRYING SUMMER STREET OVER THE RESERVE CHANNEL**
**OBSTRUCTION UNIT AND CHANGED CONDITION CLAIM**
**TMC JOB NO. C-2084 & C-2083**

Dear David:

I am writing to inquire of the status of Acting Chief Administrative Law Judge John McDonnell's rulings in regards to the above-mentioned projects.

As I recall, several weeks past Mr. McDonnell had committed to a 5-week time table to complete his reviews and document his findings. I would appreciate an update on his progress and will contact you later this week to discuss.

Very truly yours,

THE MILLGARD CORPORATION

*David B. Coleman* /cem

David B. Coleman
Vice President

D:CEM:LTR42004DBC.SKERRETT

# EXHIBIT F

# The **MILLGARD** Corporation



10 November 2005

Stephen H. Clark, Esq.
Administrative Law Judge
Massachusetts Highway Department
Ten Park Plaza
Boston, MA  02116-3973

RECEIVED
2005 NOV 18  PM 4: 07
EOT
ADMIN. LAW JUDGE

Subject:  MHD Contract No. 99121; Route 146, Worcester MA
          MHD Contract No. 98182; Summer Street Bridge, Boston MA

Dear Judge Clark,

Following our 23 August 2005 status hearing on the above referenced projects we, The Middlesex Corporation and The Millgard Corporation, were expecting a ruling by late September with an opportunity for a settlement hearing in October 2005.  The year end is fast approaching which brings us closer to the end date of our statute of limitations leaving litigation as our only opportunity for settlement and resolution of these matters.

It would be greatly appreciated if you could advise as to the status and timing of your ruling.  The year end is critical to my organization and I would like to be realistic on my next update of these issues.

Please contact me at 734-425-8550 should you have any questions regarding my inquiry.

Very Truly Yours,
The Millgard Corporation

David B. Coleman

CC:  D. Skerrett, The Middlesex Corporation
     D. Millgard, The Millgard Corporation

12822 Stark Road • P.O. Box 510027 • Livonia, MI 48151 • (734) 425-8550 / FAX (734) 425-0624
website: www.millgard.com • email: millgard@email.msn.com



# EXHIBIT G



THE **COMMONWEALTH** OF **MASSACHUSETTS**
EXECUTIVE OFFICE OF TRANSPORTATION



MITT ROMNEY
GOVERNOR

KERRY HEALEY
LIEUTENANT GOVERNOR

JOHN COGLIANO
SECRETARY

November 21, 2005

Charles E. Schaub, Jr., Esq.
HinkleyAllenSnyder, LLP
28 State Street
Boston, MA 02109-1775

Isaac Machado, Esq.
Deputy Chief Counsel
Executive Office of Transportation
10 Park Plaza rm 3300
Boston, MA 02116-3973

Re:    Appeals of Middlesex: MHD Nos. 98182 & 99121

Gentlemen:

I received on Friday, November 18, 2005 the attached ex parte communication from the Millgard Corporation, a witness in both above-captioned appeals. Millgard has a financial interest in the outcome of both appeals. Reports and recommendations for each appeal, which were both heard by other administrative judges in 2003, are presently in preparation.

The ex parte Millgard communication makes factual and legal assertions and invites me to respond to a named person by telephone.

Kindly respond to this office forthwith with any comment or objection you may have, including any action you intend to take to prevent the reoccurrence of such communication. Please advise the action you think this office should take and state whether or not sanctions are appropriate.

Very truly yours,

Stephen H. Clark
Administrative Law Judge

cc:
David B. Coleman

# EXHIBIT H

**Hinckley Allen Snyder** LLP
ATTORNEYS AT LAW

28 State Street
Boston, MA 02109-1775
TEL: 617.345.9000
FAX: 617.345.9020
www.haslaw.com

*Charles E. Schaub, Jr.*
*cschaub@haslaw.com*

November 28, 2005

Hon. Stephen H. Clark
Administrative Law Judge
Massachusetts Highway Department
Ten Park Plaza
Boston, MA 02116-3973

Re:     <u>Appeals of Middlesex: MHD Nos. 98182 & 99121</u>

Dear Judge Clark:

In your letter of November 21, 2005, you had requested comments concerning the inquiry by David Coleman as to the status of the decision in this matter. As you point out in the letter, the hearings were held over 2 ½ years ago. Mr. Coleman and others have been awaiting the decision since that date (we, of course, recognize that you were not the hearing officer, but nonetheless, it has been approximately 2 ½ years in which it has been pending in this forum).

Thus, I find that the inquiry by Mr. Coleman is certainly reasonable and have no objection to your responding with the status as requested by Mr. Coleman. My client would also appreciate being advised as to the status and when it is likely that there would be a decision.

Your letter also requests comments as to how you can prevent a "reoccurrence" of such a communication from an interested party requesting a status. While I concur that a copy of the status request should have been sent to the other parties, I certainly have no objection to a party requesting a status report in a pending matter. Past hearing officers have routinely entertained such requests from parties on an ex parte basis and until your letter, I do not believe that there was ever any promulgation of any directive not to have such communications. In order to prevent a reoccurrence, I would suggest that your office issue to all persons who are witnesses in the matter as well as the parties and counsel, the "ground rules" for any contact.

Please consider whether you could post on the new website, a listing of the matters under advisement and the expected date by which a decision was to be made. This would

**HinckleyAllenSnyder**LLP
ATTORNEYS AT LAW

Hon. Stephen H. Clark,
Administrative Law Judge
November 28, 2005
Page 2

enable all interested persons to locate such information without having to make such status inquiries.

If you require further comments or clarification concerning my comments, please contact me.

Very truly yours,

Charles E. Schaub, Jr.

cc:    David Skerrett
       Isaac Machado, Esq.
       David B. Coleman

#560197 v1