UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE MILLGARD CORPORATION,<br>    Plaintiff | )<br>)<br>)<br>) |  |
| v. | )<br>) | Civil Action No. 04-12388-RWZ |
| GADSBY HANNAH, LLP<br>    Defendant | )<br>)<br>)<br>) |  |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO STRIKE AFFIDAVIT OF RICHARD MILLGARD**

Plaintiff, The Millgard Corporation ("TMC"), hereby opposes the motion of Defendant, Gadsby Hannah, LLP ("Gadsby Hannah") to strike the affidavit of C. Richard Millgard. In response, TMC offers this Opposition.

*Facts*

C. Richard Millgard ("Richard") is a former employee of TMC, having been employed by TMC from 1964 to 2003. At the time that his employment with TMC ended, he was an Executive Vice President. *See Affidavit of C. Richard Millgard, previously filed as Document 31 with this Court.*

On or about March 20, 2006, Richard reviewed his personal files and came across his notepads. Richard used notepads to record a running daily log of events and reminders, including telephone communications, for business and personal matters. He reviewed the notepad that included notes from 1998, and located notations he made contemporaneously with telephone conversations he had with Attorney Ron Busconi ("Busconi") of Gadsby Hannah on May 28, 29 and June 1, 1998. The notes confirmed the time period and topics of the

1

conversations.  Shortly thereafter, Richard informed TMC's counsel, John S. Davagian, II, of the discovery of the notepad and then forwarded the original notepad to him on March 23, 2006 for review.  *See Affidavit of C. Richard Millgard, previously filed as Document 31 with this Court.*

Previously, on September 20, 2005, Gadsby Hannah deposed Richard.  At that time, Richard testified as to his conversations with Busconi during their teleconferences in May and June of 1998.  Richard testified that he had called Busconi regarding the Tomlinson Bridge Project and inquired about the laws, what TMC could and couldn't do in the State of Connecticut, notification on the bond, and what was appropriate for TMC.  Busconi informed Richard that pursuing a lawsuit as a subcontractor in Connecticut against ConnDOT was different than in most other states.  Busconi told Richard that he would investigate Richard's questions, review the specific laws and/or bond notification requirements, and get back to him.  *See pp. 60-63 to Exhibit B to the Affidavit of Terri L. Pastori, previously filed as Document 42 with this Court.*  Despite having the opportunity to do so, Gadsby Hannah never inquired of Richard at the deposition whether he maintained any personal records or notes relative to his conferences with Busconi.  Richard was never asked as to his practice of memorializing telephone conversations or conferences.  *See Exhibit B to the Affidavit of Terri L. Pastori, previously filed as Document 42 with this Court.*

Upon reviewing the notes some six months after his deposition, Richard recalled that he indeed asked Busconi how the Connecticut bond laws worked; when and how TMC should file against the White Oak bond; and when, how or if TMC should file suit with respect to the its claim for differing site conditions. *See Affidavit of C. Richard Millgard, previously filed as Document 31 with this Court.*  In opposition to Gadsby Hannah's motion for summary judgment,

TMC offered the Affidavit of C. Richard Millgard relative to the notepad corroborating and refreshing his recollection. *Id.*

In turn, Gadsby Hannah has requested that this Court strike Richard's affidavit and prevent the notes attached thereto from being admitted as evidence under the doctrines of a past recollection recorded or a present recollection refreshed.

### *Argument*

Affidavits submitted in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein". Fed. R. Civ. P. 56(e). If an affidavit is believed insufficient to withstand the requirements of Rule 56(e), then a motion to strike is the proper procedural device. See *Platinum Building & Design, Inc. v. Boria*, 2005 WL 3729020, at *5 (Mass. Super.)

More specifically, motions to strike must be reserved for circumstances when a party is creating a conflict to resist summary judgment with an affidavit that is clearly contradictory and fails to give a satisfactory explanation of why the testimony changed. *Colantuoni v. Calcagni & Sons, Inc.,* 44 F.3d 1, 4-5 (1st Cir. 1994) citing 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2726, 1t 30-31 (2d ed. Supp. 1994). See also *O'Brien v. Analog Devices, Inc.*, 34 Mass.App.Ct. 905 (1993). Furthermore, there must be sufficient evidence that the offering party is attempting to create a sham factual issue. See *Lowery v. Airco, Inc.*, 725 F. Supp 82 (D. Mass. 1989)(Party may not raise a disputed issue of fact by a sham affidavit); *Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 35 (1st Cir. 2001)(Affidavit stricken where the disparity of views between those expressed in the affidavit and those in the earlier deposition is dramatic.); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128 (5th Cir Tex. 1992)(Plaintiff gave

affidavit in support of opposition to motion to summary judgment that clearly contradicted earlier sworn testimony regarding the date of discovery of the cause of action in order to salvage the limitations period and avoid summary judgment.)

