UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12388-RWZ

THE MILLGARD CORPORATION

v.

GADSBY HANNAH, LLP

MEMORANDUM OF DECISION

July 13, 2006

ZOBEL, D.J.

Plaintiff The Millgard Corporation ("TMC"), which is headquartered in Michigan, is in the excavation business. Defendant Gadsby Hannah, LLP ("Gadsby"), represented TMC in various matters beginning in the early 1990s, and attorney Ronald Busconi was the Gadsby lawyer who primarily worked with TMC. This dispute arises out of TMC's unsuccessful attempt to collect on a payment bond for its subcontracting work on the Tomlinson Bridge in New Haven, Connecticut. The State of Connecticut ("the State"), which owned the bridge, had a general contract with White Oak, Inc. ("White Oak"), and White Oak subcontracted with TMC to do excavation work. The surety, National Union, issued a payment bond on June 6, 1994, for which White Oak was principal.

TMC began work on the Tomlinson Bridge in 1997. In early 1998, TMC encountered unanticipated subsurface conditions and persuaded the State to pay additional costs. Later that year, TMC again encountered unanticipated subsurface conditions and sought to recover accordingly. The State rejected this second claim, but

the parties continued to engage in negotiations throughout 1998 and much of 1999—including two mediation sessions held in April and May of 1999. On May 21, 1999, shortly after the second mediation, White Oak terminated TMC, though Dennis Millgard, TMC's president, still felt optimistic that the dispute would be resolved and TMC would be able to return to work. No resolution was reached, however, so TMC—which had stopped work on September 15, 1998—removed its equipment from the site on September 7, 1999. In late March or early April 2000, TMC formally retained Gadsby to pursue a claim on the payment bond. Gadsby made a demand on April 7, 2000, but National Union rejected the claim as untimely. Gadsby then commenced suit in the United States District Court for the District of Connecticut . Millgard Corp. v. White Oak Corp., 224 F. Supp. 2d 425 (D. Conn. 2002). Under the applicable version of the Connecticut statute governing contracting on public works projects, C.G.L. § 94-92, TMC was required to give notice of a claim within 180 days after the date on which it had performed the last of the labor or furnished the last of the material for which the claim was made.[1] The court accepted for purposes of summary judgment TMC's assertion that its last day of work was September 7, 1999,[2] and TMC conceded that the 180-day limitations period had expired before it made demand. See

---

[1] TMC objects to this statement of the law. (Pl.'s Response ¶¶ 94-97). But it cites no contrary law nor does it propose an alternative limitations period. In addition, its objection is inconsistent with its acceptance of the 180-day limitations period in its unsuccessful suit against White Oak and National Union for payment on the bond. See Millgard Corp. v. White Oak Corp., 224 F. Supp. 2d 425, 427 n.3 (D. Conn. 2002).

[2] National Union and White Oak disputed this date, as does Gadsby here.

id. at 426.[3]  The court rejected TMC's equitable estoppel argument and granted the defendants' motion for summary judgment.  See id. at 429.

In November 2004, TMC filed the instant suit against Gadsby, alleging three counts of legal malpractice, on grounds that Gadsby had failed to satisfy its duty to TMC by advising it of the bond's notification requirements.  The parties dispute the nature of their relationship prior to the spring of 2000, when TMC formally retained Gadsby to file a claim on the payment bond.  It is undisputed, however, that prior to that time, Mr. Busconi, the Gadsby lawyer, discussed the project with TMC executives, advised them on correspondence with White Oak and the State, and attended the mediation sessions.  Currently pending are three motions.

I.    Gadsby's Motion for Summary Judgment

Gadsby moves for summary judgment, arguing (1) it had no duty to advise TMC of the bond's notification requirements any time prior to the expiration of the limitations period, and (2) even assuming a duty existed, TMC is unable to prove a breach. Summary judgment under Fed. R. Civ. P. 56 is appropriate if—viewing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in his favor—no genuine issue of material fact remains.  See Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 684 (1st Cir. 1994).

---

[3] The court found that National Union received notice of the claim on May 10, 2000.  Millgard Corp., 224 F. Supp. 2d at 429.  The record here indicates, however, that initial demand was made on April 7, 2000, and a second demand in May. (Def.'s Loc. R. 56.1 Statement ¶ 90; Pl.'s Response ¶ 90).  In any event, more than 180 days passed between September 7, 1999, and either date.

