UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12388-RWZ

THE MILLGARD CORPORATION,
                       Plaintiff

v.

GADSBY HANNAH, LLP,
                       Defendant

## MOTION OF THE DEFENDANT GADSBY HANNAH FOR RECONSIDERATION

The Defendant, Gadsby Hannah LLP ("Gadsby Hannah"), respectfully requests that this Court reconsider the denial of its motion for summary judgment on all counts in the Plaintiff's complaint for legal malpractice on the grounds that, as a matter of law, the statute of limitations for making a bond claim expired on March 15, 2006. In denying Gadsby Hannah's motion, the Court indicated that the record was insufficient to determine when the Plaintiff, the Millgard Corporation ("TMC") last performed work on the Tomlinson Bridge Project as that term is used in the applicable Connecticut statute. In its motion for summary judgment, Gadsby Hannah argued that the last date on which TMC performed work was September 15, 1998 and therefore, TMC was required to submit a bond claim by March 15, 1999 [1] -- prior to the time that Gadsby Hannah was representing TMC on any bond claim. In its Complaint and in its opposition papers, TMC conceded that although it last performed drilling work on September 15, 1998, the limitations period for its bond claim did not start running until almost a year later when it

---

[1] The applicable version of Connecticut General Laws Section 49-42 requires that bond claims be made within 180 days after the date on which the claimant last performed work or last supplied materials. In addition, suit must be filed within one year of that date.

"demobilized." As a matter of law, under the applicable Connecticut statute, Section 49-42, TMC's last day of drilling work in September 1998 started the running of the limitations period for a bond claim, and the period expired on March 15, 1999. TMC's unilateral decision to leave some of its equipment and materials on the site until it finally collect them in September 1999 does not extend the limitations period or start it running anew. In further support of this motion, Gadsby Hannah states as follows.

## I.   BACKGROUND

TMC was a construction subcontractor that supplied labor and materials to a state-owned bridge project in Connecticut called the Tomlinson Bridge Project. It alleges that it lost the opportunity to pursue a claim on a payment bond obtained by the general contractor, White Oak, on that project because of the negligence of its attorneys, Gadsby Hannah.

The evidence, however, establishes that Gadsby Hannah was not retained to provide advice or representation with respect to the payment bond until a year after the period of limitations for making a bond claim had expired. Prior to that time, TMC, an experienced and sophisticated contractor undertook its own representation through negotiation and a mediation of its claim against the owner and general contractor, eschewing the opportunity to engage Gadsby Hannah for the purpose of providing counsel in the process. When mediation failed and TMC was discharged from the project, it finally turned to Gadsby Hannah to pursue a claim but by that time, the time period for pursuing a claim on the payment bond had already expired by more than a year.

Although TMC now claims that Gadsby Hannah should have advised it to make a bond claim at an earlier time, the contention is belied by the evidence. Furthermore, TMC needs an

expert to establish what the standard of care would have required given the facts of this case, which it has not done. As such, Gadsby Hannah is entitled to summary judgment.

II.     ARGUMENT

    a. **TMC Last Performed Work Under Its Subcontract on September 15, 1998.**

It is admitted that TMC stopped working on the Tomlinson Bridge Project and left the project site on September 15, 1998. See Dennis Millgard's Deposition Transcript at 181 (Pastori Affidavit,[2] Exhibit A); Complaint ¶ 22 (Pastori Affidavit, Exhibit B). Dennis Millgard admitted that the limitations period for making a claim on White Oak's bond expired on March 15, 1999. See Dennis Millgard's Deposition Transcript at 181. It is admitted that White Oak terminated TMC's contract by letter dated May 21, 1999. See Termination Letter (Pastori Affidavit, Exhibit C); Complaint ¶ 29.

TMC now alleges that it "demobilized" in September 1999 and contends that the September 1999 date -- approximately one year after it did any work on the project -- commenced the running of the limitations period under Connecticut General Laws Section 49-42. TMC's claim is erroneous as a matter of law and common sense.

TMC's demobilization claim is illusory and does not withstand even minimal scrutiny. Dennis Millgard's own testimony and letter prove beyond any doubt that TMC stopped performing work on September 15, 1998. See, e.g., Dennis Millgard's Deposition Testimony at 140, 181; Complaint ¶ 22; Dennis Millgard's letter of September 11, 1998 (Pastori Affidavit, Exhibit D). In fact, Dennis Millgard wrote to White Oak on February 4, 1999, and stated that "prior to any remobilization" White Oak would have to accede to several of its demands. See Dennis Millgard's letter of February 4, 1999 (Pastori Affidavit, Exhibit E). TMC's conditional

3

offer to remobilize on February 4, 1999 compels but one conclusion: TMC had already demobilized as of February 4, 1999. TMC's claim in its opposition papers that it "demobilized" in September 1999 is contrary to its own records.

