UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12388-RWZ

THE MILLGARD CORPORATION,
                        Plaintiff

v.

GADSBY HANNAH, LLP,
                        Defendant

## MEMORANDUM OF THE DEFENDANT, GADSBY HANNAH LLP, IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO ITS CONDUCT AFTER MARCH 15, 1999

The Defendant, Gadsby Hannah LLP ("Gadsby Hannah") moves *in limine* for an order precluding the Plaintiff, The Millgard Corporation ("TMC"), from introducing any evidence relating to Gadsby Hannah's conduct after March 15, 1999 because it is not relevant to TMC's malpractice claim, and will confuse the jury and waste the time of the court and the parties. Gadsby Hannah submits that the limitations period for making a bond claim expired as a matter of law on March 15, 1999. This issue is ripe for determination and a ruling prior to trial is necessary to streamline the issues for trial, assist the parties in their preparation and presentation of their cases, and avoid any potential confusion of the jury.[1]

---

[1] Gadsby Hannah previously filed a motion for summary judgment on TMC's malpractice claim. At that time, the court declined to grant summary judgment concluding that the summary judgment record did not clarify whether the parties had an attorney-client relationship with respect to the payment bond issue before April 2000; if they did, when such a relationship arose; and whether the relationship arose before or after the bond's limitations period expired. This motion seeks a ruling on the narrow issue of when the limitations period expired and submits that on the record submitted herewith, the issue is capable of resolution.

**I.     BACKGROUND**

TMC was a construction subcontractor that supplied labor and materials to a state-owned project in Connecticut called the Tomlinson Bridge Project. TMC alleges that it is owed $70,730.00 for unpaid invoices and $1,083,585 in extra work due to unforeseen subsurface conditions encountered on the project while installing caissons. TMC presented a claim against its general contractor, White Oak, and the owner, Connecticut Department of Transportation, for those amounts. When TMC was not able to resolve its disputes over compensation, it made claim on White Oak's bond, which the surety denied as untimely. TMC alleges that its claim on White Oak's bond was untimely because of the negligence of its attorneys, Gadsby Hannah.

Gadsby Hannah believes that it will establish at trial that TMC did not retain it to provide advice or representation with respect to the payment bond until a year after the period of limitations for making a bond claim had expired. Prior to that time, TMC, an experienced and sophisticated contractor, undertook its own representation through negotiation and a mediation of its claim against the owner and general contractor, eschewing the opportunity to engage Gadsby Hannah for the purpose of providing counsel in the process. When mediation failed and TMC was discharged from the project, it finally turned to Gadsby Hannah to pursue a claim but by that time, the time period for pursuing a claim on the payment bond had already expired by more than a year.

All of the work upon which TMC's bond claim was based occurred prior to the time that TMC stopped work on September 15, 1998. In other words, the last day that TMC provided labor or material for which it has made a bond claim was prior to September 15, 1998. Connecticut law provides that TMC had 180 days to file a bond claim, measured from the last day of work for which it is making a claim. Since the day that TMC's last performed work or supplied material for which it is making a claim occurred on or before September 15, 1998, it

2

had until March 15, 1999 to make a claim against the bond. Therefore, in this legal malpractice case, Gadsby Hannah's involvement prior to March 15, 1999, and not after, is relevant. Any evidence concerning Gadsby Hannah's involvement after March 15, 1999 will confuse the jury and waste time and resources at trial. As such, Gadsby Hannah seeks an order *in limine* preventing Millgard from attempting to introduce any evidence relating to Gadsby Hannah's conduct after March 15, 1999.

