UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE MILLGARD CORPORATION,<br>    Plaintiff<br><br>v.<br><br>GADSBY HANNAH, LLP<br>    Defendant | )<br>)<br>)<br>)<br>)      Civil Action No. 04-12388-RWZ<br>)<br>)<br>)<br>) |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE
TO EXCLUDE EVIDENCE AT THE TIME OF TRIAL

Plaintiff, The Millgard Corporation ("TMC"), hereby opposes the three pending motions *in limine* of the Defendant, Gadsby Hannah ("Gadsby Hannah") to exclude evidence at the time of trial. In response, TMC submits this Opposition and requests to be heard on the matter. For the reasons stated herein, the Defendant's motions must be denied.

**Argument**

*I.     Motion in Limine Standard*

A motion *in limine* is a trial motion that asks the court to exclude from evidence a particular piece of information, an entire subject matter of inquiry, or any direct or indirect reference to such evidence. Motions *in limine* are often more properly raised at the time of trial, and decisions on the same should be deferred until that time. *See* RLI Ins. Co. v. Wood Recycling, Inc., 2006 WL 839514, (D.Mass 2006)(Zobel, J.).

Gadsby Hannah has filed three motions *in limine*: (1) Docket Entry No. 53 - to exclude evidence relating to its conduct after March 15, 1999; (2) Docket Entry No. 56 - to prevent TMC from introducing evidence relating to any events after April 7, 2000; and (3) Docket Entry No.

1

57 - to exclude testimony concerning TMC's claim that Gadsby Hannah failed to inform TMC of Connecticut General Law, §4-61.  The crux of their arguments is that TMC will present evidence that is not relevant, confusing, and/or a waste of time.  Furthermore, Gadsby Hannah's arguments, by its own admission, are in part based on assumed facts[1].  Because of the same, its arguments are wholly undermined and must fail as a result.

## II.     Last Day of Work is Question of Material Fact

Gadsby Hannah's first motion *in limine*, Docket Entry No. 53, essentially revisits this Court's decisions on its motion for summary judgment and subsequent motion for reconsideration of the same.  Gadsby Hannah once again argues, under an assumption that the last day of work performed was September 15, 1998, that the limitations period for making a bond claim had expired as a matter of law on March 15, 1999.  Gadsby Hannah is now asking this Court to preclude TMC from presenting evidence to prove the date that work was last performed was on September 7, 1999.  This is an issue of genuine fact that goes to the heart of the case.  Despite the Court having already clearly ruled that the date on which TMC last performed work remains to be a question of material fact,  Gadsby Hannah continues to press for a finding in its favor with respect to the last day or work.

As this Court knows, on July 13, 2006, the Court denied Gadsby Hannah's Motion for Summary Judgment, stating unequivocally in its memorandum of decision that "***the expiration date is itself in dispute, since the parties disagree as to when TMC last performed work on the Tomlinson Bridge . . .***" (Emphasis added.)  More specifically, this Court was "reluctant to conclude on the basis of Gadsby's assertions alone that work is 'last performed' under C.G.L. § 49-42 where work has stopped but equipment remains", citing Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc., 239 Conn. 708, 724-725 (1990).

---

[1]  See footnote no. 3 of Docket Entry No. 54.

Blakeslee clearly sets forth a similar fact pattern to the present case, and its application of law is supportive of TMC's position.  *See also* Safe Environment of America, Inc. v. Employers Insurance of Warsau, 278 F.Supp.2d 121, 126 (D. Mass. 2003) (In its limitation argument, Defendant used plaintiff's payroll report regarding demobilization of equipment from the project site to determine the last day of work performed); United States Dep't of Navy ex rel. Andrews v. Delta Contractors Corp., 893 F. Supp. 125 (D.P.R. 1995) (Where a lessee left a crane at a job site, the limitations period did not commence until the crane was removed) citing United States of America for and on behalf of Carlisle Const. Co., Inc. v. Coastal Structures, Inc., 689 F.Supp. 1092 (M.D. Fla. 1988) (Rental period of crane started upon crane's arrival and ended when crane loaded on a vehicle for return); Steenberg Construction Co. v. Prepakt Concrete Co., 381 F.2d 769 (10th Cir. 1967) (Removal of supplies, material and equipment constituted performance of labor under the contract).

In attempting to distinguish Blakeslee, Gadsby Hannah continues to mischaracterize the facts of the present case in an effort to dismiss the application of the authority of Blakeslee and additional cases cited.  In particular, TMC never "walked off the job" nor did it demobilize in September of 1998, as Gadsby Hannah alleges.  TMC stopped work on the project on September 15, 1998 because it had completed all of its work in the work areas provided by the general contractor, White Oak, and no other work area was prepared and available for TMC to continue working.  (See Docket Entry No. 27, Plaintiff's Statement of Additional Undisputed Material Facts at ¶ 36).  TMC laid off its labor and returned certain pieces of rental equipment.  It then waited on White Oak for an opportunity to conduct further work. (See Docket Entry No. 50, Affidavit of V. Dennis Millgard.)  On May 21, 1999, White Oak sent TMC a letter of termination. (See Docket Entry No. 47, Exhibit "C" to Affidavit of Terri L. Pastori in Support of

3

Defendant, Gadsby Hannah's Motion for Reconsideration). White Oak terminated TMC because its surety directed White Oak to complete the job itself. (See Docket Entry No. 49, Exhibit "A" to Affidavit of John S. Davagian, II – Deposition Transcript of V. Dennis Millgard at pp. 138-140). As a practical matter, had TMC walked off the job on September 15, 1998, as alleged, and/or had White Oak intended for TMC to not conduct any further work, White Oak surely would not have waited at least six months to issue a letter of termination.