However, an opposing party's affidavit should be considered even if it differs or varies from earlier testimony, especially when the affidavit "is not inherently inconsistent with the former deposition testimony". *Kennett-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir Ala 1980). Furthermore, the Court has recognized specific circumstances where an affidavit that allegedly asserts contradictory facts to preclude summary judgment should <u>not</u> be stricken. These exceptions include situations where the affiant's memory was refreshed subsequent to the deposition; the affiant either was confused or misspoke at deposition; the testimony was ambiguous; or where the affidavit was based on newly discovered evidence. See *Rowson v. Kawasaki Heavy Indus.*, 866 F. Supp 1221 (ND Iowa 1994)(Affidavit accepted and summary judgment precluded where affiant's memory refreshed by reviewing information about the issue after the deposition); *Powell v. GAF Corp.*, 760 F. Supp 469 (WD Pa 1990) (Where a witness was confused or for some other reason misspoke at an earlier deposition, a subsequent correcting or clarifying affidavit may be sufficient to create a material issue of fact); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293 (7th Cir Wis. 1993)(Party may avoid summary judgment with an affidavit used to clarify ambiguous or confusing deposition testimony or is based on newly discovered evidence); *Ramos v. Geddes*, 137 F.R.D. 11 (DC Texas, 1991)(Affidavit did not constitute a sham for the purpose of defeating a Rule 56 motion but rather was a legitimate attempt to explain ambiguity in the expert's deposition testimony.) In the situation at hand, it is clear that Richard's affidavit asserts that the newly discovered notes refreshed his recollection.

As stated above, approximately six months after his deposition, Richard located a notepad of general notes as to all business and personal matters that arose on a daily basis, including notations made contemporaneously with telephone conferences he had with Busconi on May 28, 29 and June 1, 1998.  The notes confirmed the time period of the conferences and the topics discussed.  His review of the notepad refreshed his recollection as to particular details and confirmed his recollection as to matters previously testified to at deposiiton.

At deposition, Richard Millgard testified that he recalled three particular telephone conferences with Busconi in late May and early June of 1998 wherein he inquired of Busconi as to the Connecticut bonding laws and the timing and manner for which TMC should pursue claims against White Oak.  That testimony is wholly consistent with the subsequently located notes.  Therefore, Richard's affidavit should not be stricken.

In its motion to strike, Gadsby Hannah first argues that TMC had an obligation to produce the personal records of Richard Millgard.  Gadsby Hannah relies on *Haseotes v. Abacab Intern'l Computers, Inc.*, 120 F.R.D. 12 (D. Mass. 1988) for the proposition that officers, directors and shareholders of a party corporation could be required to produce documents that were in the possession of the corporation.[1]  However, Richard and Dennis Millgard were no longer employed by TMC at the time this suit was filed, and TMC ceased to be a functioning company in 2003 when it voluntarily filed for bankruptcy.  Since that time, only Christine E. Moretto has been employed by TMC to administer the affairs of the corporation through bankruptcy.  *See Affidavit of Christine E. Moretto, previously filed as Document 25 with this Court*.  In addition, TMC was an entity with an established identity independent of its former

---

[1] Gadsby Hannah also cites *Green v. Fulton*, 157 F.R.D. 136 (D. Me. 1994), a case asserting a §1983 action against the arresting police officers and the chief of police for the Town of Windham.  The Court ordered that the Town was required to produce the *personnel* records of the town employed defendant officers, as opposed to the *personal* records of a nonparty, which is the issue at hand in the present case.

5

officers. See *In re Grand Jury Subpoena*, M.B.D. No. 91-10708-Z, slip op. at 2 (D. Mass. Oct 23, 1991) citing *Bellis v. United States*, 417 U.S. 85, 95 (1974)("The salient feature of [a collective entity] is an established identity independent of its constituents"). Therefore, TMC had no obligation to produce the personal records of Richard Millgard. Furthermore, Gadsby Hannah never sought to elicit binding testimony on the corporation through a Rule 30(b)(6) deposition. Richard and Dennis Millgard each testified in their respective individual capacities and not as parties to this action. Therefore, Richard's testimony is not binding, and he cannot be barred from testifying as to his refreshed recollection at the time of trial. See *United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996).