As with any tort claim, TMC must demonstrate that Gadsby owed it a duty of care. DaRoza v. Arter, 416 Mass. 377, 381 (1993). In this case, TMC contends that Gadsby owed it a duty by virtue of their attorney-client relationship. (Pl.'s Opp. 5).[4] The existence of an attorney-client relationship is a question of fact. See I.C.C. v. Holmes Transp., Inc., 983 F.2d 1122, 1128 (1st Cir. 1993). TMC must prove that an attorney-client relationship existed specifically with respect to the act or omission upon which the malpractice claim is based. Page v. Frazier, 388 Mass. 55, 62 n.10 (1983). Gadsby's position is that it was retained by TMC to "negotiate and mediate the differing site condition" claim, but that it was not asked to represent TMC on its payment bond claim until after the limitations period had expired. (Lewin Aff., Ex. A, at 3; Def.'s Mem. in Supp. of Mot. for Summ. J. 1). Whether or not an attorney-client relationship existed between the parties with respect to the payment bond at any time before the limitations period had expired is very much in dispute. While Gadsby was not formally retained to represent TMC on the payment bond before the spring of 2000, but it is clear from the record that it provided some assistance before that time. Gadsby contends that all of the assistance it provided prior to the spring of 2000 was limited to negotiating the unanticipated subsurface conditions claim, but the record contains evidence that Gadsby attorneys researched and advised TMC on a possible wrongful termination claim in the summer of 1999, giving rise to an inference that TMC knew its relationship with White Oak and the State was coming to an end and had discussed the legal

---

[4]TMC does not contend that Gadsby owed it a duty outside of the attorney-client relationship. Cf. DaRoza, 416 Mass. at 382 (attorney may owe duty to non-client).

4

ramifications with Gadsby. (Davigian Aff., Ex. 14). Gadsby's otherwise detailed chronology of the parties' interactions is conspicuously silent with respect to that period of time. (Def.'s Loc. R. 56.1 Statement ¶¶ 84-85). Thus, even if Gadsby has correctly characterized the parties' relationship prior to the spring of 1999, it is unclear whether the relationship subsequently changed.

     Gadsby's failure to depict the parties' relationship in the summer of 1999 is presumably based on its contention that the limitations period expired in March 1999. But the expiration date is itself in dispute, since the parties disagree as to when TMC last performed work on the Tomlinson Bridge—Gadsby argues for September 15, 1998 (with the limitations period expiring on March 15, 1999), while TMC argues for September 7, 1999 (with the limitations period expiring on March 5, 2000). Resolving this dispute would require construction of the Connecticut statute, C.G.L. § 49-42, known as "Connecticut's little Miller Act." Millgard Corp., 224 F. Supp. 2d at 426. And interpretation of that statute is, in many cases, guided by federal precedent on the parallel federal statute. Id. at 427. Neither party has provided any case law supporting its position, and I am reluctant to conclude on the basis of Gadsby's assertions alone that work is "last performed" under C.G.L. § 49-42 where work has stopped but equipment remains. Cf. Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc., 239 Conn. 708, 724-25 (1997) (subcontractor could recover under § 49-42 for costs of labor and equipment that were available but not used). In sum, the summary judgment record does not clarify (1) whether the parties had an attorney-client relationship with respect to the payment bond issue before April 2000; (2) if they did, when such a

relationship arose; and (3) whether the relationship arose before or after the bond's limitations period expired, which in turn depends on when the limitation period began to run. These numerous factual issues surround the question of attorney-client relationship and preclude summary judgment.