At best, TMC may be able to establish that it carted away some tools and equipment in September 1999. It is misleading for TMC to categorize such minimal and incidental actions as "demobilization." TMC's recovery of some tools and equipment previously left behind cannot be said to have been in furtherance of any contractual duty or obligation especially when they were retrieved four months after White Oak had terminated TMC's subcontract. TMC's conduct was not within the scope of its subcontract, is not compensable under the subcontract, it added no value to the project and did not advance the completion of TMC's contract work. See Subcontract (Pastori Affidavit, Exhibit F).

The performance of extra-contractual work not required by the claimant's subcontract will not toll the time period for commencing suit under Section 49-42 of the Connecticut General Laws. See Wicks Mfg. Co. v. Currier Elec. Co., 596 A.2d 1331 (Conn. App. Ct. 1991). In Wicks, the claimant argued that its shipment of schematic and service manuals to the contractor tolled the limitations period under Section 49-42. Id. at _____. The Connecticut Appeals Court observed that the limitations period cannot be extended by correcting defects or performing repair work. Id. It then held that the one-year limitations period was not stayed because the "shipment was not required under the contract between the plaintiff and the contractor as was furnished as a courtesy." Id. at _____.

Just as the extra-contractual deliveries in Wicks could not toll the limitations period of Section 49-42, neither can TMC's post-termination recovery of some tools and equipment it left

---

[2] The Affidavit of Terri L. Pastori is filed simultaneously herewith.

4

behind. TMC's subcontract is for a flat base price of $1,060,000 to furnish and install a 30 foot caisson, $162,750 to install a test shaft caisson, and $923,000 to drill rock socket for the 30 foot caisson. See Subcontract (Pastori Affidavit, Exhibit F). Pursuant to the subcontract, TMC was entitled to payment of $150,000 for "one (1) mobilization." Additional mobilizations and demobilizations are not compensable under the subcontract. TMC is not entitled to additional compensation for equipment and materials under the subcontract. Moreover, third parties – not TMC -- were responsible for the provision of certain equipment to the project including a crane, drilling barge, service barge, and materials barge. See id.

Case law construing the analogous Federal Miller Act further establishes that a subcontractor cannot toll the time period for bringing suit on a payment bond by leaving materials and equipment on the project site after it has been terminated. See, e.g., Gulf States Enterprises v. R.R. Tway, Inc., Inc., 938 F.2d 583, 589 (5th Cir. 1991); United States ex rel Taykinswell v. Beacon Construction Co., 248 F. Supp. 502, 505 (D. Md. 1965), aff'd 369 F.2d 405 (4th Cir. 1966). In Gulf States, the claimant supplied certain materials and equipment for use on the project, including a bulldozer and dragline. The general contractor thereafter wrote to the claimant and directed that it remove all of its equipment from the project site. The claimant removed the bulldozer but left the drag line. More than one year later the claimant brought suit under the Miller Act. The surety defended on the ground, inter alia, that the claimant failed to commence suit within one year from its last performance of work on the project. The claimant argued that the time for filing suit under the Miller Act had been extended because the dragline had been left at the project site. The Fourth Circuit Court of Appeals disagreed, reasoning that a claimant's unilateral decision to leave equipment at a site is not the performance of work that would toll the time period for bring suit on the bond:

> For [the claimant], leaving the dragline in place was a discretionary act. [The claimant] cannot use its own discretionary act to its advantage in tolling the running of the statute. Such an interpretation of the statute would totally defeat it by allowing suppliers like [the claimant] to prolong the tolling of the statute for an indeterminate time while their search for a new lessee or until they decide the time is right to bring suit. This result is untenable. Clearly, the concept of furnishing materials and equipment to a job site does not comprehend a virtual abandonment of equipment that had been delivered to the site long before the date in question – particularly after the lessor receives written notice to remove its equipment.

Gulf States, 938 F.2d at 589. Accord Taykinswell, 248 F. Supp. 502, 505 (claimant's leaving equipment at the project site following its termination was not an act which would extend the time for commencing suit under the Miller Act).

       This Court, in its summary judgment decision, noted the Connecticut Supreme Court's decision in Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc., 239 Conn. 708, 724-25, in which the subcontractor was able to recover under Section 49-42 for the costs of labor and equipment that were available but not used. The facts and issues presented in Blakeslee are markedly different from TMC's situation. Unlike the Blakeslee case in which the subcontractor was frozen out of the project and its equipment seized by the owner, the city of Waterbury, TMC walked off the job and demobilized in September 1998. No one impounded TMC's equipment. TMC was free to use its equipment on any other job. In Blakeslee, the subcontract was not terminated and as a result, the subcontractor kept workers on standby. Id. at 724. In contrast, TMC's subcontract was terminated after it refused to return to work. TMC's subcontract, unlike the one in Blakeslee, does not provide for equipment rentals since TMC agreed to perform the work for a flat fee. Id. at 725. Moreover, the issue in the Blakeslee case was not the last day of work was under Section 49-42.

6

TMC's act of leaving tools and equipment at the site after it stopped working and after its contract had been terminated by White Oak and its decision to finally remove the tools and equipment in September 1999 were discretionary acts, not contractually required, and as a matter of common law and common sense cannot be construed as performance of work or the supply of materials for the purpose of calculating the limitations period under Section 49-42. To hold otherwise would effectively render the limitations period a nullity.

TMC may attempt to rely on Steenberg Construction Co. v. Prepakt Concrete Co., 381 F.2d 769 (10th Cir. 1967) in support of its claim that its alleged act of demobilization in 1999 started the running of the limitations period but its reliance would be misplaced. In Steenberg Construction, the claimant left the project site due to unforeseen conditions and subsequently removed its supplies, materials and equipment from the project site. On appeal, the Tenth Circuit Court of Appeals affirmed the district court's holding that the removal of the supplies, materials and equipment, constituted performance of labor under the contract, which had a lump sum price for mobilization and demobilization, extended the time period for bringing suit under the Miller Act. Id. at 774. Unlike the contract in the Steenberg Construction case, TMC's contract does not contain a demobilization provision and therefore, demobilization is not work performed under the contract. See Subcontract (Pastori Affidavit, Exhibit D). Moreover, TMC's alleged demobilization took place long after White Oak had terminated its contract. Taking of some equipment and materials from the project site was not done under the auspices of the subcontract and therefore, does not constitute performance of work.

    **b. Expert Testimony Is Required To Establish That Gadsby Hannah Breached The Standard Of Care Prior To March 15, 1999.**

As established above, the last day that TMC performed work within the meaning of Connecticut General Laws Section 49-42 was September 15, 1998. TMC's had until March 15,

1999 to submit a claim on the bond. By the time that TMC retained Gadsby Hannah to prosecute the bond claim, the limitations period had already expired.

TMC requested that Gadsby Hannah perform discrete tasks related to TMC's changed condition claim against White Oak. As the Massachusetts Appeals Court explained in Brown v. Gerstein, 17 Mass. App. Ct. 558 (1984), expert testimony is needed to establish whether a lawyer faced with discrete assignments would undertake to give general advice. The underlying dispute in the Brown case was between a lender and its borrowers, which ultimately ended in a foreclosure sale of the borrowers' property. The borrowers sued their former attorney for malpractice, among other things. The evidence in that case established that the lawyer was retained to sue the lender for breach of contract in connection with its mishandling of the borrowers' loan. Id. at 566. The court held that "whether a lawyer whose employment was so limited would undertake to give his clients general advice about ways to avoid foreclosure was a subject requiring expert testimony in accordance with the rule that 'expert testimony is generally necessary to establish the standard of care owed by an attorney in particular circumstances and the defendant's alleged departure from it.'" Id. The Court also concluded that the borrowers could not recover against their former lawyer on the theory that the lawyer failed to discover and plead a particular statute because that "statute is beyond the understanding of lay people and expert testimony was necessary to establish that a lawyer in [the defendant's] position should have discovered the statute and, and if he had, it could have been used to obtain an injunction." Id.

Likewise, TMC needs an expert to establish that Gadsby Hannah should have gone outside the scope of its limited engagement, researched the Connecticut statutes on bond claims, and given TMC general advice about pursuing a bond claim. TMC does not have an expert to

8

establish what the applicable standard of care required of Gadsby Hannah, and therefore its claims fail.

In contrast, counsel for Gadsby Hannah has retained Attorney Joel Lewin to provide testimony concerning the applicable standard of care and whether it was breached in this case. Attorney Lewin's uncontradicted opinion is that the standard of care did not require Gadsby Hannah to conduct research and advise TMC during the period between April 1998 and March 15, 1999 of TMC's obligations under Connecticut law to give notice to TMC's bonding company. TMC assigned Gadsby Hannah discrete tasks between May 1998 and early March 1999. The standard of care did not require Gadsby Hannah to provide advice beyond the specific tasks that TMC assigned to it. Gadsby Hannah was not required to provide TMC with general advice about all of its rights and risks related to the Tomlinson Bridge Project, including bond notification. Gadsby Hannah satisfied the applicable standard of care. Based upon this undisputed evidence, Gadsby Hannah is entitled to summary judgment.

### III.    CONCLUSION

Based on the foregoing, the denial of Gadsby Hannah's motion for summary judgment should be reconsidered and summary judgment should enter in favor of Gadsby Hannah on all counts in the Complaint.

                                                Respectfully submitted,

GADSBY HANNAH LLP

By its attorneys,

/s/ Terri L. Pastori
Michael J. Stone, Esquire, BBO#482060
Terri L. Pastori, Esquire, BBO#635323
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110
(617) 951-2100

## **CERTIFICATE OF SERVICE**

      I, Terri L. Pastori, hereby certify that on July 24, 2006, the foregoing document was served upon counsel for the plaintiff, John S. Davagian, Esquire, by electronic mail at jsdavagian@jsdlawgroup.com.

                                          /s/ Terri L. Pastori
                                          Terri L. Pastori