## II.     ARGUMENT

### A.     TMC Last Performed Work For Which It Is Making A Claim On Or Before September 15, 1998.

For the purpose of this motion, the relevant facts are few, straight forward, and undisputed. White Oak subcontracted with TMC for the installation of caissons for the Tomlinson Bridge Project, among other things. See Subcontract (Pastori Affidavit,[2] Exhibit A). A dispute arose regarding whether TMC encountered unforeseen subsurface conditions in the course of its performance and whether it was entitled to additional compensation. Not having resolved its dispute over payment, TMC shut down work on September 15, 1998. See Dennis Millgard's Letter to Jack Morrissey of White Oak dated September 11, 1998 (Exhibit B); Dennis Millgard's Deposition Transcript at 181 (Exhibit C); Complaint ¶ 22 (Exhibit D). On the 14th and 15th of September 1998, TMC returned the equipment that it rented for the project, it cleaned up the drilling barge, secured the reverse circulation tool, tied the drill rig down, and laid off the local help. See Superintendent's Daily Reports for September 14 and 15, 1998 (Exhibit E). White Oak terminated TMC by letter of May 21, 1999. See Complaint ¶ 29 (Exhibit D). TMC

---

[2] The Affidavit of Terri L. Pastori is filed simultaneously herewith.

claims that in September 1999 it came back to the site and retrieved its remaining equipment, which it characterizes as "demobilization."[3]

The version of Connecticut General Laws Section 49-42 applicable to White Oak's bond dated June 6, 1994 requires that notice of a bond claim be given within 180 days after the date on which the contractor performed the last of the labor or furnished the last of the material for which the claim is made. Specifically:

> **Enforcement of right to payment on bond. Suit on bond, procedure and judgment.** (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of section 49-41 and who has not been paid in full therefore before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which the claim is made, may enforce his right to payment under the bond by serving a notice of claim **within one hundred eighty days after the date on which he performed the last of the labor or furnished the last of the material for which the claim is made**, on the surety that issued the bond and a copy of the notice on the contractor named as principal in the bond. . . .

Conn. Gen. L. § 49-42 (pre-October 1994 amendment) (emphasis added).

The claim against White Oak's bond that TMC alleges it forfeited because of Gadsby Hannah's conduct was comprised of unpaid billings for base contract work in the amount of $70,730.00 and compensation for extra drilling work that it performed due to the alleged unforeseen subsurface conditions ($1,083,585). See Complaint ¶¶ 6, 49 (Exhibit D); Notice of

---

[3] There is a dispute concerning whether TMC's conduct in September 1999 constitutes "demobilization. At best, TMC may be able to establish that it carted away some tools and equipment in September 1999. It is misleading for TMC to categorize such minimal and incidental actions as "demobilization" when it had substantially demobilized in September 1998 by returning its rental equipment, cleaning the site, and laying off local help. For the purposes of this motion, however, Gadsby Hannah will assume that the steps TMC took in September 1998 were "demobilization."

4

Claim (Exhibit F); Complaint in TMC v. White Oak (Exhibit G). Neither the unpaid base contract work billings nor the extra work costs claimed by TMC were for labor performed or material furnished after September 15, 1998 when TMC shut down the job. See, e.g., Dennis Millgard's Letter to Jack Morrissey dated October 29, 1998 calculating amount owed for extra work due to unforeseen subsurface conditions at $1,023,174.00 (Exhibit H); Dennis Millgard's Deposition Transcript in White Oak case at 148,156-58 (Exhibit I) (explaining that the October 1998 calculation was based on the plans and specifications and different calculations were later done at the request of ConnDot but they are all basically the same). TMC's claim does not include demobilization costs or costs associated with idle equipment left on the project site from September 1998 when TMC walked off the job and September 1999 when it collected its remaining equipment. Based on the foregoing, TMC was required to submit the bond claim at issue by March 15, 1999.[4]

      **B.**     **TMC's Alleged Extra-Contractual Work Such As Demobilization Did Not Toll the Limitations Period.**

As explained above, TMC bond claim for unpaid invoices and unforeseen site conditions was due by March 15, 1999, long before TMC retained Gadsby Hannah to pursue the bond. TMC attempts to sidestep this fatal flaw in its case by claiming that it "demobilized" in September 1999, and therefore the September 1999 date -- approximately one year after it did any work on the project -- commenced the running of the limitations period for making a bond claim under Connecticut General Laws Section 49-42. Not only is TMC's claim disingenuous, it is just plain wrong.

---

[4] Dennis Millgard conceded that the limitations period for making a claim on White Oak's bond began to run in September 1998 and expired on March 15, 1999. See Dennis Millgard's Deposition Transcript at 181. TMC's position changed in the opposition to Gadsby Hannah's motion for summary judgment.

5

First, TMC is not entitled to compensation for demobilization under the subcontract and such extra contractual work does not extend the time for making a bond claim. "Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." See, e.g., Schoonmaker v. Lawrence Brunoli, Inc., 265 Conn. 210, 277, 828 A.2d 64 (2003). TMC's subcontract is for a flat base price of $1,060,000 to furnish and install a 30 foot caisson, $162,750 to install a test shaft caisson, and $923,000 to drill rock socket for the 30 foot caisson, and $150,000 for "one (1) mobilization". See Subcontract (Exhibit A). TMC has claimed that the term mobilization includes demobilization and argues that demobilization was work under its subcontract. See Dennis Millgard's Affidavit dated August 1, 2006. (Exhibit J). TMC's contention ignores the definition of "mobilization" in the contract documents. The Connecticut Department of Transportation Specifications (Form 814), which are incorporated by reference into TMC's subcontract, defines "mobilization" as follows:

> This item shall consist of all work necessary for the movement of personnel and equipment to the project site, for the establishment of all Contractors' field offices, buildings and other facilities necessary to the performance of the work.

State of Connecticut, Department of Transportation Standard Specifications for Roads, Bridges, and Incidental Construction (Form 814), Section 9.75.01 (Description) (1988 ed.) (Exhibit K). The definition of mobilization says nothing of removing personnel and equipment from the site. Based on the foregoing, the alleged "demobilization" in September 1999 is not work under the subcontract.

The performance of extra-contractual work not required by the claimant's subcontract will not toll the deadlines under Section 49-42 of the Connecticut General Laws. See Wickes Mfg. Co. v. Currier Elec. Co., 596 A.2d 1331 (Conn. App. Ct. 1991). In Wickes, the claimant argued that its shipment of schematic and service manuals to the contractor tolled the limitations

6

period under Section 49-42. Id. at 1332. The Connecticut Appeals Court observed that the limitations period cannot be extended by correcting defects or performing repair work. Id. It then held that the one-year limitations period was not stayed because the "shipment was not required under the contract between the plaintiff and the contractor as was furnished as a courtesy." Id. at 1334-35. Just as the extra-contractual deliveries in Wickes did not toll the limitations period of Section 49-42, neither can TMC's demobilization.

      C.     **TMC's Claim Does Not Include Compensation For Demobilization Or Idle Equipment And Therefore The Limitations Period Is Not Extended.**

TMC contends that due to Gadsby Hannah's alleged negligence it missed the opportunity to file a bond claim for unpaid invoices of $70,730.00 and $1,083,585 in extra work due to unforeseen subsurface conditions it encountered on the project while installing caissons. TMC concedes that it stopped drilling work on September 15, 1998. TMC's claim does not include the cost of idle equipment it unilaterally left on the site from September 1998 through September 1999, or the alleged demobilization in September 1999. Neither the idle equipment nor the alleged demobilization delays the clock from running by one year. TMC's claim is for work performed through September 15, 1998 at the latest, and therefore, as a matter of law, under the applicable Connecticut statute, Section 49-42, September 15, 1998 was the day on which the limitations period for a bond claim began running. The period for making a claim expired 180 days later on March 15, 1999. Any evidence concerning Gadsby Hannah's alleged involvement after March 15, 1999 is irrelevant to TMC's malpractice claim because by then TMC had already missed the deadline.

The cases previously cited by TMC in connection with the summary judgment proceeding are inapposite. In Steenberg Construction Co. v. Prepakt Concrete Co., 381 F.2d 768 (10th Cir. 1967), the claimant left the project site due to unforeseen conditions and subsequently

7

removed its supplies, materials and equipment from the project site.  On appeal, the Tenth Circuit Court of Appeals affirmed the district court's holding that the removal of the supplies, materials and equipment, constituted performance of labor under the contract, which had a lump sum price for mobilization and demobilization, extended the time period for bringing suit under the Miller Act.  Id. at 774.  Unlike the contract in the Steenberg Construction case, TMC's contract does not contain a demobilization provision and therefore, demobilization is not work performed under the contract.  See Subcontract (Exhibit A).  Moreover, TMC's alleged demobilization in September 1999 took place a year after TMC left the project site, voluntarily allowing some of its equipment to remain on the site, and long after May 1999 when White Oak terminated its contract.  See Complaint ¶ 29 (Exhibit D).  TMC's collection of some equipment from the project site long after its subcontract was terminated was not done under the auspices of the subcontract and does not constitute performance of work.

TMC also mistakenly relies on Safe Environment of Am., Inc. v. Employers Ins. of Wasau, 278 F. Supp. 2d 121 (D. Mass. 2003).  In that case, there was no question whether demobilization was work under the contract or whether there was a work stoppage prior to the time of demobilization.  Such is not the case here.  United States Dep't of Navy ex rel. Andrews v. Delta Contractors Corp., 893 F. Supp. 125 (D.P.R. 1995), does not assist TMC either.  In Andrews, the issue involved when the limitations period began for a third-tier contractor that rented a crane to a subcontractor of the general contractor.  The rental agreement required the subcontractor to deliver the crane at the conclusion of the lease.  The court concluded inter alia that the statute of limitations did not begin to run until the crane was transported and picked up by the lessor after the contractor's default.  Here, TMC was not renting equipment to White Oak for the project.  TMC was hired to install caissons.  It was not entitled to payment for its

equipment under the lump sum contract. Furthermore, TMC returned all of the equipment it rented when it abandoned the project in September 1998 so this is not the case where TMC was paying rent for equipment after September 1998.

      D.      **Even Assuming *Arguendo* That The Line Item For Mobilization Includes Demobilization Under the Subcontract, White Oak Paid TMC In Full For The Mobilization And Therefore TMC Cannot Use It To Extend The Time Period For Making A Bond Claim.**

Even assuming *arguendo* that the term mobilization includes demobilization (which Gadsby Hannah denies), it does not assist TMC. Pursuant to TMC's subcontract, the unit price for TMC's mobilization was $150,000. See Subcontract (Exhibit A). TMC mobilized to the project at the end of October 1997 and completed mobilizing in November 1997. See Superintendent's Daily Reports (Exhibit L). Shortly thereafter, on January 15, 1998, White Oak paid TMC $150,000 for mobilization. See Subcontractor's Invoice (Exhibit M); Notes (Exhibit N). That was the first payment under the Subcontract. The balance on the base contract of $70,730.00 that TMC claims is from later invoices for work after mobilization. Therefore, TMC cannot make a claim for sums owed for mobilization against White Oak or its surety because it was paid for the work at the beginning of the project.

      E.      **Likewise, The Idle Equipment That TMC Claims To Have Left On The Site Until September 1999 Did Not Extend The Limitation Period.**

TMC's unilateral decision to leave some of its equipment on the site until it finally collected them in September 1999 does not extend the time period for making a bond claim or start it running anew. TMC is not entitled to and has never sought additional compensation for the few pieces of equipment that it left behind on the project site. Case law construing the analogous Federal Miller Act further establishes that a subcontractor cannot toll the time period for bringing suit on a payment bond by leaving materials and equipment on the project site after

it has been terminated.  See, e.g., Gulf States Enterprises v. R.R. Tway, Inc., Inc., 938 F.2d 583, 589 (5th Cir. 1991); United States ex rel Taykinswell v. Beacon Construction Co., 248 F. Supp. 502, 505 (D. Md. 1965), aff'd 369 F.2d 405 (4th Cir. 1966).  In Gulf States, the claimant supplied certain materials and equipment for use on the project, including a bulldozer and dragline.  The general contractor thereafter wrote to the claimant and directed that it remove all of its equipment from the project site.  The claimant removed the bulldozer but left the drag line.  More than one year later the claimant brought suit under the Miller Act.  The surety defended on the ground, inter alia, that the claimant failed to commence suit within one year from its last performance of work on the project.  The claimant argued that the time for filing suit under the Miller Act had been extended because the dragline had been left at the project site.  The Fourth Circuit Court of Appeals disagreed, reasoning that a claimant's unilateral decision to leave equipment at a site is not the performance of work that would toll the time period for bring suit on the bond:

> For [the claimant], leaving the dragline in place was a discretionary act. [The claimant] cannot use its own discretionary act to its advantage in tolling the running of the statute.  Such an interpretation of the statute would totally defeat it by allowing suppliers like [the claimant] to prolong the tolling of the statute for an indeterminate time while their search for a new lessee or until they decide the time is right to bring suit.  This result is untenable.  Clearly, the concept of furnishing materials and equipment to a job site does not comprehend a virtual abandonment of equipment that had been delivered to the site long before the date in question – particularly after the lessor receives written notice to remove its equipment.

Gulf States, 938 F.2d at 589.  Accord Taykinswell, 248 F. Supp. 502, 505 (claimant's leaving equipment at the project site following its termination was not an act which would extend the time for commencing suit under the Miller Act).

TMC's act of leaving some of its equipment at the site after it stopped working and after its contract had been terminated by White Oak and its decision to finally remove some equipment in September 1999 were discretionary acts, not contractually required, not reimbursable, and as a matter of common law and common sense cannot be construed as performance of work or the supply of materials for the purpose of calculating the limitations period under Section 49-42. To hold otherwise would effectively render the limitations period a nullity.

This Court, in its summary judgment decision, noted the Connecticut Supreme Court's decision in Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc., 239 Conn. 708, 724-25 (1997), in which the subcontractor was able to recover under Section 49-42 for the costs of labor and equipment that were available but not used. The facts and issues presented in Blakeslee are markedly different from TMC's situation. Unlike the Blakeslee case in which the subcontractor was frozen out of the project and its equipment seized by the owner, the city of Waterbury, TMC walked off the job and demobilized in September 1998. No one impounded TMC's equipment. TMC is not claiming that it was deprived the use of its equipment, and was free to use the equipment on any other job. In fact, TMC collected its equipment at its leisure long after White Oak terminated its contract. In Blakeslee, the subcontract was not terminated and as a result, the subcontractor kept workers on standby. Id. at 724. In contrast, TMC returned its rented equipment, laid off workers, and for all intents and purposes abandoned the site but for some equipment, and thereafter, White Oak terminated the subcontract. TMC's subcontract, unlike the one in Blakeslee, does not provide for equipment rentals since TMC agreed to perform the work for a flat fee. Id. at 725. Moreover, the issue in the Blakeslee case was not the last day of work under Section 49-42.

### III. CONCLUSION

Based on the foregoing, the last day TMC had to make a bond claim for alleged outstanding contract balance and the extra work due to the unforeseen subsurface conditions was March 15, 1999 -- 180 days after it last performance drilling work. TMC's alleged "demobilization" of idle equipment in September 1999 did not extend the limitations period because (1) extra-contractual work does not extend the period for making a bond claim pursuant to Section 49-42; (2) TMC's claim does not even include the alleged costs for idle equipment or demobilization; (3) TMC cannot make a claim for demobilization under the mobilization line item in the subcontract because it was paid in full for mobilization; and (4) TMC is not entitled to compensation for idle equipment under its unit price subcontract. Gadsby Hannah, therefore, submits that any evidence concerning its alleged conduct after March 15, 1999 is irrelevant, would confuse the jury and should not be admitted. Gadsby Hannah seeks an order on this issue in advance of trial in order to avoid confusion of the jury on such a fundamental issue.

    Respectfully submitted,

    GADSBY HANNAH LLP

    By its attorneys,

    /s/ Terri L. Pastori
    Michael J. Stone, Esquire, BBO#482060
    Terri L. Pastori, Esquire, BBO#635323
    PEABODY & ARNOLD LLP
    30 Rowes Wharf
    Boston, MA 02110
    (617) 951-2100

## CERTIFICATE OF SERVICE

I, Terri L. Pastori, hereby certify that on January 12, 2007, the foregoing document was served upon counsel for the plaintiff, John S. Davagian, Esquire, by electronic mail at jsdavagian@jsdlawgroup.com.

/s/ Terri L. Pastori
Terri L. Pastori

PABOS2:TPASTOR:652743_1