On July 27, 1999, following a telephone conversation between Busconi and Edward Lassman, who was then counsel for White Oak, Busconi notified TMC that it was okay for TMC to remove its equipment off of the job site. (See Docket Entry No. 49, Exhibit "B" to Affidavit of John S. Davagian, II - Busconi Deposition Transcript at pp. 87-96; Exhibit "C" to Affidavit of John S. Davagian, II - Deposition Exhibit No. 69). TMC was a Michigan corporation for whom mobilization to or from locations such as Connecticut required extensive time for logistical planning and execution. "Mobilization" was specifically identified as a line item in the subcontract between White Oak and TMC as an item of work. (See Docket Entry No. 47, Exhibit "F" to Affidavit of Terri L. Pastori in Support of Defendant, Gadsby Hannah's Motion for Reconsideration). Mobilization is a common term used in the construction industry that refers to the work of transporting the materials and equipment to the jobsite, the assembly of that equipment, and the mustering of the workforce necessary to complete the project as well as the reverse process that occurs upon project completion. (See Docket Entry No. 50, Affidavit of V. Dennis Millgard.)

Based on the foregoing, there is clearly a question of material fact with respect to the date that work was last performed. In turn, Gadsby Hannah has proffered no evidence on the record

to convincingly refute the foregoing. It has merely set forth self-serving conclusions based upon its assumption of certain critical facts.

### III.     Gadsby Hannah's Conduct Post April 7, 2000 Relates Back

Gadsby Hannah's second motion *in limine*, Docket Entry No. 56, is little more than an extension of its first motion *in limine*. In its second motion, Gadsby Hannah again raises the arguments of relevance, confusion, and the wasting of time but fails to give substantive reasons or cite any legal precedent to support its request. Gadsby Hannah boldly asks this Court to order that TMC be precluded from introducing evidence that clearly relates back to what Gadsby Hannah knew with respect to the statutory obligations and as to when it first knew the same. The conduct of Gadsby Hannah after April 7, 2000 is very telling in that it directly relates back to the relevant time period with respect to (1) its professional relationship with TMC, (2) its failure to timely advise TMC of the impact of C.G.S. § 4-61 upon TMC's claims for additional compensation due to costs incurred in encountering differing subsurface conditions, and (3) its failure to timely recognize, comprehend and communicate to TMC its obligations and rights under the time limitations set forth in C.G.S. §49-42.

### IV.     Expert Testimony Not Required

Gadsby Hannah's third motion *in limine*, Docket Entry No. 57, raises an argument that TMC needs an expert to establish Gadsby Hannah's duty to advise TMC as to the statutory requirements under Connecticut law for a subcontractor to pursue its claims against ConnDOT. This Court has already ruled in its Memorandum of Decision on summary judgment, citing Pongonis, that expert testimony is not required in cases where the claimed malpractice is "so obvious that laymen can rely on their common knowledge to recognize or infer negligence." Pongonis v. Saab, 396 Mass. 1005 (1985). Expert testimony is not required where the facts

5

demonstrate that an attorney's lack of care and skill is so obvious that the trier of fact can resolve the issue as a matter of common knowledge. Id.; *Lima v. Delaney*, 1990 WL 57648 (D.Mass. 1990) (Zobel, J.); *Glidden*, 12 Mass.App.Ct. at 598(1981).   See also *Focus Inv. Assoc. Inc. v. American Title Ins Co.*, 992 F.2d 1231, 1239 (1st Cir. 1993) (Cases which can be resolved based on a layperson's common knowledge are those where negligence is "clear and palpable" and where the fact finder need not analyze the attorney's exercise of legal expertise); *Flanders & Medeiros, Inc. v. Bogosian*, 868 F.Supp 412 (1st Cir. 1994) (Failure to file an action within the statute of limitations is a situation where negligence is "clear and palpable".) Furthermore, Busconi's duty is established by his own conduct when he advised Richard Millgard in May of 1998 that he knew that Connecticut laws were different than in most jurisdictions with respect to a subcontractor pursuing claims against the state. Busconi expressly promised to get back to Richard Millgard with advice as to how to proceed, yet he never did.  (See Docket Entry No. 31, Affidavit of C. Richard Millgard at ¶¶ 9-11.)

Gadsby Hannah has offered no new legal precedent of any kind to warrant this Court changing its prior ruling.  Lastly, and for reasons unknown, Gadsby Hannah raises a causation of damages argument.  As this Court knows, this case has been bifurcated and any issues of causation or damages has not ripened and should be stricken.

## Conclusion

Based on the foregoing, to preclude evidence that goes to the heart of the case will undoubtedly cause a substantial miscarriage of civil justice.  Therefore, the plaintiff, The Millgard Corporation, respectfully requests that this Honorable Court deny Defendant, Gadsby Hannah, LPP's three motions *in limine*.

|  |  |
|---|---|
|  | **The Millgard Corporation** <br> By its attorney, |
| Date: 1/26/2007 | /s/ John S. Davagian, II <br> John S. Davagian, II <br> B.B.O. No. 114740 <br> Thomas E. Sartini, III <br> B.B.O. No. 637971 <br> Davagian & Associates <br> 365 Boston Post Road, Suite 200 <br> Sudbury, MA 01776 <br> 978-443-3773 |

**CERTIFICATE OF SERVICE**

I, John S. Davagian, II, hereby certify that on January 26, 2007 I served a copy of the foregoing document upon counsel for the Defendant, Terri L. Pastori, Esquire, by electronic mail at tpastori@peabodyarnold.com.

/s/ John S. Davagian, II

John S. Davagian, II, Esq.

P:\active\Millgard\1269\pld00024 Opp to Motions in Limine.doc