Gadsby Hannah also argues that Richard Millgard "never once mentioned that he had notes concerning his conversations with Attorney Busconi that had not been produced", giving the impression that Richard intentionally deceived Gadsby Hannah and/or that TMC improperly failed to comply with its disclosure obligations. *See p. 2 of Memorandum of the Defendant Gadsby Hannah in Support of its Motion to Strike Affidavit of Richard Millgard, previously filed as Document 41 with this Court*. It is true that Richard did not mention his notepad at his deposition. But it is also true that Gadsby Hannah never asked the appropriate question(s) to elicit such information.

In its memorandum in support of its motion to strike, Gadsby Hannah points to an entirely different and broad-based question that it had asked Richard, distorting the point that it is now trying to make in its motion. It is true that Richard Millgard denied that he maintained any records specific to the Tomlinson Bridge Project as of the date of his deposition. He further testified that he hadn't done so since he left TMC two and a half years earlier. Richard clearly did not consider the disclosure of a personal notepad containing general notes as to all of his

business and personal matters, including alleged "disjointed one word comments" and/or "scant" notes from his teleconferences with Busconi, to be responsive to the particular question posed.

Furthermore, despite having sufficient opportunity to do so at the deposition, Gadsby Hannah never made any strenuous attempt to jog Richard's memory or inquire as to the identity of resources that could help him remember and/or better answer some of its questions.[2] Based on the foregoing, it appears that Gadsby Hannah was dismissive of the significance of Richard's deposition testimony and made the tactical decision to forego any further probing of Richard's memory. Also, unlike the deposition notices issued by TMC, Gadsby Hannah never required any of its noticed deponents to produce personal records, to its own peril. In short, the opportunities for Gadsby Hannah to learn of the notes sooner were certainly present at or before the time of Richard's deposition.

In the present case, Richard Millgard's affidavit restates information that is clearly consistent with his prior deposition testimony and attests to the authenticity of recently discovered documentation, which in turn lends an indicia of reliability of the prior deposition testimony. It also asserts the specifics of his refreshed recollection, which complement the prior testimony and are in no way contradictory. The affidavit and notes support Richard's prior testimony and fortify his credibility. As such, this situation does not set forth a set of facts as contemplated by the _Colantuoni_ court warranting that the affidavit of C. Richard Millgard be stricken. In any event, TMC's counsel voluntarily produced an entire copy of Richard's notepad to Gadsby Hannah <u>within days</u> of learning of its existence.

---

[2] Attorneys often receive answers of "I don't know" or "I don't recall" to inquiries made at deposition. It is up to the examiner to decide whether to (1) accept the answer, abandon the line of questioning, and move on <u>or</u> (2) make further inquiry along the lines of "What can you do to find the answer to that question? Please identify the names of any persons you would ask to obtain the answer to that question. Are there any documents you could review that may enable you to answer that question? If so, what are the documents, where are they located, and who has possession, custody and control of those documents?"

Lastly, Gadsby Hannah does not explain how it has been prejudicially effected by the notes. If it is strictly a matter of challenging Richard Millgard's credibility, as TMC suspects, then Gadsby Hannah will have the opportunity to attempt to expose this alleged inconsistency on cross examination at trial. The proper procedure at this point is for Gadsby Hannah to either object at the time of trial or file a pre-trial motion *in limine* seeking a pre-trial ruling that the evidence will not be permitted at trial. See <u>Brennan v. Innovative Dining of Massachusetts, Inc.</u>, 136 F.R.D. 336 (DC Mass. 1991).

### *Conclusion*

Based on the foregoing, the plaintiff, The Millgard Corporation respectfully requests that this Honorable Court <u>deny</u> Defendant, Gadsby Hannah, LLP's Motion to Strike the Affidavit of C. Richard Millgard and accompanying exhibits thereto.

**The Millgard Corporation**
By its attorney,

Date:  4/19/2006

/s/ John S. Davagian, II
John S. Davagian, II
B.B.O. No. 114740
Thomas E. Sartini, III
B.B.O. No. 637971
Davagian & Associates
365 Boston Post Road, Suite 200
Sudbury, MA 01776
978-443-3773

### **CERTIFICATE OF SERVICE**

I, John S. Davagian, II, hereby certify that on April 19, 2006 I served a copy of the foregoing document upon counsel for the Defendant, Terri L. Pastori, Esquire, by electronic mail at tpastori@peabodyarnold.com.

/s/ John S. Davagian, II

John S. Davagian, II, Esq.