Gadsby contends in the alternative that it is entitled to summary judgment on grounds that TMC has submitted no expert testimony. In Massachusetts, "[e]xpert testimony is generally necessary to establish that the attorney failed to meet the standard of care owed by an attorney in a particular case." Pongonis v. Saab, 396 Mass. 1005, 1005 (1985); Fishman v. Brooks, 396 Mass. 643, 647 (1986). TMC has submitted no expert testimony to support its allegation that Gadsby breached any duty it owed TMC. Gadsby, on the other hand, has retained a construction law expert—Joel Lewin—and has submitted his report, which concludes that Gadsby did not breach the requisite level of care.[5] However, expert testimony is not required in cases where the claimed malpractice is "so obvious that laymen can rely on their common knowledge to recognize or infer negligence." Pongonis, 396 Mass. at 1005. If an attorney-client relationship existed between Gadsby and TMC with respect to the payment bond claim in the summer of 1999, and if the limitations period had not yet expired, Gadsby's

---

[5]Gadsby's expert, however, offers an opinion only with respect to the period preceding March 1999. (Lewin Aff., Ex. A, at 1). He offers no analysis of Gadsby's obligations and whether it satisfied those obligations during any later period. Moreover, Mr. Lewin's report is more fairly characterized as an assessment of the scope of Gadsby's attorney-client relationship with TMC, rather than an analysis of whether Gadsby breached such a relationship. He concludes that Gadsby had a duty to advise TMC only with respect to the subsurface conditions claim and not with respect to the payment bond claim. Whether or not an attorney-client relationship existed as to the latter, however, is a question of fact for the jury.

failure to advise TMC of the bond's notification requirements might fall within the exception.  Cf. Wagenmann v. Adams, 829 F.2d 196, 219 (1st Cir. 1987) (no expert testimony required where attorney failed to file within statute of limitations).  Whether or not expert testimony is required is generally determined at the close of the plaintiff's evidence at trial.  See Lima v. Delaney, No. 89-0659, 1990 WL 57648, at *1 (D. Mass. 1990).  Given the uncertainties already surrounding the case, I decline to make that determination on a summary judgment motion.  Id.

Finally, Gadsby seeks summary judgment on certain damages issues.  Litigation of this case has, however, been bifurcated into a liability phase and a damages phase.  Discovery is only complete on liability issues.  I therefore decline to rule on damages issues at this time.  Accordingly, the motion for summary judgment is denied.

II.     TMC's Motion to Disqualify

TMC has moved to disqualify Gadsby's expert—Joel Lewin—based upon its allegation that one of Mr. Lewin's law firm partners "previously represented" TMC, thus creating a conflict-of-interest for Mr. Lewin.  (Pl.'s Mot. to Disqualify 1).  In fact, Mr. Lewin's partner—Charles E. Schaub, Jr.—represented Middlesex Corporation, a general contractor, in two disputes that it had with the Massachusetts Highway Department ("MHD").  TMC was one of Middlesex's subcontractors and also submitted claims.  Mr. Schaub, however, did not represent TMC in the administrative proceedings; he never submitted any papers or appeared on its behalf.  Instead, David Coleman of TMC made submissions and appeared on behalf of TMC.  TMC never paid

Lewin and Schaub's law firm, Hinckley, Allen and Snyder LLP ("Hinckley"), for legal services in connection with those proceedings.

Given these facts, TMC's attempt to manufacture a conflict must fail. Hinckley's representation of Middlesex did not create an attorney-client relationship between it and TMC, nor does anything in the record suggest that TMC regarded Mr. Schaub as its attorney. Indeed, given the frequency with which general contractors clash with their subcontractors, Hinckley's obligations to Middlesex might well have placed it in opposition to TMC's interests. In any event, Mr. Lewin is being offered as an expert witness, not as counsel to Gadsby, thus the conflict-of-interest rules governing attorneys do not apply. Cf. Grant v. Lewis/Boyle, Inc., 408 Mass. 269, 272 (1990).

III.   Gadsby's Motion to Strike

Gadsby moves to strike the affidavit of Richard Millgard, submitted by TMC in connection with its opposition to Gadsby's summary judgment motion. However, neither the affidavit nor the attached notes informed my consideration of the summary judgment motion. The motion to strike is denied.

IV.   Conclusion

Gadsby's motion for summary judgment (Docket #13) is denied. TMC's motion to disqualify Joel Lewin (#22) is denied. Gadsby's motion to strike the affidavit of Richard Millgard (#40) is denied. A pretrial conference is scheduled on August 24, at 2:30 p.m.

| | |
|---|---|
| 07/13/06 | /s/ Rya W. Zobel |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |